IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ADELINE CLARK, et al., | ) | Case No. 4:17-CV-00452-JEG-HCA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT FRONTIER** |
| FRONTIER AIRLINES, INC., | ) | **AIRLINES, INC.'S MOTION TO** |
| | ) | **DISMISS PLAINTIFFS'** |
| Defendant. | ) | **COMPLAINT** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 2

STATEMENT OF FACTS ..................................................................................... 4

      A.    The Parties ................................................................................... 4

      B.    2011 Frontier-AFA Collective Bargaining Agreement .................. 5

      C.    March 15, 2017 Letter Of Agreement .............................................. 6

      D.    The Plaintiffs' Grievance Under The Collective Bargaining
           Agreement ................................................................................... 7

ARGUMENT ......................................................................................................... 8

    I.    PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE
         BARGAINING AGREEMENT IS A "MINOR DISPUTE" WITHIN
         THE EXCLUSIVE JURISDICTION OF THE FRONTIER FLIGHT
         ATTENDANTS' SYSTEM BOARD OF ADJUSTMENT. ..................... 10

    II.    PLAINTIFFS' COMMON-LAW CLAIMS ARE PREEMPTED BY
         THE RAILWAY LABOR ACT .............................................................. 12

      A.    Plaintiffs' Claim For Promissory Estoppel Is Based On, And
           Would Require Interpretation Of, The Frontier-AFA
           Collective Bargaining Agreement, And Is Therefore
           Preempted By The Railway Labor Act. ......................................... 13

B.     Plaintiffs' Claim For Unjust Enrichment Would Require
Interpretation Of The Frontier-AFA Collective Bargaining
Agreement, And Is Therefore Preempted By The Railway
Labor Act............................................................................................ 15

III.   PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD
BE DISMISSED FOR THE ADDITIONAL REASON THAT
THEY HAVE NOT AND CANNOT PLAUSIBLY ALLEGE THAT
FRONTIER WAS ENRICHED BY NOT MAKING "EQUITY
PAYMENTS" TO PLAINTIFFS. ............................................................. 16

CONCLUSION ............................................................................................. 17

## INTRODUCTION

Defendant Frontier Airlines, Inc. ("Frontier") moves to dismiss Plaintiffs' First

Amended and Substituted Complaint (the "Amended Complaint") (Doc. No. 2) pursuant

to Rule 12(b)(1) and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs, approximately 100 former Frontier flight attendants, contend that

Frontier breached Article 24 of the collective bargaining agreement ("CBA") between

Frontier and the Association of Flight Attendants-CWA (the "AFA") when – pursuant to

a Letter of Agreement ("LOA") with the AFA – it paid approximately $40 million to

currently-employed flight attendants, but did not make any payments to persons (like

Plaintiffs) who were no longer employed by Frontier.  Plaintiffs have asserted three

different claims in their Amended Complaint, for breach of collective bargaining

agreement, promissory estoppel and unjust enrichment.  All of the claims, however, are

premised on the basic – and disputed – contention that Plaintiffs had the right to receive

an "Equity Payment" pursuant to Article 24 of the CBA.

2

Under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (the "RLA"), the federal statute governing labor-management relations in the airline industry, disputes over the proper interpretation of a CBA are known as "minor disputes," *see, e.g.*, *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 722-23 (1945), and with very rare exceptions, none of which are invoked in the Amended Complaint, courts do not have jurisdiction to decide the merits of minor disputes.  *See, e.g.*, *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963).  Rather, arbitration tribunals, generally referred to as "boards of adjustment," have "mandatory, exclusive and comprehensive" jurisdiction to adjudicate minor disputes.  *Id.* at 38.  Indeed, Plaintiffs (represented by the same counsel as in this lawsuit) have a pending arbitration case before the Frontier Flight Attendants' System Board of Adjustment in which they assert the very same claim as alleged in Count I of their Amended Complaint.

