IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, *et. al*, | |
| Plaintiffs, | Civil Action No. |
| v. | 4:17-cv-00452-JEG-HCA |
| FRONTIER AIRLINES, INC., | |
| Defendant. | |

## DECLARATION OF CHRIS A. HOLLINGER IN SUPPORT OF DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS

I, Chris A. Hollinger, submit the following declaration in support of the motion to dismiss filed by Defendant Frontier Airlines, Inc. ("Frontier") in the above-captioned matter.

1.     I am a partner with the law firm O'Melveny & Myers LLP and the attorney principally responsible for the representation of Frontier in this matter.  I am an attorney licensed to practice law in the State of California and have applied for admission *pro hac vice* in the Southern District of Iowa in this action.

2.     I participated in the labor arbitration discussed in Plaintiffs' First Amended and Substituted Complaint (Doc. No. 2) on behalf of Frontier and affirm that the documents listed below and attached to my Declaration were entered into the arbitration record as joint exhibits:

1

a. **Exhibit A**: Article 24 of the 2011 Collective Bargaining Agreement ("CBA") between Frontier and the Association of Flight Attendants-CWA (the "AFA") (the "Frontier-AFA CBA").

b. **Exhibit B**: Article 2 of the Frontier-AFA CBA.

c. **Exhibit C**: Letter of Agreement Between Association of Flight Attendants-CWA, AFL-CIO and Frontier Airlines, Inc. re Equity Participation Payment, dated March 15, 2017.

d. **Exhibit D**: Non-Disciplinary Supplemental Grievance, dated May 25, 2017.

e. **Exhibit E**: Non-Disciplinary Grievance, dated May 12, 2017.

f. **Exhibit F**: Non-Disciplinary Supplemental Grievance, dated May 15, 2017.

g. **Exhibit G**: Non-Disciplinary Supplemental Grievance, dated June 13, 2017.

h. **Exhibit H**: Denial of Consolidated Grievances, dated June 30, 2017.

i. **Exhibit I**: Appeal of Grievance Denial to System Board of Adjustment, dated July 13, 2017.

j. **Exhibit J**: Article 19 of the Frontier-AFA CBA.

3.     An evidentiary hearing before the arbitration panel was conducted on March 20, 2018, in which Plaintiffs, Frontier, and the AFA participated.  The record is not closed, however, as Plaintiffs may yet submit the testimony of one additional witness.

Thereafter, and in the normal course, the parties will file post-hearing briefs and a decision will be issued.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Dated:  April 12, 2018.

Chris A. Hollinger

3

# Exhibit A

**ARTICLE 24**
**EQUITY, PROFIT-SHARING, AND WAGE & BENEFIT SNAPBACKS**

A.  **EQUITY PARTICIPATION**

Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

    1.  The value of the Equity Participation is $16.0 million.

    2.  The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.

    3.  The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

    4.  Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary dragalong rights.

    5.  Vesting:  The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments".  To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%

B.  **PROFIT SHARING PROGRAM.**

The Company has established a Profit Sharing Plan (the "PSP") for employees participating in the Company's restructuring efforts. According to the terms of the PSP, the Company will make contributions as follows:

    1.  For pre-tax earnings greater than 2%, but less that 4% of total Company revenue, 50% will be contributed to the PSP.

    2.  For pre-tax earnings greater than 4%, but less than 6% of total Company revenue, 25% will be contributed to the PSP.

    3.  For pre-tax earnings greater than 6% of total Company revenue, 10% will be contributed to the PSP.

    4.  50% of contributions to the PSP will be allocated to the Frontier

pilots and the remaining 50% will be allocated to the other participating Frontier employee groups in proportion to their contribution. The proportional share of the Flight Attendant group is 18% of the 50% share of the non-pilot groups.

5.     The Company will distribute all profit sharing payments no later than April 30 of each year based on the audited results from the preceding calendar year.

C.     **SNAPBACKS**

1.     The overtime threshold, per diem and holiday pay will be reinstated if the Company is profitable for two consecutive years with pretax profits in excess of 5%, after profit sharing.

2.     The Company's matching contribution to the 401K Plan will be reinstated if the Company posts 2 straight years of pre-tax profits in excess of 5%, after profit sharing. The Company retains the right to restore the Company's matching contribution partially or fully in its discretion. Effective with the first paycheck in July 2016, the Company's matching contribution to the 401k Plan will be reinstated.

D.     **ADDITIONAL PROVISIONS**

Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement.

# Exhibit B

J 1



## Association of Flight Attendants-CWA
## AFL-CIO

# Frontier Airlines
# Flight Attendant Contract

# 2011-2016

**ARTICLE 2**
**DEFINITIONS**

1.      **Active** –The time a Flight Attendant is available for Duty Assignment or on
        paid time off.    A Flight Attendant on leave of absence, furlough, or another
        "no pay" status is not considered active, unless otherwise specified in this
        Agreement.

2.      **ADD** – To pick up additional trips in order to increase the value of a Flight
        Attendant's line or to replenish his/her sick bank.

3.      **Affiliate** – As used in this Agreement, the term "Affiliate" refers to: any
        Parent; any Entity that Controls or manages the Company or any Entity that
        the Company Controls or manages, or; any Entity under Common Control
        with the Company, or; any other corporate subsidiary, parent or division of
        the Company, a Parent or any other Affiliate.

4.      **Agreement (with capital "A")** – This Collective Bargaining Agreement (CBA)
        including any Letters of Agreement or Memorandum of Understanding
        between the Company and the Union.

5.      **Artificial Credit** – Unpaid credit used to adjust or build a schedule due to
        known absences.

6.      **Association** – See *Union*.

7.      **Automated Bid System** – A system that constructs monthly schedules for
        Flight Attendants based on his/her preference and seniority.

8.      **Available to Assign (AVA)** – A Flight Attendant available for assignment or
        reassignment per the terms of this Agreement.

9.      **Award** –An assignment given to a Flight Attendant based on his/her
        individual seniority and bid preferences, or as otherwise provided in this
        Agreement, as submitted through the Automated Bid System.

10.     **Base** – Any geographic locations designated by the Company where Flight
        Attendants are stationed and their duty assignments are scheduled to
        begin and end.

11.     **Bid** – Preferences submitted by a Flight Attendant through the Automated
        Bid System.

12.     **Bid Period** – A block of time, usually a calendar month, for which Flight
        Attendants bid and are awarded schedules.  Under no circumstances will a
        Bid Period be less than 30 days.

13.     **Block Hour/Block Time** – The period of time beginning when an aircraft's
        parking brake is released and the boarding door is closed and ending at
        Block In.

14.     **Block In** - The time at which an aircraft reaches a destination (generally at a gate), the parking brake is set, and the boarding door is open.

15.     **Calendar day** – Beginning at 0001 and ending at 2400.

16.     **Call-out status** – A period of time when a Reserve Flight Attendant must be available to receive duty assignments from Crew Scheduling.

17.     **CDO (Continuous Duty Overnight/Standup)** - A scheduled duty period that begins in one Calendar Day and ends in the following Calendar Day, which includes an overnight stay out of Domicile that is scheduled for less than FAR required minimum rest.

18.     **Charter** – An offline or online revenue flight that is not a regularly scheduled flight.

19.     **COLA (Company Offered Leave of Absence)** – A voluntary unpaid leave of absence for a period of time as offered by the Company and awarded as described in Article 12.D.

20.     **Company** – Frontier Airlines, Inc.

21.     **Credit/Credit Time/Credit Hour** – The total amount of time added to a Flight Attendants schedule.  Includes block time, company business, training, or any other time used for pay purposes.

22.     **Day off** - A calendar day off free of any duty.

23.     **Deadhead** – Transportation at Company direction to or from a duty assignment.

24.     **Debrief** – The time allowed for completing post flight duties.

25.     **Declared Irregular Operations (DIO)** – A short-term event including weather, airport closure, etc. that significantly disrupts or that is predicted to significantly disrupt at least 25% of the total daily system flight segments.

26.     **Domicile** – *See Base*.

27.     **DROP** – The removal of flight(s) from the Flight Attendant's schedule.

28.     **Duty Assignment**- The assignment of trip or other work by the Company.

29.     **Duty Period/Duty Time** – All time a Flight Attendant is on duty, commencing with report for duty and terminating when a Flight Attendant is released from duty.

30.     **Emergency Leave** – Unpaid time off for unavoidable serious circumstances up to 3 days with the approval of Inflight management.

31.     **Ferry** – A flight that does not transport revenue passengers used to reposition an aircraft to where it is needed.

32. **Flight Attendant** – An employee of the Company whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services.

33. **Flight Attendant Commuter (FAC)** – A Flight Attendant who lives in a different city other than his/her assigned base and commutes to base via air.

