## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, et al.<br><br>  Plaintiffs,<br><br>vs.<br><br>FRONTIER AIRLINES, INC.<br><br>  Defendant. | No. 4:17-CV-00452-JEG-HCA<br><br><br><br>**PLAINTIFFS' BRIEF IN RESISTANCE TO DEFENDANT'S MOTION TO DISMISS** |

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………….………2

STATEMENT OF FACTS……………………………………………………………………….3

ARGUMENT……………………………………………………………………………………..5

    I.    THE MOTION TO DISMISS UNDER RULE 12(B)(1) SHOULD BE DENIED BECAUSE THE COURT HAS SUBJECT MATTER JURISDICTION …………………………………………………………….…6

        a.    This dispute is a "major" because it involves a change to the CBA……..….7

        b.    Frontier has not met its burden to establish the dispute is a "minor"……......7

        c.    The Court has jurisdiction to hear "minor" disputes…………………..…….10

    II.    DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DENIED BECAUSE THE COURT HAS SUBJECT MATTER JURISDICTION ………………………….13

        a.    Promissory Estoppel……………………………………………………….13

        b.    Unjust Enrichment……………………………………………………...15

CONCLUSION……………………………………………………………….………………16

## INTRODUCTION

Plaintiffs are a group of approximately 100 former flight attendants who were employed by the Defendant, Frontier Airlines, Inc. ("Frontier") for varying lengths of time. For many years, Frontier experienced significant financial difficulties. In 2008 the Company filed for bankruptcy. As it struggled to remain afloat, Frontier began a series of aggressive cost-cutting measures to downsize the company.

While Frontier was attempting to quickly reduce its operating costs, Plaintiffs and other employees experienced wage and benefits reductions, as well as reductions in force. Soon after, the Frontier flights attendants voted to unionize. Plaintiffs were represented by the Association of Flight Attendants – CWA ("AFA"). In 2011, the AFA negotiated, and the members ratified, a collective bargaining agreement ("CBA") outlining various terms and conditions of employment. Among them was Article 24, a provision allowing for "Equity, Profit-Sharing, and Wage & Benefit Snapbacks".

Between January 1, 2012 and March 15, 2017, Plaintiffs separated their employment with Frontier for various reasons and at various times. Only after leaving employment, did the Plaintiffs learn that, according to Frontier and AFA, they would no longer be eligible for Article 24 benefits even though they had endured the wage and benefit reductions which those benefits were specifically designed to offset. Thereafter, Plaintiffs brought claims for (1) Breach of Contract, (2) Promissory Estoppel, and (3) Unjust Enrichment against Frontier.

Labor-management relations in the airline industry are governed by the Railway Labor Act. 45 U.S.C. §151 *et seq.* ("RLA"). The RLA covers every common carrier by air that is engaged in interstate commerce.

## STATEMENT OF FACTS

The Plaintiffs are approximately 100 former Frontier flight attendants located throughout the United States. *See* Am. Compl. (ECF No. 2) ¶ 1. The Defendant, Frontier Airlines, Inc. is a Delaware corporation with its principal place of business located in Denver, Colorado. *Id.* ¶ 2. Frontier is authorized to transact business in the State of Iowa, pursuant to a Certificate of Authority (#351804) filed with the Iowa Secretary of State. *Id.* Frontier was and is a "carrier" within the meaning of the RLA. *Id.* ¶ 5.

Frontier and the Union negotiated to form a collective bargaining agreement (CBA) in 2011. *See* Am. Compl. ¶ 6. On October 11, 2011, Frontier and the Union agreed to Flight Attendant Restructuring Investments (commonly known as "concessions") which were memorialized in a letter signed by the parties. *See* Am. Compl. Ex. 2 (ECF No. 3) at 3-4. Three days later, on October 14, 2011, Frontier and the Union executed the CBA. *See* Am. Compl. ¶ 6.

The CBA included, in relevant part, Articles 24A and 24D, which provide as follows:

> **ARTICLE 24 EQUITY, PROFIT-SHARING, AND WAGE & BENEFIT SNAPBACKS**
>
> **A. EQUITY PARTICIPATION** Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:
>
> 1. The value of the Equity Participation is $16.0 million.
>
> 2. The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.
>
> 3. The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

    4. Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary drag along rights.

    5. Vesting: The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%.

    **D. ADDITIONAL PROVISIONS** Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement. *See* Am. Compl. Ex. 2 (ECF No. 3) at 1-2.

The purpose of Article 24 was to provide incentives to flight attendants for the restructuring investments identified in the October 11, 2011 letter. *See* Am. Compl. ¶ 9. Each of the Plaintiffs were on the Frontier Flight Attendant Seniority List on January 1, 2012. *Id.* ¶ 10.