Because Plaintiffs' claim for breach of collective bargaining agreement (Count I) raises a "minor dispute" under the RLA, it should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Plaintiffs' two common-law claims, for promissory estoppel and unjust enrichment, should be dismissed pursuant to Rule 12(b)(1), or alternatively Rule 12(b)(6), because those claims are based on and would require interpretation of the Frontier-AFA CBA – in particular, Articles 24(A) and 24(D).  As such, the claims are preempted by the RLA.  *See, generally, Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir. 1998) ("Courts

can resolve questions of federal or state law involving labor claims only if the issues do not require the court to construe the collective bargaining agreement.").

Finally, even if the Court were to decide that Plaintiffs' claim for unjust enrichment (Count III) is not preempted by the RLA, the claim should still be dismissed because Plaintiffs have not and cannot plausibly allege that Frontier has been enriched. Under Plaintiffs' theory of the case, they should have received a portion of the $40 million that was paid by Frontier to other flight attendants. If Plaintiffs are correct, it is the other flight attendants who were "unjustly" enriched – not Frontier.

For these reasons, and as detailed below, Plaintiffs' Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

### A.    The Parties

Frontier is a commercial airline and a "carrier" within the meaning of the RLA. *See* Am. Compl. (ECF No. 2) ¶ 5. Its headquarters are located in Denver, Colorado. *Id.* ¶ 2. Plaintiffs are approximately 100 former Frontier flight attendants. They now live in a variety of states – but none live in Iowa.[2] *Id.* ¶ 1. During at least part of their

---

[1]    For purposes of this motion only, Frontier accepts as true the well-pleaded facts in Plaintiffs' Amended Complaint.

[2]    Because there is no connection between this lawsuit and the Southern District of Iowa (other than the location of Plaintiffs' counsel), Frontier intends to file in the near future a motion under 28 U.S.C. § 1404 to transfer this case to the United States District Court for the District of Colorado. If this Court decides and grants the instant motion to dismiss first, the motion to

employment with Frontier, Plaintiffs (like all other Frontier flight attendants) were represented for collective bargaining purposes under the RLA by the Association of Flight Attendants-CWA (the "AFA").  *See* 37 N.M.B. 202 (May 20, 2010) (National Mediation Board certification of the AFA as the collective bargaining representative for Frontier's flight attendants).

**B.    2011 Frontier-AFA Collective Bargaining Agreement**

On October 14, 2011, Frontier and the AFA entered into their first CBA.  *See* Am. Compl. ¶ 6.  This CBA, among other things, memorialized certain cost concessions (known as the "Flight Attendant Restructuring Investments") which were applied to the flight attendant workforce and intended to ameliorate Frontier's then-current financial problems.  *See* Am. Compl. Ex. 2 (ECF No. 3) at 3-4.  The CBA also included an Article 24, titled "Equity, Profit-Sharing, And Wage & Benefit Snapbacks," which provided in pertinent part as follows:

**A.    EQUITY PARTICIPATION**

Flight attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

\*\*\*

**D.    ADDITIONAL PROVISIONS**

Equity Participation as set forth in Paragraph A above and participation in the PSP [Profit Sharing Plan] as set forth in

---

change venue would be moot.  If the Court decides and grants the motion to change venue first, the District of Colorado would rule upon the instant motion to dismiss.

> Paragraph B above, ***will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012***. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement. [Emphasis added.]

Declaration Of Chris A. Hollinger In Support Of Defendant Frontier Airlines, Inc.'s Motion To Dismiss ("Hollinger Decl.") (filed concurrently herewith)  Ex. A; Am. Comp. ¶¶ 7-8.  The term "Flight Attendant" is defined in Article 2(32) of the Frontier-AFA CBA as follows:  "***An employee of the Company*** whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services."  Hollinger Decl. Ex. B (emphasis added).  Each of the Plaintiffs was on the Frontier Flight Attendant Seniority List as of January 1, 2012.  *See* Am. Compl. ¶ 10.  Between January 1, 2012 and March 15, 2017, each Plaintiff left his/her employment with Frontier (Am. Compl. ¶ 11) – and thus ceased to be a "Flight Attendant" within the meaning of the CBA.