34. **Furlough** – The involuntary removal of a Flight Attendant from active duty as a Flight Attendant due to a reduction in force.

35. **GO** – Frontier Airlines, Inc., General Offices in Denver.

36. **Grievance** – A complaint against the Company or another department that alleges contract violations or unfair disciplinary action.

37. **Ground Time** – The amount of time between flight segments.

38. **International Flight** – Any flight operating to or from a city outside the United States of America.

39. **Irregular Operation** – Flights that are delayed or do not operate in accordance with the published schedule because of circumstances such as weather, maintenance, Air Traffic Control, acts of terror, security breaches or other similar circumstances.

40. **Job Share** – As described in Article 5.E.7., a position offered for one bid period when overstaffing occurs to allow Flight Attendants to work low-time hours.

41. **Junior Assignment** – An involuntary duty assignment given to a Flight Attendant on a scheduled day off.

42. **Layover** – An overnight rest period outside the Flight Attendant's base.

43. **Like Trip** – A replacement trip due to a cancellation, schedule change, or an administrative error. The replacement trip must fall within the following guidelines: Report time no more than 1 hour prior to the original report time and a release time of no more than 3 hours after the original release time for a "Reschedule" or 2 hours after the original release time for a "Reroute".

44. **Line** – A bid period award built in accordance with this Agreement that consists of assigned trips, days off, and pre-award requests.

45. **Line Holder** – A Flight Attendant who has been awarded a line.

46. **Longevity** – the period of time commencing on the Flight Attendant's date of hire (as a Flight Attendant) which shall begin on the first day a Flight Attendant is scheduled to and reports to the Company's Flight Attendant training program and continuing while the Flight Attendant is active, except where specifically stated otherwise in this Agreement.

47.   **Low-time** – As described in Article 5.I a position granted for a defined period of time to Flight Attendants who will be awarded between 37:30 and 58 hours and may work up to 59:59 hours per bid period.

48.   **Mixed Line** – A bid period award built in accordance with this Agreement that consists of trips, blocks of reserve days, days off, and pre-award requests.

49.   **Month** - A calendar month.

50.   **Open Time** – Trips or portions of trips that are unassigned or un-awarded with which Flight Attendants may ADD, or SWAP.

51.   **Positive Contact** – A live telephone or in-person conversation between a Flight Attendant and the Company.

52.   **Pre-award** – Request submitted prior to a bid period to accommodate pre-planned absences including, but not limited to: vacation, scheduled training, Company business, Union days, and jury duty.

53.   **Ready Reserve (RR)** – A period of time as defined in this Agreement when a Reserve Flight Attendant is required to be on reserve at his/her base airport or another base airport.

54.   **Red-eye** – Any Duty Period, other than a CDO, that reports prior to and releases after, or the entire Duty Period occurs between, 0100 and 0300 Local Base Time.

55.   **Release** – Time when a Flight Attendant is relieved from duty.

56.   **Report Time** - The time a Flight Attendant is scheduled to report for a flight assignment, training, or other Company-assigned duty.

57.   **Reroute** - A change to a trip after 1800 the day prior to initial trip report.

58.   **Reschedule** – A change to a trip before 1800 the day prior to an initial trip report.

59.   **Reserve** – A Flight Attendant who was awarded a reserve line.

60.   **Reserve day** – A calendar day when a Reserve Flight Attendant is available for duty assignment.

61.   **Reserve Line** – A bid period award built in accordance with work rules of this Agreement consisting of Reserve days, days off and pre-award requests.

62.   **RGS** – Recurrent Ground School code for the automated bid system.

63.   **RON** – Remain overnight.

64.   **Segment/Leg** - A flight between cities that may or may not terminate in base.

65.   **Seniority/Seniority Date** - The length of service with the Company as a Flight Attendant.

66.   **Short Call** – A notification from Crew Scheduling to a Reserve Flight Attendant that requires the Flight Attendant to report for a duty assignment no later than 2 hours from the time of the call.

67.   **SWAP** – A trip swap with available Open Time via the automated bid system.

68.   **Time Zones** - Unless otherwise specified all times listed in this agreement are Eastern Time.

69.   **TRADE** – An exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between two Flight Attendants via the automated bid system.

70.   **Transition** - The period of time when trips may overlap bid periods.

71.   **Trip/Sequence/Pairing** – A segment or series of segments over one or more days that begin and end in a Flight Attendant's base.

72.   **Union** – Association of Flight Attendants – CWA, AFL-CIO

73.   **VAC** – Vacation code for the automated bid system.

74.   **Vacancy** – Open Flight Attendant positions at a specified Base.

75.   **Wet Lease** – An Agreement between the Company and another air carrier in which the Company provides aircraft(s) and crew(s) to the other air carrier.

# Exhibit C

**Letter of Agreement**
**between**
**ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO**
**and**
**FRONTIER AIRLINES, INC.**

---

**Equity Participation Payment**

---

This Letter of Agreement is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between FRONTIER AIRLINES, INC. (the "Company") and the ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO (the "Union"). The Company and the Union are parties to that certain Frontier Airlines Flight Attendant Contract 2011–2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendants are, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24A thereto (the "Equity Participation"). The parties desire to avoid any possible disputes with respect to the Equity Participation and have mutually agreed to the following:

**A.  Equity Participation Payment**

1.  Payment. In full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24A of the CBA, the Company agrees to pay to the eligible Flight Attendants an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment"), which shall be payable as follows: (a) thirty six million, five hundred thousand dollars ($36,500,000) shall be remitted to individual Flight Attendants in six substantially equal installments on the first payroll date of each month commencing on June 1, 2017 (each, a "Payment Date"), less any applicable withholdings, in accordance with the Allocation Schedule (as defined below) and (b) three million, five hundred thousand dollars ($3,500,000) will be remitted to a third party escrow agent in accordance with Section B of this Letter of Agreement.

2.  Allocation Schedule. No later than May 1, 2017, the Union shall provide the Company with a written schedule (the "Allocation Schedule"), setting forth the name and employee identification number of each Flight Attendant eligible to receive a portion of the Equity Participation Payment (each, an "Eligible Flight Attendant") and the gross amount of the Equity Participation Payment to be paid to each Eligible Flight Attendant upon each Payment Date. The Union shall determine the Eligible Flight Attendants and their portion of the Equity Participation Payment in its sole discretion, provided, that the total Equity Participation Payments identified on the Allocation Schedule for any Payment Date shall not exceed the aggregate payment the Company is obligated to make on such Payment Date pursuant to this Letter of Agreement (after giving effect to the Escrow). The Company may rely on the Allocation Schedule for all purposes hereof.

3.  Employment Taxes; Matching Contributions. The Company shall be responsible for (a) the employer-portion of any employment taxes due in connection with the Equity Participation Payments to be made to the Flight Attendants under this Letter of Agreement and (b) any matching contributions required to be made in accordance with the terms and conditions of the Company's 401(k) plan based on any Flight Attendant contributions of Equity Participation Payments to such 401(k) plan in accordance with its terms and subject to all applicable plan limits. All other withholding taxes and similar obligations shall be the responsibility of the Flight Attendants and the Company is authorized to make appropriate withholding deductions from the payments hereunder.

4.  Payment Subject to Payroll Information and Release. Payment of any portion of the Equity Participation Payment to an Eligible Flight Attendant shall be subject to such Flight Attendant's provision of any necessary administrative information (including a valid tax identification number) and execution and

1

delivery of a general release of claims against the Company and the Union in the form attached hereto as Exhibit A (a "Release of Claims") that becomes effective and irrevocable within sixty (60) days of the date this Letter of Agreement is executed and the Company shall not be obligated to make any payment hereunder to a Flight Attendant in the absence of the Company's receipt of such executed Release of Claims on or prior to the expiration of such sixty (60) day period.

## B. Escrow for Administrative Costs, Fees and Expenses.

No later than June 1, 2017, the Company shall deposit with a third party escrow agent to be identified in writing by the Union (the "Escrow Agent") an amount equal to $3,500,000 (the "Escrowed Amount") to be held in escrow by the Escrow Agent to reimburse the Union for any reasonably documented costs, fees and other expenses associated with the negotiation and execution of this Letter of Agreement, including the fees and expenses of the legal and financial advisors retained by the Union in connection herewith, and the administration of the Equity Participation Payments pursuant to the terms and conditions of an escrow agreement to be entered into between the Union and the Escrow Agent and consistent with this Letter of Agreement. At such time as the Union determines that the Escrowed Amount exceeds the amount needed to reimburse costs, fees and other expenses associated with the administration of the Equity Participation Payments, the Union shall cause such funds to be remitted to Eligible Flight Attendants. In order to provide administrative assistance to the Union in connection with any such remittances, the Company will facilitate such payment, through its payroll system,, as soon as administratively practicable and, in any event, within thirty (30) days, whereupon the Company shall pay an aggregate amount equal to such excess funds provided to it by the Union, less applicable withholdings, to Eligible Flight Attendants in accordance with an Allocation Schedule provided by the Union in writing and otherwise subject to the other terms and conditions hereof. The Union shall be solely responsible to pay its fees and expenses related to this Letter of Agreement and the Company shall have no obligation therefor.