    On March 15, 2017, Frontier and the Union signed a Letter of Agreement ("LOA") to modify/amend the CBA. *Id.* ¶ 12. The terms of the Agreement required Frontier to pay $40 million dollars to satisfy the Equity Participation provision of Article 24A ("Equity Payment"). *Id*. The Agreement further specified that the Union would have sole authority to determine which flight attendants on the seniority list would be eligible for a share of the Equity Payment. *Id.* ¶ 13. Significantly, employees of both the Union and Frontier have testified under oath (in the recent and ongoing grievance process) that the Equity Payment was an "equity event" which triggered the equity participation provisions of Article 24.

    Despite the clear and obvious meaning of Article 24D, which required only that a flight attendant be "on the seniority list as of January 1, 2012", the Union determined (in 2017) that a

4

flight attendant must also be "continuously employed" with Frontier through March 15, 2017 in order to be eligible for an Equity Payment. *See* Am. Compl. ¶ 14. As a result, Plaintiffs were denied an Equity Payment because they left employment with Frontier prior to March 15, 2017. *Id.* ¶15.

On May 25, 2017 and June 13, 2017, the Plaintiffs filed a Grievance with Frontier, through their undersigned counsel, alleging they were entitled to a share of the Equity Payment due to their placement on the flight attendant seniority list as of January 1, 2012. *Id.* ¶ 16. Frontier held a telephonic hearing on June 20, 2017 and issued a denial of the consolidated grievances on June 30, 2017. *Id.* ¶ 17. Thereafter, the Plaintiffs timely appealed their denial to the System Board of Adjustment, which conducted a hearing on March 20, 2018. *Id.*

## ARGUMENT

In deciding a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must accept Plaintiffs' factual allegations as true and view them in the light most favorable to the nonmoving party. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010); *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768–69 (8th Cir. 2012). "The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Doyel v. McDonald's Corp.*, 2009 U.S. Dist. LEXIS 9622 at 3 (E.D. Mo. 2009). The Petition must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When reviewing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 857 (8th Cir. 2013). The court may

"dismiss the case only when it appears beyond [a] doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [the plaintiffs] to relief." *Mo. River Sys. Litig.*, 418 F.3d at 917 (internal quotations omitted). "The issue is not whether the plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of proving jurisdiction. *VS Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "Subject matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174h Cir. 1990).

I. **THE MOTION TO DISMISS UNDER RULE 12(B)(1) SHOULD BE DENIED BECAUSE THE COURT HAS SUBJECT MATTER JURISDICTION**

The RLA governs the resolution of labor disputes between air carriers and their union employees. 45 U.S.C. § 151 et seq. There are two such categories of disputes, although they are legal terms of art not mentioned in the statute: "minor disputes" and "major disputes." *See*, *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302 (1989). The distinction between the two terms is not precise, but in general, major disputes are those involving the creation or modification of contractual rights, while minor disputes are those involving the enforcement or interpretation of those rights. *See, Consol. Rail Corp.,* 491 U.S. at 302; *Chicago & North Western Transp. Co. v. Ry. Labor Execs. Ass'n,* 908 F.2d 144, 148 (7th Cir. 1990).

*a. This dispute is a "major" because it involves a change to the CBA.*

In 2011, Frontier and the AFA negotiated a collective bargaining agreement. At the time it was negotiated and ratified, Article 24A Equity Participation was reserved for "Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012". Each Plaintiff met this eligibility requirement and was included on the list as of that date. Several years later, on March 15, 2017, Frontier executed a Letter of Agreement ("LOA") to *remove* Article 24A. The removal of Article 24A <u>changed</u> the CBA – a fact the Defendant admits. [1]  *See* Mot. To Dismiss (ECF No. 8) at 6-7. Changing the CBA extinguished Plaintiffs' rights to an Equity Payment under Article 24A, whether it be at that time or with some future event. [2] Eliminating substantive provisions from the CBA is a "change" within the meaning of a major dispute and, therefore, permits Plaintiffs to maintain their action in this Court. Major disputes relate to the formation of a collective-bargaining agreement ***or the effort to change the terms of a collective-bargaining agreement***. *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723 (1945). (Emphasis added.)