### C.  March 15, 2017 Letter Of Agreement

On March 15, 2017, pursuant to the RLA, Frontier and the AFA entered into a Letter of Agreement (the "LOA") which provided that Frontier would pay $40 million to "eligible Flight Attendants" "in full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24A of the CBA."  Hollinger Decl. Ex. C at ¶ A.1; *see also id.* ¶ E.2 ("This Letter of Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof and is entered into

in full and complete satisfaction of Section 24A of the CBA.").  The LOA provided

further that:

> [T]he Union shall provide the Company with a written schedule (the
> "Allocation Schedule"), setting forth the name and employee identification
> number of each Flight Attendant eligible to receive a portion of the Equity
> Participation Payment (each, an "Eligible Flight Attendant") and the gross
> amount of the Equity Participation Payment to be paid to each Eligible Flight
> Attendant upon each Payment Date. ***The Union shall determine the Eligible
> Flight Attendants and their portion of the Equity Participation Payment in
> its sole discretion***."

*Id.* at ¶ A.2 (emphasis added); *see also* Am. Compl. ¶ 13.

In exercising its authority under the LOA to "determine the Eligible Flight

Attendants . . . in its sole discretion," the AFA determined that only those flight

attendants who were on the Frontier Flight Attendant Seniority List on both January 1,

2012 and March 15, 2017 would be eligible to receive a portion of the Company's $40

million payment.  *See* Am. Compl. ¶ 14.  And, on that basis, the Plaintiffs did not receive

a payment.  *See id.* ¶ 15.

### D.     The Plaintiffs' Grievance Under The Collective Bargaining Agreement

On May 12, 15 and 25, and June 13, 2017, Plaintiffs filed grievances under the

CBA, contending that "[t]he applicable CBA does not require either 'continuous'

employment through March 15, 2017 or active employment as of March 15, 2017 in

order to receive equity payments."  Hollinger Decl. Ex. D at 4; *see also* Hollinger Decl.

Exs. E, F, and G; Am. Compl. ¶ 16.  Frontier denied these grievances on June 30, 2017.

*See* Hollinger Decl. Ex. H (the grievance denial letter); Am. Compl. ¶ 17.  On July 13,

2017, Plaintiffs appealed Frontier's denial of their grievances to an RLA arbitration tribunal known as the "Frontier Flight Attendants' System Board of Adjustment." Hollinger Decl. Exs. I and J; Am. Compl. ¶ 17.  An evidentiary hearing before the arbitration panel was conducted on March 20, 2018, in which Plaintiffs, Frontier, and the AFA participated.  *See* Hollinger Decl. ¶ 3; Am. Compl. ¶ 17.  The record is not closed, however, as Plaintiffs may yet submit the testimony of one additional witness.  *See* Hollinger Decl. ¶ 3.  Thereafter, the parties will file post-hearing briefs and a decision will be issued.  *Id.*

## ARGUMENT

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant."  *See, e.g.*, *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 527 (8th Cir. 2017) ("Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To avoid dismissal under Rule 12(b)(6), the Plaintiffs' complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on

8

its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  If the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Moreover, while the record on a Rule 12(b)(6) motion is far more circumscribed than for a summary judgment motion, the Court still may consider matters appropriate for judicial notice and documents which are referred to in Plaintiffs' Amended Complaint. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion…Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion.") (quotation omitted); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading . . . Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the pleading.") (citation and quotation omitted).

In ruling on the instant motion to dismiss under Rule 12(b)(1), which raises a "factual" challenge to the Court's subject-matter jurisdiction, the Plaintiffs do not have the benefit of the procedural safeguards of Rule 12(b)(6).  *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).  And the Court is permitted to consider evidentiary matters independent of the pleadings.  *See, e.g., Rojek v. F.E.M.A.*, 234 F. Supp. 2d 999, 1005 (S.D. Iowa 2002) ("'The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'") (*quoting Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993)).