## C. Release of Claims.

The Union hereby releases and forever discharges the Company and each of its predecessors, successors, related entities, owners, shareholders, directors, officers, employees, agents, representatives and insurers from any and all injuries, damages, claims, obligations, debts, liabilities, accounts, costs, expenses, demands, actions, or causes of action, known or unknown, arising out of or in any way connected with or resulting from any of the Union's rights with respect to the Equity Participation, except the obligations of the Company under this Letter of Agreement.

## D. Indemnification

The Union shall indemnify, defend and hold harmless the Company and its affiliates and their respective shareholders, members, partners, directors, managers, officers, employees, affiliates, agents and advisors from and against any damages, losses, deficiencies, obligations, penalties, judgments, settlements, claims, payments, fines, interest costs and expenses, including the costs and expenses of any and all actions and demands, assessments, judgments, settlements and compromises relating thereto and the costs and expenses of attorneys, accountants, consultants and other professionals incurred in the investigation or defense thereof or the enforcement of rights hereunder relating to or resulting from any claim made by any Flight Attendant or group of Flight Attendants to the extent relating to his, her or their allocation of the Equity Participation Payment as set forth in the Allocation Schedule.

## E. Miscellaneous

1. Representations. The Company represents and warrants to the Union, that the Company is not party to, and has no knowledge of, any litigation or legal action in respect of the Equity Participation or Section 24A of the CBA. The Union represents and warrants to the Company, that the Union is not party to, and

2

has no knowledge of, any litigation or legal action in respect of the Equity Participation or Section 24A of the CBA.

2.  <u>Entire Agreement</u>.  This Letter of Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof and is entered into in full and complete satisfaction of Section 24A of the CBA.  Any representation, warranty, promise or condition, whether written or oral, not specifically incorporated herein, shall not be binding or of any force or effect upon the parties.

3.  <u>No Implied Changes to Flight Attendant Agreement</u>:  This Letter of Agreement does not modify the CBA except as specifically provided herein.

4.  <u>Governing Law</u>.  Any dispute regarding the application or interpretation of this Letter of Agreement shall be resolved in accordance with the terms of Articles 18 and 19 of the CBA, as required by Section 204, Title II of the Railway Labor Act, as amended.

IN WITNESS WHEREOF, the parties have signed this Agreement this 15th day of March, 2017

FRONTIER AIRLINES, INC.

ASSOCIATION OF FLIGHT
ATTENDANTS, AFL-CIO

_____
Howard M. Diamond
General Counsel and Secretary

_____
Name:
International President

_____
Name:
MEC President

_____
Name:
Senior Staff Attorney

3

## EXHIBIT A

## FORM OF RELEASE OF CLAIMS

(Attached)

4

## FRONTIER AIRLINES, INC.
## RELEASE OF CLAIMS

This Release of Claims (this "Release") is entered into by and among FRONTIER AIRLINES, INC. (the "Company"), the ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO (the "Union") and the flight attendant named on the signature page hereto ("Flight Attendant") effective as of the date of the last signature hereto.

### RECITALS:

WHEREAS, the Company and the Union are parties to that certain Frontier Airlines Flight Attendant Contract 2011–2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendant is, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24A thereto (the "Equity Participation");

WHEREAS, the Company and the Union have entered into a Letter of Agreement, dated as of March 15, 2017 (the "LOA"), pursuant to which the Company has agreed, subject to the terms and conditions thereof, to pay to eligible flight attendants covered by the CBA an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment");

WHEREAS, the Union has determined that Flight Attendant is eligible to receive a portion of the Equity Participation Payment under the LOA and has allocated Flight Attendant an aggregate amount set forth on the signature page hereto (the "Individual Equity Participation Amount") to be paid, less required withholdings, in six substantially equal installments on the first payroll date commencing on June 1, 2017 in accordance with the terms of the LOA; and

WHEREAS, in consideration of the foregoing, and as a condition to the Company's and the Union's willingness to enter into the LOA, the Union's allocation of the Individual Equity Participation Amount, and the Company's payment of the Individual Equity Participation Amount, the Company and the Union have required that Flight Attendant execute and deliver this Release to the Company and the Union not later than May 14, 2017 (the "Release Deadline").

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements set out herein, the parties hereto hereby agree as follows:

1.    **Equity Participation Settlement**.   The payment of the Individual Equity Participation Amount in accordance with the terms and conditions of the LOA shall constitute a full and complete settlement of any and all claims Flight Attendant may have relating to the Equity Participation and Section 24A of the CBA.

2.    **Waiver and Release.**   Subject to the last sentence of the first paragraph of this Section 2, Flight Attendant, on his or her own behalf and on behalf of his or her heirs, executors, administrators, attorneys and assigns, hereby unconditionally and irrevocably releases, waives and forever discharges the Company, the Union and each of the Company's and the Union's affiliates, parents, successors, predecessors, and the subsidiaries, directors, owners, members, shareholders, officers, agents, and employees of the Company, the Union and the Company's and the Union's affiliates, parents, successors, predecessors, and subsidiaries (collectively, all of the foregoing are referred to as the

5

"**Released Parties**"), from any and all causes of action, claims and damages, including attorneys' fees, whether known or unknown, foreseen or unforeseen, presently asserted or otherwise arising through the date of his or her signing of this Release, concerning arising out of or in connection with the Equity Participation, Section 24A of the CBA, the Equity Participation Amount and Flight Attendant's allocation of the Individual Equity Participation Amount, including, without limitation, any claim arising under any federal, state or local laws, ordinances or regulations and any claim arising under any common law principle or public policy, including, without limitation, all suits in tort or contract. Notwithstanding any other provision of this Release to the contrary, this Release is contingent upon the Company paying Flight Attendant the Individual Equity Participation Amount in accordance with the terms of the LOA and does not encompass, and Flight Attendant does not release, waive or discharge, the obligations of the Company to pay the Individual Equity Participation Amount.

Flight Attendant understands that by signing this Release, he or she is not waiving any claims or administrative charges which cannot be waived by law or any claims that accrue in the future. He or she is waiving, however, any right to monetary recovery or individual relief should any federal, state or local agency pursue any claim on his or her behalf arising out of or related to the Equity Participation, Section 24A of the CBA, the Equity Participation Amount and the Individual Equity Participation Amount. Flight Attendant further agrees without any reservation whatsoever, never to commence a legal action or sue the Released Parties or become a party to a lawsuit on the basis of any and all claims of any type released in this Release.

3. **Acknowledgments.** Flight Attendant is signing this Release, knowingly and voluntarily. He or she acknowledges that: (a) he or she is hereby advised in writing to consult an attorney before signing this Release; (b) he or she has relied solely on his or her own judgment and/or that of his/ her attorney regarding the consideration for and the terms of this Release and is signing this Release knowingly and voluntarily of his or her own free will, and has had the opportunity to ask questions of, and be provided such information reasonably requested by him or her from the Company and the Union; and (c) he or she is not entitled to the Individual Equity Participation Amount unless he or she agrees to the terms of this Release.

4. **Entire Agreement.** There are no other agreements of any nature between or among the parties hereto with respect to the matters discussed in this Release, except as expressly stated herein, and in signing this Release, Flight Attendant is not relying on any agreements or representations, except those expressly contained in this Release.

5. **Execution.** This Release may be executed by facsimile and in counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

6. **Severability.** If any provision of this Release is found, held or deemed by a court of competent jurisdiction to be void, unlawful or unenforceable under any applicable statute or controlling law, the remainder of this Release shall continue in full force and effect.

7. **Governing Law.** This Release and its terms will be construed, enforced and governed by the laws of the State of Colorado without regard to conflict of law provisions. If any provision of this Release is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

6

8.   **Choice of Forum**.   The parties to the Release irrevocably and unconditionally (i) agree that any legal proceeding arising out of or in connection with this Release shall be brought in a court of subject matter jurisdiction located in the State of Colorado, which in the case of a state court shall be the courts of Denver County, California and in the case of federal jurisdiction, the courts of the District of Colorado, (ii) consent to the exclusive jurisdiction of such a court in any such proceeding, and (iii) waive any objection to the laying of venue of any such proceeding in any such court.   The parties also irrevocably and unconditionally consent to the service of any process, pleadings, notices or other papers in connection with any such proceeding and submit to personal jurisdiction in such venue.