*b. Frontier has not met its burden to establish the dispute is a "minor".*

When a party claims a dispute is minor, as Frontier has done here, it bears the burden of demonstrating that the resolution of the dispute involves only interpreting the existing collective-bargaining agreement (as opposed to what is going on here; namely a CBA being changed). *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 30–07 (1989). Frontier argues that Plaintiffs' breach of contract claim necessarily requires an interpretation of the CBA and, therefore, prohibits the court from exercising jurisdiction. But it is not enough that Frontier

---

[1] Defendant argues the March 15, 2017 Letter of Agreement is "full and complete satisfaction of all the Company's obligations in respect of the Equity Participation and Article 24 of the CBA."

[2] Rights embodied in a collective bargaining contract negotiated by a union "inure to the direct benefit of employees and may be the subject of a cause of action." *Zdanok, et al. v. Glidden Co.*, 288 F.2d 99, 103 (2nd Cir. 1961).

7

claims their dispute is minor. To carry this burden, the moving party must demonstrate that its action is "arguably justified" by the terms of the agreement. Id. at 306–07. But this burden is relatively light—so long as the party's proffered interpretation is not "frivolous or obviously insubstantial," the dispute is minor. Id. at 307.

The language of the CBA clearly states that eligibility for Equity Participation is "exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." Notably, Article 24 contains no provision that requires an eligible flight attendant to remain "continuously employed" through some unknown point in time.[3] Instead, Frontier uses a process of contract gymnastics to arrive at the conclusion that continuous employment was necessary. This, of course, begs the question: if continuous employment was required, *why didn't the CBA simply state this requirement in Article 24 (and why did the Union and Frontier feel the need to change the CBA by eliminating Article 24)?*

Courts interpret collective bargaining agreements "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett,* 135 S. Ct. 926, 933 (2015); *Accord Finley Hosp. v. Nat'l Labor Relations Bd.*, 827 F.3d 720, 725 (8th Cir. 2016). "Unless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning." Id. (citing Restatement (Second) of Contracts § 202(3)(a)).

Frontier's reliance on the CBA to support its claim of continuous employment is also inconsistent with the Letter of Agreement signed on March 15, 2017. This letter permitted the Union to "determine the Eligible Flight Attendants and their portion of the Equity Participation

---

[3] In fact, continuous employment would be inconsistent with the purpose of the Equity Participation – to compensate flight attendants for their wage and benefit concessions ("Restructuring Investments"). The Investments were made by the Plaintiffs until they left employment or retired.

Payment in its sole discretion." *See* Mot. To Dismiss (ECF No. 8) at 7.  If the terms of eligibility were already prescribed in the CBA, there would be no need to give "sole discretion" to the Union to determine eligibility.[4]

A claim is "arguably justified" is any reasonable labor arbitrator, applying appropriate principles of contract interpretation and after reviewing relevant extrinsic evidence (such as evidence of past practice), could find that the contract does justify a party's claimed right to take, or refrain from taking, action. *Wheeling & Lake Erie Ry. Co.v. Bhd. Of Locomotive Engineers & Trainmen*, 789 F.3d 681, 692 (6th Cir. 2015).  However, when no *reasonable* contractual interpretation, express or implied, would justify a party's claim, the dispute is a major and is subject to federal courts' jurisdiction.  *Id.*  If a carrier, in actuality, seeks to change an existing term of a CBA, the dispute is major without regard to their own characterization of it.  *Flight Options, et al. v. Int'l Bhd. of Teamsters, Local 1108, et al.,* 863 F.3d 529, 542 (6th Cir. 2017); (Citing *Consol. Rail. Corp.*, 491 U.S. at 310.)

Frontier has presented no express or implied terms of the CBA to support their assertion that Article 24 of the CBA required flight attendants to remain continuously employed to receive an Equity Payment.  Additionally, their position that express language does exist, by using other unrelated provisions of the CBA, is inconsistent with granting the AFA "sole discretion" to determine eligibility.  Because this is the first CBA negotiated between Frontier and the AFA, there is no history or past practice to examine.  Therefore, Frontier's frivolous claim that the CBA required continuous employment to be eligible for an Equity Payment is not arguably justified and must be rejected.  Clearly, and as evidence by the Union's and Frontier's admitted

---

[4] Delegating eligibility decisions to the Union does, however, support the Plaintiffs' claim that Frontier and the AFA colluded to deprive Plaintiffs of their right to an Equity Payment under Article 24A.

effort to CHANGE the CBA, the dispute here involves more than a simple interpretation of the plain language of that CBA.

### c. *The Court has jurisdiction to hear "minor" disputes.*

The RLA requires air carriers and unions to establish a system board of adjustment (the Board) to resolve all "disputes growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. Generally, these disputes, "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and [the Board] established by the employer and the unions." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U. S. C. § 153 First (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. See *Andrews* v. *Louisville & Nashville R. Co.,* 406 U. S., at 325; *Locomotive Engineers* v. *Louisville & Nashville R. Co.,* 373 U. S. 33, 38 (1963).