## I.     PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT IS A "MINOR DISPUTE" WITHIN THE EXCLUSIVE JURISDICTION OF THE FRONTIER FLIGHT ATTENDANTS' SYSTEM BOARD OF ADJUSTMENT.

Under the RLA, a "minor dispute" is a dispute over the interpretation or application of a CBA.  *See, e.g., Elgin, J. & E. Ry. v. Burley*, 325 U.S. at 722-23; *Sturge v. Northwest Airlines, Inc.*, 658 F.3d 832, 837 (8th Cir. 2011); *South v. GoJet Airlines, LLC*, No. 4:12-cv-00378-JEG, 2013 WL 6253582, at *4 (S.D. Iowa Sept. 30, 2013). With very rare exceptions – none of which are alleged to be applicable to this case – courts do not have jurisdiction to decide the merits of minor disputes.  *See, e.g., Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R.*, 373 U.S. at 36-38 ; *South*,

2013 WL 6253582, at *4.  Rather, arbitration tribunals, generally referred to as "boards

of adjustment," have "mandatory, exclusive and comprehensive jurisdiction" to

adjudicate minor disputes.  *Louisville & Nashville R.R.*, 373 U.S. at 38; *see also Jenisio v.*

*Ozark Airlines, Inc. Ret. Plan for Agent and Clerical Emps.*, 187 F.3d 970, 973 (8th Cir.

1999) ("[Minor disputes] 'must be resolved only through the RLA mechanisms, including

the carrier's internal dispute-resolution processes and [the board of adjustment]

established by the employer and the unions.'") (*quoting Hawaiian Airlines, Inc. v. Norris*,

512 U.S. 246, 253 (1994)).

 Here, there is no doubt that Count I in the Amended Complaint raises a minor

dispute.  The title of the claim is "Breach Of Collective Bargaining Agreement," and

Plaintiffs expressly allege that "Frontier Airlines **breached the terms and conditions of**

**the CBA** by failing to provide Equity Payments to the Plaintiffs pursuant to Articles 24A

and 24D."  Am. Comp. ¶ 19 (emphasis added).  This Court simply does not have

jurisdiction to decide whether Frontier "breached the terms and conditions of the CBA,"

and Count I of the Amended Complaint should therefore be dismissed pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See, e.g., McCormick v. Aircraft*

*Mechs. Fraternal Ass'n*, 340 F.3d 642, 646 (8th Cir. 2003) (affirming dismissal of

plaintiffs' claims for breach of CBA against airline); *Schiltz v. Burlington N. R.R.*,

115 F.3d 1407, 1413-14 (8th Cir. 1997) (holding that claim for breach of CBA's seniority

provisions was minor dispute within exclusive jurisdiction of adjustment board); *Pyles v.*

*United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) (affirming dismissal of claim for breach of LOA which modified pre-existing CBA).

## II.     PLAINTIFFS' COMMON-LAW CLAIMS ARE PREEMPTED BY THE RAILWAY LABOR ACT.

The RLA preempts state-law claims, and precludes federal-law claims, where resolution of the claim is dependent on a disputed issue of CBA interpretation. *See, e.g., Bloemer v. Northwest Airlines, Inc.*, 401 F.3d 935, 938 (8th Cir. 2005) ("Preemption occurs if the claims are 'inextricably intertwined with consideration of the terms of the labor contract' so as to require interpretation of the CBA."); *Deneen*, 132 F.3d at 439 ("Courts can resolve questions of federal or state law involving labor claims only if the issues do not require the court to construe the collective bargaining agreement."); *South*, 2013 WL 6253582, at *4 (same); *see also Hastings v. Wilson*, 516 F.3d 1055, 1059-60 (8th Cir. 2008) (holding that claim for breach of fiduciary duty under Employee Retirement Income Security Act ["ERISA"] was preempted by RLA); *Jenisio*, 187 F.3d 970 (8th Cir. 1999) (holding that ERISA claim for benefits was preempted by RLA); *Thacker v. St. Louis Southwestern Ry.*, 257 F.3d 922, 924 (8th Cir. 2001) (holding that employee's claim under Federal Employer's Liability Act was preempted by RLA).