*(Signature Page Follows)*

7

IN WITNESS WHEREOF, the parties have duly executed this Release as of the day and year set forth below.

FLIGHT ATTENDANT:

_____

Name: _____

Dated: _____

Individual Equity Participation Amount:
$ _____

FRONTIER AIRLINES, INC.

By: _____
Name:
Title:

Dated: _____

ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO

By: _____
Name:
Title:

Dated: _____

8

# Exhibit D

J-7

# Skinner & Paschke, PLLC

Attorneys and Counselors at Law

Troy A. Skinner
Kellie L. Paschke
Melanie L. Jackson

204 West Hickman Road
Waukee, Iowa 50263
Telephone 515-987-0022
Facsimile 515-987-6972
E-mail: kellie@splawiowa.com

May 25, 2017

Via Email:  Howard.Diamond@flyfrontier.com
Via Certified Mail

Frontier Airlines, Inc.
ATTN:  Howard Diamond
General Counsel and Secretary
7001 Tower Road
Denver, CO 80249

Mr. Diamond,

Pursuant to the procedures as set forth in Article 18 of the 2011-2016 Frontier Airlines Flight Attendant Contract, please see the attached Grievance on behalf of our clients.  I would note this Grievance is being directed to your attention, rather than the Director of Inflight, as all the parties are currently being represented by legal counsel.

I look forward to your reply.

Very truly yours,

SKINNER & PASCHKE, P.L.L.C.

*Kellie L. Paschke*

Kellie L. Paschke

# Non-Disciplinary Grievance

TO:
Mr. Howard Diamond
General Counsel and Secretary

FROM:
Kellie L. Paschke
Troy A. Skinner
SKINNER & PASCHKE, PLLC

Jason D. Walke
WALKE LAW, LLC

Attorneys on behalf of the following former flight attendants:
Adeline Clark, Amanda Arana, Amy Jo Dolan, Angella Lemar, Barbara Danner, Bobbi Close,
Caroline Gagne, Christopher Bergnaud, Cibelle Pedrosa McDonald, Clara Addie McKee, Connie
Wertzbaugher, Courtney Turner, Cynthia Ann South, Darol Glasscock, David Jelinek, Debbie
Brimmerman, Denis Gerdes, Donald Moore, Dymetra Mccaskill, Faith France, Gladys Sims,
Glenn David Josang, Holly Detlefs, Jacqueline Acree, Jaimie Savor, James Young, Jenn
Beldyga, Jennie Benish, Jenny Guzzo Gray, Jerry Johnson, Jessica Armstrong, Jessica Healy,
Jocelyn McCaskill, John Miller, Karen Haw, Kathleen Arnold, Kerri Wright, Laura Hamlin,
Laura Sullivan, Levi Witthuhn, Lucas Thompson, Mary Carwile, Mike Sellers, Nancy Poffel,
Nelson Miranda, Nicole Lallier, Randolph Aucone, Rashad Owens, Renate McConathy-
Eggimann, Rhonda Nembhard, Robert Baker, Rosemary Lindsey, Ross Miller, Sarah Dinkelman,
Shanyn Kiesler, Stacey Carter, Steven Shaw, Steve Sublett, Susan Means, Tamara Stewart,
Tammy Kellsen, Zachary Bryce Davis, Zeinab Salah

SUBMIT THE FOLLOWING GRIEVANCE, WHICH OCCURRED ON:
The event(s) giving rise to this grievance occurred on or after April 26, 2017.

A VIOLATION OF CONTRACT ARTICLES PERTAINING BUT NOT LIMITED TO:
ARTICLE 24 - Equity, Profit-Sharing, and Wage and Benefit Snapbacks

A.    Equity Participation
Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as
described herein:

   1. The value of the Equity Participation is $16.0 million.

   2. The Equity Participation value will be converted to first dollar equity in the Company at
   a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any

higher rate offered to any other key stakeholder in the restructuring process.

3. The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

4. Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary dragalong rights.

5. Vesting: The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%.

D.   Additional Provisions

Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement.

**THE FACTS PERTAINING TO SAID GRIEVANCE ARE AS FOLLOWS:**

Article 24, Paragraph A of the Collective Bargaining Agreement (CBA) provides that "Flight Attendants *will be entitled* to equity in the Company as described herein…" Further, Paragraph D states that "Equity Participation as set forth in Paragraph A…..*will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012.*"

The above named former flight attendants were on the Frontier Seniority List as of January 1, 2012.

Pursuant to a Letter of Agreement (LOA) executed between the Company and the Union on March 15, 2017, Frontier purported to permit the Union to determine who was eligible for equity payments per Article 24.

On April 14, 2017, the Master Executive Council (MEC) sent an email requiring "any flight attendant" contesting his or her placement on the list or computation of their equity payment to notify the AFA-Frontier MEC of the inaccuracy. The subject of each email was required to contain the heading "Equity List" and be sent no later than April 21, 2017.

The above named former flight attendants sent an email on or before April 21, 2017 to timely notify the AFA-Frontier MEC of their placement on the list and entitlement to equity payments, and challenge their absence from the same.

On or after April 26, 2017, the above named former flight attendants received an email from Jennifer Sala, AFA-Frontier MEC, stating that they were ineligible for equity payments because they were not "continuously" on the Frontier Flight Attendant Seniority List from January 1, 2012 through March 15, 2017 and not a Frontier employee as of March 15, 2017.

The applicable CBA does not require either "continuous" employment through March 15, 2017 or active employment as of March 15, 2017 in order to receive equity payments. Despite the clear terms of the CBA, the Company (through the Union) has improperly denied payments to the above named former flight attendants.

## RELIEF SOUGHT:

The above named former flight attendants should immediately be placed on the eligibility list and provided with equity payments pursuant Article 24 of the CBA.

SIGNED:  *Kellie L Paschke*

Kellie L. Paschke

DATE:  *May 25, 2017*

# Exhibit E

J-5

*Jℛ*

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC
ATTORNEYS AT LAW

900 CHERRY TOWER
950 SOUTH CHERRY STREET
DENVER, COLORADO  80246-2666
FACSIMILE 303.753.9997
TELEPHONE 303.753.9000
www.lohfshaiman.com

LAURA K. JOHNSON, EXT. 260
PARALEGAL
ljohnson@lohfshaiman.com

May 12, 2017

**VIA E-MAIL AND U.S. MAIL**

Laura T. Rush, Director, Inflight Services
Kari Thompson, Manager, Inflight Services
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO  80249
lrush@flyfrontier.com
kthompson@flyfrontier.com

Jennifer Sala, President
Master Executive Counsel
Association of Flight Attendants-CWA Frontier Airlines
8085 E. Prentice Avenue
Greenwood Village, CO  80111
jensala@alafrontier.org
MEC@afafrontier.org

Beth DeProspero (AFA Negotiator)
P. Swanson
Association of Flight Attendants-CWA, AFL-CIO
501 3rd Street, NW
Washington, DC  20001
bdeprospero@cwa-union.org
pswanson@cwa-union.org

**RE:    GRIEVANCE against ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, ASSOCIATION OF FLIGHT ATTENDANTS-CWA FRONTIER AIRLINES, And FRONTIER AIRLINES, INC.**

Dear Ms. Rush, Ms. Thompson, Ms. Sala, MEC, Ms. DeProspero and P. Swanson:

RE:   GRIEVANCE against ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-
CIO, ASSOCIATION OF FLIGHT ATTENDANTS-CWA FRONTIER AIRLINES,
And FRONTIER AIRLINES, INC.
May 12, 2017
Page 2

Enclosed please find a grievance on behalf of a Class of Former Frontier Flight Attendants (the
"Class") for your attention. Please be advised that Justin Plaskov and Sara Maeglin of Lohf
Shaiman Jacobs Hyman & Feiger and Rachel Ellis of Ellis Employment Law Group represent the
named individuals in the grievance and file this grievance on behalf of those named individuals
and the Class in this matter. Accordingly, please direct all correspondence to both law firms
regarding this matter.

Your prompt attention is appreciated.