In addition to the statutorily created parameters of review, courts have recognized that Board arbitration decisions are reviewable for possible due process violations. *See, e.g., Union Pac. R.R. v. Price,* 360 U.S. 601, 616, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959) (finding awards of the National Railway Adjustment Board reviewable for a violation of due process); *Shafii v. PLC British Airways,* 22 F.3d 59, 64 (2d Cir. 1994) ("Relinquishing courts' ability to review the NRAB's procedures for due process violations would leave unprotected a plaintiff's legitimate

constitutional right to be treated in accord with due process before the Board."); *Armstrong Lodge No. 762 v. Union Pac. R.R.,* 783 F.2d 131, 135 (8th Cir.1986) (reviewing an arbitration award where party argued the arbitration hearing failed to meet the requirements of due process). "In addition to the statutorily created parameters of review, courts have recognized that . . . arbitration decisions are reviewable for possible due process violations," *Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 997 (8th Cir. 2002).

If this dispute is a minor, the Plaintiffs would arguably be required to submit their claim to the Frontier System Board of Adjustment pursuant to the CBA.  Indeed, the Plaintiffs have done just that.  Frontier denied the Plaintiffs' initial grievance on June 30, 2017. Thereafter, Plaintiffs sought review by the System Board, which held its hearing on March 20, 2018.

The composition of the Board leaves little doubt that the Plaintiffs cannot be afforded due process in that process.  This case is analogous to *Edwards v. Capital Airlines*, 176 F.2d 755 (D.C. Cir. 1949).  In *Edwards*, two pilots sought judicial review of an unfavorable Board decision.  In permitting judicial review, the court stated:

> Persons in their situation must have available to them, at some point, an impartial look at a decision, thus made, denying their claims to substantial rights. This is the time-honored function of an equity court. The general principle, applicable alike to judicial and to administrative determinations, is too well settled to require citation of authority. We think that the danger to the rights of the non-member few, clearly inherent in the combination of circumstances here present, calls for the application of that doctrine. *Edwards* at 761.

The Board was composed of an equal number of union and company representatives.  The pilots' claims were adverse to the union.  Notably, the grievant pilots were unrepresented on the Board.

Similarly, the Frontier System Board is a three-member panel consisting of a representative chosen by Frontier and another chosen by AFA, each of whom are unquestionably

and unapologetically "adverse" to the claims being submitted by the Plaintiffs.[5] The third member does not work for the Union or Frontier. Both the Frontier and the Union representative had a well-vested interest in the outcome – to protect their financial resources and those of their membership. Under these circumstances, the likelihood of receiving a fair hearing is impossible. Regardless of what the one legitimate neutral on the panel does or says, the deck is inexorably and inescapably stacked (2 to 3) against the Plaintiffs. A fundamental precept of due process has been that an interested party in a dispute cannot also sit as a decision-maker. *Internation Ass'n of Machinists and Aerospace Workers v. Metro-North Commuter Railroad*, 24 F.3d 369 (2nd Cir. 1984); See, e.g., *Withrow v. Larkin*, 421 U.S. 35, 46-47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 578-79, 93 S. Ct. 1689, 1697-98, 36 L. Ed. 2d 488 (1973).

Courts have also been sensitive to the potential inequity of requiring employees to "submit their controversy to `a group which is in large part chosen by the [defendants] against whom their real complaint is made,'" *Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969), *quoting Steele,* 323 U.S. at 206, 65 S.Ct. at 233, and they realize that such collusion between employer and union is a real possibility. *See Graf, 697 F.2d at 781* (collusion between union and employer would render remedies under arbitration provisions of RLA futile).

The Court has made clear, however, that the exhaustion requirement is subject to a number of exceptions for the variety of situations in which doctrinaire application of the

---

[5] Although the Plaintiffs submitted their initial grievance against Frontier, the union was permitted to participate.

exhaustion rule would defeat the overall purposes of federal labor relations policy. Thus, in *Vaca* the Court stressed:

> "[I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650. However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." *Vaca v. Sipes*, 86 U.S. 171, 185-185 (1967).

The Court in *Vaca* went on to specify at least two situations in which suit could be brought by the employee despite his failure to exhaust fully his contractual remedies. The circumstances of the present case call into play another of the most obvious exceptions to the exhaustion requirement—the situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile.  Given that any decisions in the grievance process have been and will be made by the Union and Frontier (both of whom have already repeatedly stated their united opposition to the claims of the Plaintiffs), it is unavoidably true that that process has been and will be futile and, as such, the Plaintiffs have the right to seek justice in the only place they might be able to find it (this Court).