As demonstrated below, Plaintiffs' state-law claims for promissory estoppel (Count II) and unjust enrichment (Count III) require interpretation of the Frontier-AFA CBA and are therefore preempted by the RLA.

**A.     Plaintiffs' Claim For Promissory Estoppel Is Based On, And Would Require Interpretation Of, The Frontier-AFA Collective Bargaining Agreement, And Is Therefore Preempted By The Railway Labor Act.**

In Count II, for promissory estoppel, Plaintiffs allege that ***"[a]s part of the negotiated CBA***, Frontier represented to the Plaintiffs that they would be entitled to Equity Participation in exchange for Concessions made by the Plaintiffs" and that "Frontier made [this] promise . . . in writing, ***through Articles 24A and 24D of the CBA***, as well as other communications to Plaintiffs."  Am. Comp. ¶¶ 25, 28 (all emphasis added).  Plaintiffs' claim is, thus, squarely grounded in Article 24 of the CBA:  the very promises and representations which Plaintiffs allegedly seek to vindicate are the express provisions of the CBA.  For that reason alone, their promissory estoppel claim is preempted by the RLA.  *See Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495, 509 (E.D.N.Y. 2004) (dismissing state-law claims, including for promissory estoppel, where plaintiffs' claims "seek to protect their contractual rights negotiated under the authority of the RLA," and "[p]laintiffs cannot point to a state law source of rights independent of these collectively bargained agreements.").

Furthermore, even if Plaintiffs' promissory estoppel claim were based in part on unspecified "other communications" (*see* Am. Compl. ¶ 28), the claim would still be preempted because it would require interpretation of the Frontier-AFA CBA.  Under Iowa law, the elements of a claim for promissory estoppel are:  "(1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the

promisee was seeking assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his or her substantial detriment *in reasonable reliance* on the promise; and (4) injustice can be avoided only by enforcement of the promise." *PFS Distribution Co. v. Raduechel*, 387 F. Supp. 2d 1020, 1025-26 (S.D. Iowa 2005), *aff'd*, 574 F.3d 580 (8th Cir. 2009) (emphasis added).  Even if Frontier extra-contractually promised Plaintiffs in 2011 that they would receive an "Equity Payment" at some point in the indefinite future without regard to their employment status with Frontier at the time of the payment (*see* Am. Compl. ¶¶ 25-27), and even if Plaintiffs acted in reliance on Frontier's alleged promise when voting in favor of the CBA in 2011 (*see id.* ¶ 33), any determination as to whether Plaintiffs' alleged reliance was reasonable would necessarily depend on resolution of the parties' dispute regarding the correct interpretation of Article 24.

As the court in *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 333 (3d Cir. 1993), explained:

> If the collective bargaining [agreement] gives the UPS the right to discharge a probationary employee without cause and renders invalid any conflicting promise in a personnel manual or elsewhere, [plaintiff's] first four claims—wrongful discharge, breach of contract, promissory estoppel, and tortious interference with contract—are, in all likelihood, untenable.  It necessarily follows that their resolution requires interpretation of the collective bargaining agreement and that submission to the Adjustment Board, rather than a court, is required.

*Cf. Gore v. Trans World Airlines*, 210 F.3d 944, 949-50 (8th Cir. 2000) (holding that employee's state-law claim for false arrest, which required proof that airline employer's

actions were done "without legal justification," was preempted by the RLA where airline asserted that its actions were required by provisions of the CBA).

For the foregoing reasons, Plaintiffs' claim for promissory estoppel should be dismissed.