Very truly yours,

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC

Laura K. Johnson
Paralegal

Enclosure
cc:    Rachel Ellis, Esq.
       Clients

**GRIEVANCE**
**against**
**ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,**
**ASSOCIATION OF FLIGHT ATTENDANTS-CWA FRONTIER AIRLINES,**
**and**
**FRONTIER AIRLINES, INC.**

We, Barbara Dible, Lorraine Atterbury (f/k/a Lorraine Hennesy), Bette Aukerman, Kelly Bailey (f/k/a Kelly Drennen), Sarah Baker (f/k/a Sarah Sanborn), Suzanne Bodnar-Jackson, Debra Bowman (a/k/a Debra Jo Bowman), Kathryn Brinkley, Karie Brown, Kira Cartagena (f/k/a Kira Connie), Kristi Clarke, Melody Filarey, Emelita Gagne, Karen Hays, Susan Henry (f/k/a Susan Cady), Lisa Hermann (f/k/a Lisa Paddock), Ursula Hires (f/k/a Ursula Jordan), Patricia Jansen, Linda Jepsen, Nancy Johnson, Linda Kellerman, Christine Kernen, Mackenzie Lapp (f/k/a Mackenzie Forsha), Aimee Ross (f/k/a Aimee Culler), Dawn Shobe (f/k/a Dawn Finnefrock), Kristen Simons, Denise Smith, and Judy Sutton, on behalf of ourselves, and all others within the Class of Former Frontier Flight Attendants, as defined below, file this Grievance against the Association of Flight Attendants-CWA, AFL-CIO and the Association of Flight Attendants-CWA Frontier Airlines (collectively, the "Union") and Frontier Airlines, Inc. ("Frontier"), and state as follows:

1. The Class of Former Frontier Flight Attendants, on whose behalf this Complaint is filed, is defined as those Frontier flight attendants who were listed on the Frontier Flight Attendant Seniority List as of January 1, 2012 but were not included on the equity payment list as of April 14, 2017 and/or were not listed on the finalized equity payment list that was released on or about May 2, 2017 (collectively, "Equity Payment List").

2. At all relevant times, the Union was—and remains—the exclusive bargaining unit for all flight attendants at Frontier.

3. On October 11, 2011, the Union entered into a letter agreement called Flight Attendant Restructuring Investments which memorialized an agreement reached between Frontier and the Union. ("October 11 Letter Agreement")

4. On October 14, 2011 Frontier and the Union finalized a collective bargaining agreement ("CBA") that was to be in effect until March 1, 2016, and would renew itself without change each succeeding March 1 thereafter unless properly noticed that either party desired change.

5. In the CBA, each flight attendant, including those in the Class of Former Frontier Flight Attendants filing this grievance, gave significant consideration in exchange for a right to profit sharing and an equity interest, as described more specifically in Article 24A of the CBA ("Equity Participation Clause"). That consideration was valued at $16 million in 2011. The specific consideration given by Members of the Class of Former Frontier Flight Attendants is listed in the October 11 Letter Agreement and included: loss of pay step increase, decreased sick pay, decreased vacation credit, suspension of 401k matching

Page **1** of **3**

contributions, increased threshold of hours worked for overtime pay, reduced number of paid holidays, and reduction in per diem pay per hour.

6. The Equity Participation Clause in the CBA was included exclusively for Frontier flight attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012 and, by definition, included Members of the Class of Former Frontier Flight Attendants.

7. The Union and Frontier Airlines, Inc. entered into a letter of agreement (LOA) dated March 15, 2017, allegedly in an attempt to avoid any possible disputes with respect to equity participation rights at Frontier upon the terms and subject to the conditions set forth in Article 24A of the CBA.

8. The LOA was negotiated extremely rapidly and the Union entered into the LOA without input or ratification from its Union Members or the Members of the Class of Former Frontier Flight Attendants.

9. According to the LOA, in full and complete satisfaction of Frontier's obligations, Frontier has agreed to pay an Equity Participation Payment of $40,000,000 to eligible Flight Attendants.

10. Also according to the LOA, Frontier delegated the identification of eligible Flight Attendants to the Union. The Union was expressly obligated to provide an Allocation Schedule identifying each Eligible Flight Attendant to Frontier by May 1, 2017, and Frontier agreed in the LOA that it would expressly rely on the Union's determination of eligibility.

11. On April 14, 2017, the Union issued the Equity Payment List. Only flight attendants who were continuously on the Flight Attendant Seniority List as of January 1, 2012 and through March 15, 2017 were included on the Equity Payment List.

12. The Equity Payment List improperly denies equity payments to Members of the Class of Former Frontier Flight Attendants.

13. This denial contravenes the intent of the CBA Equity Participation clause which was designed to apply to all Frontier flight attendants on the January 1, 2012 Flight Attendant Seniority List.

14. At the time that the CBA was negotiated and ratified by its Members, there was no communication to Union Members that their equity payment would be jeopardized if they did not remain continuously employed at Frontier. It is more than likely that the Union Members in 2011 would not have ratified the CBA or agreed to the October 11 Letter Agreement if the Union Members at that time knew that continued employment through March 15, 2017 would be required to receive a benefit from the Equity Participation Clause.

15. Frontier has arbitrarily jeopardized the rights of Members of the Class of Former Frontier Flight Attendants by delegating to the Union the ability to exclusively determine which flight attendants are eligible for the equity payments. In doing so, Frontier breached the

collective bargaining agreement and multiple other duties it owed to Members of Class of Former Frontier Flight Attendants as former employees who gave consideration in exchange for the equity sharing provision contained in Article 24A of the CBA.

16. The Union has failed to fairly or adequately represent the Members of the Class of Former Frontier Flight Attendants who have been arbitrarily, discriminatorily, and in bad faith excluded from the Equity Payment List. By excluding Members of the Class of Former Frontier Flight Attendants, the Union breached multiple duties, including but not limited to, the duty of fair representation it owed to Members of Class of Former Frontier Flight Attendants as former Union Members who gave consideration in exchange for the equity sharing provision contained in Article 24A of the CBA.

17. If, after reviewing this grievance, you believe it is deficient in any way or is directed toward the wrong person, please identify any deficiencies immediately so they can be promptly addressed.


Dated May 12, 2017

Justin M. Plaskov
jplaskov@lohfshaiman.com
Lynn D. Feiger
lfeiger@lohfshaiman.com
Sara N. Maeglin
smaeglin@lohfshaiman.com
LOHF SHAIMAN JACOBS HYMAN & FEIGER PC
950 South Cherry Street #900
Denver, Colorado 80246
(303) 753-9000

Rachel E. Ellis
rachel@ellisemploymentlaw.com
ELLIS EMPLOYMENT LAW, LLC
1725 High Street, Suite 3
Denver, CO 80218
(720) 465-6972

Attorneys for Class of Former Frontier Flight Attendants

# Exhibit F

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC
ATTORNEYS AT LAW

900 CHERRY TOWER
950 SOUTH CHERRY STREET
DENVER, COLORADO 80246-2666
FACSIMILE 303.753.9997
TELEPHONE 303.753.9000
www.lohfshaiman.com

JUSTIN M. PLASKOV, EXT. 242
SENIOR ASSOCIATE

jplaskov@lohfshaiman.com
ALSO ADMITTED IN WYOMING

May 15, 2017

**VIA E-MAIL AND U.S. MAIL**

Laura T. Rush, Director, Inflight Services
Kari Thompson, Manager, Inflight Services
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO  80249
lrush@flyfrontier.com
kthompson@flyfrontier.com

Jennifer Sala, President
Master Executive Counsel
Association of Flight Attendants-CWA Frontier Airlines
8085 E. Prentice Avenue
Greenwood Village, CO  80111
jensala@afafrontier.org
MEC@afafrontier.org

Beth DeProspero (AFA Negotiator)
P. Swanson
Association of Flight Attendants-CWA, AFL-CIO
501 3rd Street, NW
Washington, DC  20001
bdeprospero@cwa-union.org
pswanson@cwa-union.org

**RE:   SUPPLEMENTAL GRIEVANCE against ASSOCIATION OF FLIGHT
ATTENDANTS-CWA, AFL-CIO, ASSOCIATION OF FLIGHT ATTENDANTS-CWA
FRONTIER AIRLINES, And FRONTIER AIRLINES, INC.**

**RE:    SUPPLEMENTAL GRIEVANCE against ASSOCIATION OF FLIGHT
ATTENDANTS-CWA, AFL-CIO, ASSOCIATION OF FLIGHT ATTENDANTS-CWA
FRONTIER AIRLINES, And FRONTIER AIRLINES, INC.**
May 15, 2017
Page 2

Dear Ms. Rush, Ms. Thompson, Ms. Sala, MEC, Ms. DeProspero and P. Swanson:

Enclosed please find a Supplemental Grievance on behalf of a Class of Former Frontier Flight
Attendants (the "Class"). As you know, we filed a grievance on Friday, May 12, 2017. We file the
enclosed, Supplemental Grievance to include additional individuals who we represent and who are
also Members of the Class.

Your prompt attention is appreciated.


Very truly yours,

LOHF SHAIMAN JACOBS HYMAN & FEIGER PC


Justin M. Plaskov

Enclosure
cc:    Rachel Ellis, Esq.
       Clients

SUPPLEMENTAL GRIEVANCE
against
ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,
ASSOCIATION OF FLIGHT ATTENDANTS-CWA FRONTIER AIRLINES,
and
FRONTIER AIRLINES, INC.