## II. DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DENIED BECAUSE THE COURT HAS SUBJECT MATTER JURISDICTION

In addition to their claim for breach of the CBA, Plaintiffs' also assert the common-law claims of promissory estoppel (Count II) and unjust enrichment (Count III).

### a. *Promissory Estoppel*

The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract. 4 Samuel Williston, Williston on Contracts § 8.4, at 41 (1992). "[C]ourts have applied the principle of estoppel in effect to form a contract, when the promisee suffered detriment in reliance on a ... promise." Id.; see also *Friedman v. BRW, Inc*., 40 F.3d 293, 296 (8th Cir. 1994) (stating that the effect of the doctrine of promissory estoppel "is to imply a contract in law where none exists in fact"); *Miller v. Lawlor*, 245 Iowa 1144, 1152, 66 N.W.2d 267, 272 (1954) ("'Promissory estoppel' is now a recognized species of consideration."); *Huhtala v. Travelers Ins. Co.,* 401 Mich. 118, 257 N.W.2d 640, 647 n.16 (1977) (stating that in promissory estoppel claims, detrimental reliance on one side will suffice as "consideration"). When this court adopted the doctrine of promissory estoppel, we relied on the principles of law found in the Restatement of Contracts section 90 (1932). . . Because the Restatement (Second) of Contracts contains a nearly identical statement of these principles, we quote from the latter Restatement:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.    Restatement (Second) of Contracts § 90, at 242 (1981).

The court has established the following elements as essential for recovery under a theory of promissory estoppel: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief." Johnson v. Pattison, 185 N.W.2d 790, 795 (Iowa 1971); accord *National Bank v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989); *In re Estate of Graham,* 295 N.W.2d 414, 418 (Iowa 1980); *Schoff v Combined Ins. Co. of Am*.., 604 N.W.2d 43, 48 (Iowa 1999).

In the present case, the Plaintiffs have met this burden. Separate from the contents of the CBA, Frontier made definite promises, through company communications and public comments, to allow Equity Participation for flight attendants. These communications and public comments made no mention of continuous employment. Plaintiffs relied on Frontier's clear promises that they were "entitled" to equity when ratifying the agreement. Only after the CBA was ratified did Frontier seek to change the terms by requiring continuous employment. Such action denies Plaintiffs of their equity, which can only be remedied through enforcement of the promise.

### b. *Unjust Enrichment*

A party asserting unjust enrichment must allege that another has received a benefit, the retention of which would be inequitable. *See Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004); *Unisys Corp.*, 637 N.W.2d at 157; *HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). "Once again, Frontier maintains that an interpretation of the CBA is necessary to evaluate Plaintiffs' claims for unjust enrichment. However, unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'" *In re Estate of Roethler*, 801 N.W.2d 833, 845 (Iowa 2011) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)). "To recover for unjust enrichment, [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n,* 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *Palmer*, 637 N.W.2d at 154–55).

Frontier asserts that that Plaintiffs "cannot plausibly allege that Frontier has been enriched" because "there is no allegation in this case that Frontier failed to pay the $40 million as required by the March 15, 2017 LOA." However, Frontier's argument must fail, as they are quite clearly identifying the incorrect benefit that was received. Alleged benefits can be those conferred directly, indirectly, or by third parties. *Palmer*, 637 N.W.2d at 155. "The critical inquiry is that the benefit received be at the expense of the plaintiff." Id.

It is undisputed that the Plaintiffs were flight attendants who gave "concessions" to Frontier in the form of wage and benefit reductions. Plaintiffs were employed by Frontier for varying amounts of time and, therefore, the value of their wage and benefit concessions were different. However, there is no question that Frontier received the value of these concessions. It is these concessions that form the basis of Plaintiffs' claims of unjust enrichment.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests this Court to deny the Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Kellie L. Paschke*
Kellie L. Paschke AT# 0006038
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
Telephone:   (515) 987-0022
Facsimile:    (515) 987-6972
E-Mail:  kellie@splawiowa.com
E-Mail:  beth@splawiowa.com

    */s/ Jason D. Walke*
Jason D. Walke, AT# 0008230
WALKE LAW, LLC
204 West Hickman Road
Waukee, IA 50263
Telephone: (515) 421-4026
Facsimile: (515) 216-2261
E-Mail: jwalke@walkelaw.com
E-Mail: nphifer@walkelaw.com

ATTORNEYS FOR PLAINTIFFS