**B.     Plaintiffs' Claim For Unjust Enrichment Would Require Interpretation Of The Frontier-AFA Collective Bargaining Agreement, And Is Therefore Preempted By The Railway Labor Act.**

Under Iowa law, to succeed on their claim for unjust enrichment, Plaintiffs must establish that:  (1) Frontier was enriched by the receipt of a benefit; (2) the enrichment was at the expense of Plaintiffs; and (3) it is unjust to allow Frontier to retain the benefit under the circumstances.  *See Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012).

In order to determine whether it was "unjust" for Frontier to not have made "Equity Payments" to the Plaintiffs, the Court would necessarily have to interpret the Frontier-AFA CBA – for, if Frontier was acting in compliance with Article 24, it could not possibly have acted "unjustly."  Plaintiffs' unjust enrichment claim is therefore preempted by the RLA.  *See Bloemer*, 401 F.3d at 939 (holding that state-law claims, including for unjust enrichment, were preempted where "plaintiffs' claims originate in rights and duties in the CBAs, which therefore must be interpreted."), *aff'g Bloemer v. Nw. Airlines, Inc.*, No. Civ.03-4183(MJD/JGL), 2003 WL 22508505 (D. Minn. Nov. 4, 2003); *see also Cooper,* 349 F. Supp. 2d at 509 (dismissing state-law claims, including

15

for unjust enrichment, and stating that "not only would adjudication of these claims require interpretation of collectively bargained agreements, but the relief plaintiffs seek in their state law claims would require the court in effect to change the terms of these agreements to reinstate the seniority benefits plaintiffs lost as a consequence of [another collectively-bargained agreement]. This court lacks jurisdiction to provide such relief.").

III.   **PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT THEY HAVE NOT AND CANNOT PLAUSIBLY ALLEGE THAT FRONTIER WAS ENRICHED BY NOT MAKING "EQUITY PAYMENTS" TO PLAINTIFFS.**

Even if the Court were to determine that Plaintiffs' claim for unjust enrichment is not preempted by the RLA, the claim should still be dismissed because Plaintiffs have not and cannot plausibly allege that Frontier has been enriched. *See Lakeside Feeders, Inc.,* 666 F.3d at 1112 (noting that one element of claim for unjust enrichment is that defendant was enriched by receipt of a benefit). There is no allegation in this case that Frontier failed to pay the $40 million as required by the March 15, 2017 LOA. Nor is there any allegation that $40 million was somehow an insufficient amount of consideration. Under Plaintiffs' theory, they should have received a portion of the $40 million that was paid by Frontier to other flight attendants. If anyone, it is the other flight attendants who were "unjustly" enriched – not Frontier. Because Plaintiffs' have not plausibly alleged an essential element of their claim for unjust enrichment, Count III should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

16

## CONCLUSION

For the foregoing reasons, Defendant Frontier Airlines, Inc. respectfully requests that this Court dismiss Plaintiffs' Amended Complaint, with prejudice, pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure.

BELIN McCORMICK, P.C.

By:   *Matthew C. McDermott*
　　　Matthew C. McDermott

666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 283-4643
Facsimile: (515) 558-0643
E-Mail: mmcdermott@belinmccormick.com

Chris A. Hollinger (*pro hac vice* pending)
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
E-mail: chollinger@omm.com

ATTORNEYS FOR DEFENDANTS
FRONTIER AIRLINES, INC.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was
served upon the parties to this action by serving a copy
upon each party listed below on April 12, 2018 by

☑ Electronic Filing System     ☐ Other _____

Kellie L. Paschke
Skinner & Paschke, PLLC
204 West Hickman Road
Waukee, IA 50263
kellie@splawiowa.com; beth@splawiowa.com

Jason D. Walke
Walke Law, LLC
204 West Hickman Road
Waukee, IA 50263
jwalke@walkelaw.com; nphifer@walkelaw.com

Signature:     */s/ Lori McKimpson*
_____

F0765\0001\(2938216.2)

18