We, Barbara Dible (f/k/a Barbara Huryta), Lorraine Atterbury (f/k/a Lorraine Hennesy), Bette
Aukerman, Kelly Bailey (f/k/a Kelly Drennen), Sarah Baker (f/k/a Sarah Sanborn), Erin Barber,
Brenda Betz, Suzanne Bodnar-Jackson, Patricia Botticelli, Debra Bowman (a/k/a Debra Jo
Bowman), Jana Bramwell (f/k/a Jana Bloomquist), Deborah Brimmerman, Kathryn Brinkley,
Karie Brown, Kira Cartagena (f/k/a Kira Connie), Kristi Clarke, Rita Conca, Tracy Connolly,
Michael Coriaty, Tim Cortez, Melissa Dahlman, Danette Farrell, Melody Filarey, Emelita
Gagne, Rebekah Grim (f/k/a Rebekah Tauscher), Arianna Groven, Karen Hays, Susan Henry
(f/k/a Susan Cady), Lisa Hermann (f/k/a Lisa Paddock), Ursula Hires (f/k/a Ursula Jordan),
Patricia Jansen, Linda Jepsen, Nancy Johnson, Linda Kellerman, Christine Kernen, Timothy
Kline, Kathleen Ladish, Mackenzie Lapp (f/k/a Mackenzie Forsha), Venica Mason, Caroline
Lerew, Paula Luce, Monica Paddock (f/k/a Monica Lafata), Casie Pollock, Megan Purkis, Beth
Roark, Aimee Ross (f/k/a Aimee Culler), Amanda Saul (f/k/a Amanda Bishop), Julia Schmid,
Sandra Sears, Dawn Shobe (f/k/a Dawn Finnefrock), Kristen Simons, Denise Smith, Cara
Stewart, Judy Sutton, and Janice Wharton (f/k/a Janice Hambrick) on behalf of ourselves, and all
others within the Class of Former Frontier Flight Attendants, as defined below, file this
Grievance against the Association of Flight Attendants-CWA, AFL-CIO and the Association of
Flight Attendants-CWA Frontier Airlines (collectively, the "Union") and Frontier Airlines, Inc.
("Frontier"), and state as follows:

1. The Class of Former Frontier Flight Attendants, on whose behalf this Complaint is filed,
   is defined as those Frontier flight attendants who were listed on the Frontier Flight
   Attendant Seniority List as of January 1, 2012 but were not included on the equity
   payment list as of April 14, 2017 and/or were not listed on the finalized equity payment
   list that was released on or about May 2, 2017 (collectively, "Equity Payment List").

2. At all relevant times, the Union was—and remains—the exclusive bargaining unit for all
   flight attendants at Frontier.

3. On October 11, 2011, the Union entered into a letter agreement called Flight Attendant
   Restructuring Investments which memorialized an agreement reached between Frontier
   and the Union. ("October 11 Letter Agreement")

4. On October 14, 2011 Frontier and the Union finalized a collective bargaining agreement
   ("CBA") that was to be in effect until March 1, 2016, and would renew itself without
   change each succeeding March 1 thereafter unless properly noticed that either party
   desired change.

5. In the CBA, each flight attendant, including those in the Class of Former Frontier Flight Attendants filing this grievance, gave significant consideration in exchange for a right to profit sharing and an equity interest, as described more specifically in Article 24A of the CBA ("Equity Participation Clause"). That consideration was valued at $16 million in 2011. The specific consideration given by Members of the Class of Former Frontier Flight Attendants is listed in the October 11 Letter Agreement and included: loss of pay step increase, decreased sick pay, decreased vacation credit, suspension of 401k matching contributions, increased threshold of hours worked for overtime pay, reduced number of paid holidays, and reduction in per diem pay per hour.

6. The Equity Participation Clause in the CBA was included exclusively for Frontier flight attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012 and, by definition, included Members of the Class of Former Frontier Flight Attendants.

7. The Union and Frontier Airlines, Inc. entered into a letter of agreement (LOA) dated March 15, 2017, allegedly in an attempt to avoid any possible disputes with respect to equity participation rights at Frontier upon the terms and subject to the conditions set forth in Article 24A of the CBA.

8. The LOA was negotiated extremely rapidly and the Union entered into the LOA without input or ratification from its Union Members or the Members of the Class of Former Frontier Flight Attendants.

9. According to the LOA, in full and complete satisfaction of Frontier's obligations, Frontier has agreed to pay an Equity Participation Payment of $40,000,000 to eligible Flight Attendants.

10. Also according to the LOA, Frontier delegated the identification of eligible Flight Attendants to the Union. The Union was expressly obligated to provide an Allocation Schedule identifying each Eligible Flight Attendant to Frontier by May 1, 2017, and Frontier agreed in the LOA that it would expressly rely on the Union's determination of eligibility.

11. On April 14, 2017, the Union issued the Equity Payment List. Only flight attendants who were continuously on the Flight Attendant Seniority List as of January 1, 2012 and through March 15, 2017 were included on the Equity Payment List.

12. The Equity Payment List improperly denies equity payments to Members of the Class of Former Frontier Flight Attendants.

13. This denial contravenes the intent of the CBA Equity Participation clause which was designed to apply to all Frontier flight attendants on the January 1, 2012 Flight Attendant Seniority List.

14. At the time that the CBA was negotiated and ratified by its Members, there was no communication to Union Members that their equity payment would be jeopardized if they did not remain continuously employed at Frontier. It is more than likely that the Union

Members in 2011 would not have ratified the CBA or agreed to the October 11 Letter Agreement if the Union Members at that time knew that continued employment through March 15, 2017 would be required to receive a benefit from the Equity Participation Clause.

15. Frontier has arbitrarily jeopardized the rights of Members of the Class of Former Frontier Flight Attendants by delegating to the Union the ability to exclusively determine which flight attendants are eligible for the equity payments. In doing so, Frontier breached the collective bargaining agreement and multiple other duties it owed to Members of Class of Former Frontier Flight Attendants as former employees who gave consideration in exchange for the equity sharing provision contained in Article 24A of the CBA.

16. The Union has failed to fairly or adequately represent the Members of the Class of Former Frontier Flight Attendants who have been arbitrarily, discriminatorily, and in bad faith excluded from the Equity Payment List. By excluding Members of the Class of Former Frontier Flight Attendants, the Union breached multiple duties, including but not limited to, the duty of fair representation it owed to Members of Class of Former Frontier Flight Attendants as former Union Members who gave consideration in exchange for the equity sharing provision contained in Article 24A of the CBA:

17. If, after reviewing this grievance, you believe it is deficient in any way or is directed toward the wrong person, please identify any deficiencies immediately so they can be promptly addressed.


Dated May 15, 2017


Justin M. Plaskov
jplaskov@lohfshaiman.com
Lynn D. Feiger
lfeiger@lohfshaiman.com
Sara N. Maeglin
smaeglin@lohfshaiman.com
LOHF SHAIMAN JACOBS HYMAN & FEIGER PC
950 South Cherry Street #900
Denver, Colorado 80246
(303) 753-9000

Rachel E. Ellis
rachel@ellisemploymentlaw.com
ELLIS EMPLOYMENT LAW, LLC
1725 High Street, Suite 3
Denver, CO 80218
(720) 465-6972

# Exhibit G

J-8

# **Non-Disciplinary Supplemental Grievance**

**TO:**
Mr. Howard Diamond
General Counsel and Secretary

**FROM:**
Kellie L. Paschke
Troy A. Skinner
SKINNER & PASCHKE, PLLC

Jason D. Walke
WALKE LAW, LLC

Attorneys on behalf of the following former flight attendants:
Adeline Clark, Amanda Arana, Amy Jo Dolan, Angella Lemar, Barbara Danner, Bobbi Close, Cara Stewart, Caroline Gagne, Christine Kernan, Christopher Bergnaud, Cibelle Pedrosa McDonald, Clara Addie McKee, Connie Wertzbaugher, Courtney Turner, Cynthia Ann South, Dana Wipff, Darol Glasscock, David Jelinek, Dawn Shobe, Debbie Brimmerman, Denis Gerdes, Donald Moore, Dymetra Mccaskill, Erin Barber, Faith France, Gladys Sims, Glenn David Josang, Holly Detlefs, Jacqueline Acree, Jaimie Savor, James Young, Jenn Beldyga, Jennie Benish, Jenny Guzzo Gray, Jerry Johnson, Jessica Armstrong, Jessica Healy, Jocelyn McCaskill, John Miller, Karen Haw, Kathleen Arnold, Kerri Wright, Laura Hamlin, Laura Sullivan, Levi Witthuhn, Linda Kellerman, Lucas Thompson, Mary Carwile, Melissa Dahlman, Mike Sellers, Nancy Poffel, Nelson Miranda, Nicole Lallier, Randolph Aucone, Rashad Owens, Renate McConathy-Eggimann, Rhonda Nembhard, Robert Baker, Rosemary Lindsey, Ross Miller, Sarah Dinkelman, Shanyn Kiesler, Stacey Carter, Steven Shaw, Steve Sublett, Susan Means, Tamara Stewart, Tammy Kellsen, Zachary Bryce Davis, Zeinab Salah, on behalf of ourselves and all others within the class of former Frontier flight attendants who were on the Frontier Flight Attendant Seniority List as of January 1, 2012.

## SUBMIT THE FOLLOWING GRIEVANCE, WHICH OCCURRED ON:
The event(s) giving rise to this grievance occurred on or after April 26, 2017.

## A VIOLATION OF CONTRACT ARTICLES PERTAINING BUT NOT LIMITED TO:
ARTICLE 24 – Equity, Profit-Sharing, and Wage and Benefit Snapbacks

A.    Equity Participation
Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

1. The value of the Equity Participation is $16.0 million.

they were not "continuously" on the Frontier Flight Attendant Seniority List from January 1, 2012 through March 15, 2017 and not a Frontier employee as of March 15, 2017.

The applicable CBA does not require either "continuous" employment through March 15, 2017 or active employment as of March 15, 2017 in order to receive equity payments. Despite the clear terms of the CBA, the Company (through the Union) has improperly denied payments to the above named former flight attendants.

**SUPPLEMENTAL INFORMATION:**
On May 12, 2017 a Grievance was filed on behalf of specifically named flight attendants by their legal counsel, Justin Plaskov and Rachel Ellis. On May 15, 2017 a Supplemental Grievance was also filed by the same, which included additional named flight attendants as well as "all others within the Class of Former Frontier Flight Attendants, as defined below..." On May 25, 2017, the undersigned filed a Grievance on behalf of a significant number of additional flight attendants that were not represented by Justin Plaskov and/or Rachel Ellis. Since that time, several flight attendants represented in the May 12th and May 15th Grievances have retained new legal counsel. This Supplemental Grievance reflects that change.

**RELIEF SOUGHT:**
The above named former flight attendants should immediately be placed on the eligibility list and provided with equity payments pursuant Article 24 of the CBA.

**SIGNED:**     _Kellie L. Paschke_
                Kellie L. Paschke

**DATE:**       _June 13, 2017_

# Exhibit H

J9



Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

June 30, 2017

Jen Sala, MEC President
Peter Swanson
Association of Flight Attendants
CWA, AFL CIO
3960 Minnehaha Ave.
Minneapolis, MN 55406

Kellie Paschke, Esq.
Skinner & Paschke, PLLC
204 W. Hickman Road
Waukee, IA 50263

Jason Walke
Walke Law
204 W. Hickman Road
Waukee, IA 50263

Rachel Ellis, Esq.
Ellis Employment Law, LLC
1725 High Street, Suite 3
Denver, CO 80218

Justin Plaskov
Lohf Shaiman Jacobs Hyma
Feiger
950 South Cherry Street, #900
Denver, CO 80246

Re:     Consolidated Grievances:
        Clark et al., (Skinner & Paschke, PLLC & Walke Law, LLC) (Grievance 1)
        Dible et al., (Ellis Employment Law, LLC) (Grievance 2)

Dear Ms. Sala, Mr. Swanson, Ms. Paschke, Mr. Walke, Ms. Ellis & Ms. Paschke,

An investigation and hearing (the "Hearing") on the above consolidated grievances (the "Consolidated Grievances") was held on June 20, 2017, in accordance with the Collective Bargaining Agreement (CBA) Article 18, Section C.2.  Participation by outside lawyers for the grievants was permitted on a non-precedential basis, even though not a normal process under the CBA.  In the Consolidated Grievances, a group of former Frontier Airlines, Inc. (the "Company") flight attendants contend that the Company violated Article 24, Equity, Profit-Sharing, and Wage and Benefit Snapbacks of the CBA.

The Company has reviewed the Consolidated Grievances, including supplements thereto. In addition, the attorneys representing these former Frontier flight attendants and the attorney representing the Association of Flight Attendants-CWA, AFL-CIO (the "AFA") were provided an opportunity to present additional information and testimony at the Hearing. The former flight attendants comprising Grievance 1 were represented by Kellie Paschke of Skinner & Paschke, PLLC and Jason Walke of Walke Law, LLC.  Ms. Paschke advised the parties that she was recording the Hearing.  The Company requested that Ms. Paschke discontinue recording as it is against Company policy and past precedent to record grievance hearings.   While the Company believes Ms. Paschke continued to record the Hearing in spite of the Company's request, the Company proceeded forward.  Ms. Paschke spoke on behalf of the former flight attendants comprising Grievance 1 and reiterated the



Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 8024x

alleged facts previously set forth in Grievance 1. The former flight attendants comprising Grievance 2 were represented by Rachel Ellis of Ellis Employment Law, LLC and Justin Plaskov of Lohf Shaiman Jacobs Hyman & Feiger, PC. Ms. Ellis spoke on behalf of the former flight attendants Comprising Grievance 2 and declined to present any additional information stating the argument was clearly laid out in Grievance 2. The AFA was represented by Peter Swanson. Mr. Swanson stated that Article 24 of the CBA does not create a right for former flight attendants to receive payment, and in any event, the AFA and the Company properly entered into the March 16, 2017 Letter of Agreement, which supplemented Article 24 by specifying the process for implementation and allocation of the Equity Participation benefit. As a result, Mr. Swanson stated the Consolidated Grievances should be denied.

Based upon the Company's review of the Consolidated Grievances, and taking into account testimony and information presented at the Hearing, the Consolidated Grievances are denied.

In accordance with CBA Article 18.C.2.g, "[t]he decision of the Company may be appealed to the System Board of Adjustment in accordance with Article 19 'System Board of Adjustment' within 14 calendar days of receipt of the Company's written decision provided pursuant to Section 2.f."

Regards,
/s/
Michelle Zeier
Director, Labor Relations
Frontier Airlines, Inc.

# Exhibit I

J10

# Skinner & Paschke, PLLC

Attorneys and Counselors at Law

Troy A. Skinner
Kellie L. Paschke
Melanie L. Jackson

204 West Hickman Road
Waukee, Iowa 50263
Telephone 515-987-0022
Facsimile 515-987-6972
E-mail: kellie@splawiowa.com

July 13, 2017

Via Email:  Howard.Diamond@flyfrontier.com
Via Certified Mail

Frontier Airlines, Inc.
ATTN:  Howard Diamond
General Counsel and Secretary
7001 Tower Road
Denver, CO 80249

Mr. Diamond,

Pursuant to the procedures as set forth in Articles 18 and 19 of the 2011-2016 Frontier
Airlines Flight Attendant Contract, please see the attached Appeal to the System Board of
Adjustment on behalf of our clients and others similarly situated.  I would note this Appeal is
being directed to your attention as all the Parties are currently being represented by counsel.

Please do not hesitate to contact me with any questions.

Very truly yours,

SKINNER & PASCHKE, P.L.L.C.

Kellie L. Paschke

July 13, 2017

# APPEAL TO SYSTEM BOARD OF ADJUSTMENT

**TO:**
Mr. Howard Diamond
General Counsel and Secretary

Jacalyn Peter
Vice President, Labor Relations

**FROM:**
Kellie L. Paschke
Troy A. Skinner
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
(515) 987-0022

Jason D. Walke
WALKE LAW, LLC
204 West Hickman Road
Waukee, Iowa 50263
(515) 421-4026

Attorneys on behalf of the following former flight attendants:
Adeline Clark, Amanda Arana, Amy Jo Dolan, Angella Lemar, Barbara Danner, Bobbi Close, Cara Stewart, Caroline Gagne, Christine Kernan, Christopher Bergnaud, Cibelle Pedrosa McDonald, Clara Addie McKee, Connie Wertzbaugher, Courtney Turner, Cynthia Ann South, Dana Wipff, Darol Glasscock, David Jelinek, Dawn Shobe, Debbie Brimmerman, Denis Gerdes, Donald Moore, Dymetra Mccaskill, Erin Barber, Faith France, Gladys Sims, Glenn David Josang, Holly Detlefs, Jacqueline Acrec, Jaimie Savor, James Young, Jenn Beldyga, Jennie Benish, Jenny Guzzo Gray, Jerry Johnson, Jessica Armstrong, Jessica Healy, Jocelyn McCaskill, John Miller, Karen Haw, Kathleen Arnold, Kerri Wright, Laura Hamlin, Laura Sullivan, Levi Witthuhn, Linda Kellerman, Lucas Thompson, Mary Carwile, Melissa Dahlman, Mike Sellers, Nancy Poffel, Nelson Miranda, Nicole Lallier, Randolph Aucone, Rashad Owens, Renate McConathy-Eggimann, Rhonda Nembhard, Robert Baker, Rosemary Lindsey, Ross Miller, Sarah Dinkelman, Shanyn Kiesler, Stacey Carter, Steven Shaw, Steve Sublett, Susan Means, Tamara Stewart, Tammy Kellsen, Zachary Bryce Davis, Zeinab Salah, on behalf of ourselves and all others within the class of former Frontier flight attendants who were on the Frontier Flight Attendant Seniority List as of January 1, 2012.

**STATEMENT OF FACTS:**
The Company and the Union are parties to Frontier Airlines Flight Attendant Contract 2011-2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendants are, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24 thereto (the "Equity Participation").

On March 15, 2017 the Company and the Union entered into a Letter of Agreement to satisfy the Company's obligations under Article 24. In full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24 of the CBA, the Company agreed to pay to the eligible Flight Attendants an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment"). The Appealing Parties has been excluded from eligibility and participation.

On May 25, 2017, the Appealing Parties, all former Frontier flight attendants who were on the Seniority List on January 1, 2012, filed a Grievance claiming eligibility to an appropriate portion of the Equity Participation Payment. A Supplemental Grievance was filed on June 13, 2017 for the purpose of including additional parties. A Consolidated Hearing was held on June 20, 2017, which included counsel for the former flight attendants, counsel for the Company, and counsel for the Union. The Company issued a Decision on June 30, 2017 denying the Consolidated Grievances. The former flight attendants are appealing that decision.

**QUESTION AT ISSUE:**
The question at issue is whether Article 24 of the CBA applies to flight attendants who were on the Seniority List as of January 1, 2012 but left employment prior to the March 15, 2017 Letter of Agreement.

**POSITION OF THE APPEALING PARTIES:**
Article 24, Paragraph A of the CBA provides that "Flight Attendants will be entitled to equity in the Company as described herein…" Further, Paragraph D of Article 24 states that "Equity Participation as set forth in Paragraph A…..will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012."

The purpose of Article 24 was to provide future compensation for flight attendants on the seniority list (as of January 1, 2012) for concessions they were making at the time the CBA was negotiated and agreed on. These concessions included:

1. Changes in Longevity Steps.
2. Reduction in sick accruals.
3. Reduction in vacation credit.
4. Suspension of the Company's 401k matching contribution.
5. Increased overtime threshold.
6. Reduction in paid holidays.
7. Reduction in per diem rates.

The language of the CBA is quite clear: flight attendants who were "on the Seniority List as of January 1, 2012" are entitled to equity participation. The Appealing Parties meet this definition. Nothing in Article 24 requires continued employment to maintain eligibility. The reason is simple: The Appealing Parties, all former flight attendants on the Seniority List as of January 1, 2012, made these concessions until their departure from the Company. The March 15, 2017 Letter of Agreement has materially altered the CBA by eliminating Article 24A, affecting the rights of the Appealing Parties.

Further, the Appealing Parties sacrificed and compromised rights they had at that time (at the insistence of the Company) to help the Company stay in business. Article 24 provided them with the opportunity to be compensated for those sacrifices and compromises. In doing so, Article 24 simple did NOT require the Flight Attendants to remain employed in with the Company forever. Rather, eligibility for participation in the Equity Participation Payment was, by the plain and simple language of Article 24, based on being on the Flight Attendant Seniority List as of January 1, 2012. The Company and Union are now simply ignoring that reality.

**POSITION OF OPPOSING PARTIES:**
The Opposing Parties maintain that "continuous employment" was required in order to be eligible for Equity Participation Payments.

**SPECIFIC PROVISIONS OF THE AGREEMENT ALLEGED TO HAVE BEEN VIOLATED:**
Article 24A and 24D.

**REMEDY SOUGHT:**
The Appealing Parties should be eligible for Equity Participation payments commensurate with the length of service.

**SIGNED:**

Kellie L. Paschke
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
Telephone:   (515) 987-0022
Facsimile:   (515) 987-6972
E-mail:kellie@splawiowa.com

**DATE:**        June 13, 2017

# Exhibit J

J I



# Association of Flight Attendants-CWA
# AFL-CIO

# Frontier Airlines
# Flight Attendant Contract

# 2011-2016

## ARTICLE 19
## SYSTEM BOARD OF ADJUSTMENT

A.   **ESTABLISHMENT**

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of the Agreement, and which are properly submitted to it as set forth in Article 18, which Board will be known as the "Frontier Flight Attendants' System Board of Adjustment."

B.   **MEMBERSHIP**

1.   The Board will be comprised of a Company Board Member, a Union Board Member, and a single neutral member (i.e., the Chairperson).

2.   Each Board member will be free to discharge his/her duty in an independent manner, without fear that his/her individual relations with the Company or with the Union may be affected by action taken in good faith in his/her capacity as a Board member. Board members who are employees of the Company will be granted time off to attend the hearing and subsequent executive session(s).

3.   The parties will agree on a panel of nine approved arbitrators from which neutral members will be selected using the alternate strike method. The panel will be established within 45 calendar days of the signing of this Agreement. Once selected, a party may permanently remove a neutral from the panel after one year; however, the neutral may not be removed from any case to which he/she has already been assigned without agreement between the Company and the Union. If a panel member is removed by a party, voluntarily removes him/herself from the panel, or can no longer act as a neutral (e.g., death, illness, retirement), the parties will select a mutually agreeable permanent replacement.

4.   Notwithstanding the foregoing, the parties may at any time agree to select a neutral who is not a member of its standing panel to sit as the Chairperson of the System Board of Adjustment.

C.   **JURISDICTION**

1.   The Board will have jurisdiction over any grievance between any Flight Attendant and the Company, or the Union and the Company, growing out of grievances or out of interpretation of any of the terms of this Agreement; provided, however, that the jurisdiction of the Board will not extend to changes in hours of employment, rates of compensation or working conditions. The Board will consider any grievances properly submitted to it by the Union or the Company when such grievances have been previously

submitted to, but not settled, in accordance with the grievances procedure provided for in this Agreement.

2. Each grievance presented to the Board will be treated as a separate case, unless the parties mutually agree otherwise.

3. Appeals to the Board will be made in writing with a copy of the grievance attached, and will contain the following:

    a. A statement of facts;

    b. The question(s) at issue;

    c. The position of the appealing party;

    d. The understood position of the other party;

    e. Specific provisions of the Agreement alleged to have been violated; and

    f. The remedy sought by the appealing party.

**D.     DOCUMENTS, WITNESSES, EVIDENCE AND REPRESENTATION**

1. The Union will designate its representative and the Company will designate its representative. Evidence may be presented either orally, in writing, or both.

2. Witnesses may testify telephonically, provided that the party, whose witness(s) will testify telephonically, has notified the other party prior to the hearing date.

3. The number of witnesses summoned at any time will not be greater than the number which can be spared from the Company's operation without interference with the services of the Company.

4. Unless the parties mutually agree otherwise, a stenographic report is to be taken.

**E.     EXECUTIVE SESSION**

Following the hearing, or at any time prior to the issuance of a final decision in the matter, upon the request of any member of the Board, the members of the Board will convene in executive session.

**F.     LOCATION OF BOARD HEARINGS**

Board hearings will be held at a location agreed to by the parties on a case by case basis. If the parties are unable to agree to a location, the case will be heard at the Company's corporate headquarters or within the general vicinity of the Company's corporate headquarters.

G.     **EXPENSES – ARBITRATOR/WITNESSES/HEARING**

1.     The parties will each pay the cost and expenses of their own attorneys and/or advocates, witnesses and Board Members.

2.     Unless otherwise provided in this Agreement, all fees and expenses of the arbitrator and those related to the conduct of the hearing will be borne equally by the Company and the Union (e.g., hearing room rental, arbitrator fees and travel expenses, court reporter, transcript, etc.)

3.     The grievant (whether an employee of the Company or not), employee witnesses, employee board members, and representatives who are employees of the Company will be provided roundtrip positive space transportation on the lines of the Company from their point of duty or assignment, if applicable, to the location at which they must appear as witness or representatives.

4.     Should a hearing before the Board be postponed or canceled without mutual consent of the Company and the Union, the party postponing or cancelling will bear any and all expenses incurred by the arbitrator and those related to the postponement or cancellation of the hearing (e.g., arbitrator cancellation fee and travel expenses, hearing room rental, etc.).

Page 111 of 123