IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, *et. al*,<br>                    Plaintiffs,<br><br>            v.<br><br>FRONTIER AIRLINES, INC.,<br>                    Defendant. | Case No. 4:17-cv-00452-JEG-HCA |

### MEMORANDUM IN SUPPORT OF
### DEFENDANT FRONTIER AIRLINES, INC.'S
### MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF FACTS ........................................................................................................... 3

I.     MANY OF THE EVENTS GIVING RISE TO THIS LITIGATION OCCURRED
       IN COLORADO – NONE OCCURRED IN IOWA. ......................................................... 3

II.    MANY OF THE POTENTIAL WITNESSES WORK OR RESIDE IN
       COLORADO – NONE ARE FROM IOWA. ................................................................... 6

ARGUMENT .......................................................................................................................... 8

       A.     This Action Could Have Been Brought In The District Of Colorado. .................. 9

       B.     The Convenience Of The Parties Strongly Favors Transferring This Case
              To The District Of Colorado. ............................................................................. 10

       C.     The Convenience Of Witnesses Strongly Favors Transferring This Case
              To The District Of Colorado. ............................................................................. 11

       D.     The Interests Of Justice Favor Transferring This Case To The District Of
              Colorado. ........................................................................................................... 14

CONCLUSION ..................................................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiffs, approximately 100 former Frontier Airlines, Inc. ("Frontier") flight attendants, contend that Frontier breached Article 24 of the collective bargaining agreement ("CBA") between Frontier and the Association of Flight Attendants-CWA (the "AFA") when – pursuant to a Letter of Agreement ("LOA") with the AFA known as the Equity Participation Payment LOA – it paid approximately $40 million to currently-employed flight attendants, but did not make any payments to persons (like Plaintiffs) who were no longer employed by Frontier.  Plaintiffs have asserted three claims in their First Amended And Substituted Complaint:  (1) breach of collective bargaining agreement; (2) promissory estoppel; and (3) unjust enrichment.  All of the claims, however, are premised on the basic contention – disputed by both parties to the CBA (i.e., the AFA and Frontier) – that Plaintiffs had the right to receive an "Equity Payment" pursuant to Article 24 of the CBA.

Because Plaintiffs' claim for breach of collective bargaining agreement (Count I) raises a "minor dispute" under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (the "RLA"), i.e., a dispute over the proper interpretation of a collective bargaining agreement, an arbitration tribunal known as the "Frontier Flight Attendants' System Board Of Adjustment" has exclusive jurisdiction to decide the merits of Plaintiffs' claim. Indeed, Plaintiffs (represented by the same counsel as in this lawsuit) have a pending arbitration case before that System Board of Adjustment in which they assert the very same claim as alleged in Count I.  And because Plaintiffs' two common-law claims, for promissory estoppel and unjust enrichment, are based on and would require interpretation

of the Frontier-AFA CBA, they are preempted by the RLA.  In light of the foregoing,

Frontier has filed a motion to dismiss Plaintiffs' amended complaint (*see* ECF Nos. 8, 8-1

& 8-2), and, if that motion is granted (as it should be), there will be no occasion to worry

about the location of a trial in this matter.

Nonetheless, the fact remains that Plaintiffs have filed their lawsuit in a district

which is substantially inconvenient for the parties and witnesses and which has literally

no ties to this litigation:  not one of the nearly 100 Plaintiffs lives in Iowa; not one

potential witness lives in Iowa; and none of the relevant events occurred in Iowa.  Then

why was Plaintiffs' lawsuit filed in the Southern District of Iowa?  We learned the

answer during a recent arbitration hearing on Plaintiffs' claim for breach of collective

bargaining agreement, when Plaintiff Faith France testified as follows:

> Q.    [By Jason Walke, Plaintiffs' Counsel]:  We'll get back to that, but let's just start from the beginning.  Where did you grow up?
>
> A.    [By Faith France]:  I grew up in Rawlins, Wyoming.
>
> Q.    Did you grow up with anybody that's a lawyer in this case?
>
> A.    I sure did.
>
> Q.    Who was that?
>
> A.    I went to middle school and high school with Kellie Paschke [i.e., Plaintiffs' Counsel].
>
> Q.    So in case anybody was wondering how this all ended up back in Iowa, that's the explanation.  I suspect there were people that probably were wondering about it.

(*See* Declaration of Jacalyn W. Peter ("Peter Decl.") (filed concurrently herewith) ¶ 10(f);

Ex. F at 26:15-27:2.)  While the Southern District of Iowa is no doubt a convenient

location for two attorneys with offices in Waukee, as this Court recognized in *Lyngholm v. FedEx Ground Package Systems, Inc.*, 827 F. Supp. 2d 912 (S.D. Iowa 2011), "it is axiomatic that convenience to [the parties'] counsel is not a factor to be considered in deciding the propriety of transfer." *Id.* at 921 (quotation omitted; alteration in original).

Accordingly, in the event that this Court prefers to address venue issues before dispositive motions, or denies Frontier's motion to dismiss on the merits, Frontier respectfully requests that this matter be transferred to the United States District Court for the District of Colorado – where many of the underlying events took place and where many of the potential witnesses work or live.  As demonstrated below, the requested transfer would be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice" within the meaning of 28 U.S.C. § 1404(a).

## SUMMARY OF FACTS

### I.      Many Of The Events Giving Rise To This Litigation Occurred In Colorado – None Occurred In Iowa.

During the Summer of 2011, Frontier and the AFA were engaged in negotiations for an initial CBA covering Frontier's flight attendants.  (*See* Peter Decl. ¶ 2.)  The in-person negotiations mainly took place in Indianapolis, Indiana, the location of the headquarters of Frontier's then-corporate parent, Republic Airways Holdings, Inc. ("RAH"), and, to a lesser extent, in Denver, Colorado, where Frontier's corporate headquarters were located.  Otherwise, the negotiations were conducted via e-mail and telephone.  (*Id.* ¶ 5.)  No negotiations took place in Iowa.  (*Id.*)  Frontier advised the AFA during these negotiations that RAH had decided to restructure Frontier and that, as a

result, it would be necessary for Frontier's flight attendants (along with the other Frontier employee groups) to accept concessions in order to reduce Frontier's operating costs. (*Id.* ¶ 2.)

Frontier and the AFA eventually reached a tentative agreement for their new CBA. The AFA conducted a ratification election among its Frontier membership to determine whether the CBA would be approved or rejected and, in connection with that process, the AFA held "roadshows" where its negotiators provided information and answered questions about the terms of the CBA. (*See* Peter Decl. ¶ 6.) These roadshows occurred at the sites of Frontier's flight attendant bases (at the time, in Denver, Colorado, and Milwaukee, Wisconsin) – none occurred in Iowa. (*Id.*)

The new CBA was ratified by the Frontier flight attendants and signed by Frontier and the AFA on October 14, 2011. Among other things, the CBA memorialized the above-described cost concessions (referred to as the "Flight Attendant Restructuring Investments"). *See* Plaintiffs' First Amended And Substituted Complaint ("Am. Compl."); Ex. 2 (ECF No. 3) at 3-4. The CBA also included an Article 24, titled "Equity, Profit-Sharing, And Wage & Benefit Snapbacks," which provided in pertinent part that "Flight attendants will be entitled to equity in the Company (the 'Equity Participation') as described herein," and that "Equity Participation . . . and participation in the PSP [Profit Sharing Plan] . . . will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." (Peter Decl. ¶ 10(a); Ex. A at Art. 24(A) & (D).) Each of the Plaintiffs was on the Frontier Flight Attendant Seniority List as of January 1, 2012. *See* Am. Compl. (ECF No. 2) ¶ 10. But between January 1, 2012 and

March 15, 2017, each Plaintiff left his/her employment with Frontier (*id.* at ¶ 11) – and thus ceased to be a "Flight Attendant" within the meaning of the CBA.[1]

On March 15, 2017, Frontier and the AFA entered into a Letter of Agreement (the "Equity Participation Payment LOA") which provided that Frontier would pay $40 million to "eligible Flight Attendants" "[i]n full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24A of the CBA."  (Peter Decl. ¶ 10(c); Ex. C at ¶ A.1.)  The LOA provided further that:

> [T]he Union shall provide the Company with a written schedule (the "Allocation Schedule"), setting forth the name and employee identification number of each Flight Attendant eligible to receive a portion of the Equity Participation Payment (each, an "Eligible Flight Attendant") and the gross amount of the Equity Participation Payment to be paid to each Eligible Flight Attendant upon each Payment Date.  The Union shall determine the Eligible Flight Attendants and their portion of the Equity Participation Payment in its sole discretion.

(*Id.* ¶ A.2; *see also* Am. Compl. ¶ 13.)

In exercising its authority under the LOA to "determine the Eligible Flight Attendants . . . in its sole discretion," the AFA determined that only those flight attendants who were on the Frontier Flight Attendant Seniority List on both January 1, 2012 and March 15, 2017 would be eligible to receive a portion of the Company's $40 million payment.  *See* Am. Compl. ¶ 14.  On that basis, the Plaintiffs did not receive a payment.  *See id.* ¶ 15.  The in-person negotiations for the Equity Participation Payment

---

[1]     Article 2(32) of the Frontier-AFA CBA defines the term "Flight Attendant" as follows: "An employee of the Company whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services."  (Peter Decl. ¶ 10(b); Ex. B.)

LOA took place in Denver, Colorado; otherwise, the negotiations were handled via telephone and e-mail.  None of the negotiations occurred in Iowa.  (Peter Decl. ¶ 7.)

In mid-2017, Plaintiffs filed grievances under the Frontier-AFA CBA, contending that "[t]he applicable CBA does not require either 'continuous' employment through March 15, 2017 or active employment as of March 15, 2017 in order to receive equity payments."  (*See, e.g.,* Peter Decl. ¶ 10(d); Ex. D at 4.)  Plaintiffs appealed Frontier's denial of their grievances to the Frontier Flight Attendants' System Board of Adjustment (Peter Decl. ¶ 10(e); Ex. E; Am. Compl. ¶ 17), and an evidentiary hearing before the arbitration panel was conducted on March 20, 2018.[2]  (Peter Decl. ¶ 12.)  The hearing took place in Denver, Colorado.  (*Id.*)

## II.    Many Of The Potential Witnesses Work Or Reside In Colorado – None Are From Iowa.

The Plaintiffs' claim to a portion of the $40 million Equity Participation Payment is based on Article 24 of the 2011 Frontier-AFA CBA.  The members of AFA's Negotiation Committee at the time were:  Erika Schweitzer (who also was the President of the union's Frontier Master Executive Council/Local Executive Council); Darol Glasscock, and Theresa Owens.  The chief spokesperson for the AFA Negotiation Committee was Suzanne Balzer, a negotiator retained by the AFA at the national level to assist the Frontier flight attendants in their negotiations.  (*See* Peter Decl. ¶ 4.)

---

[2]    The record was closed as of May 1, 2018, with Plaintiffs' submission of testimony from Darol Glasscock.  (*See* Peter Decl. ¶ 13.)  The parties are scheduled to file their post-hearing briefs on June 15, 2018.  *Id.*

Ms. Schweitzer and Ms. Owens are still Frontier flight attendants. (*Id.* ¶ 4(a)-(b).)

Ms. Schweitzer is based in Chicago, Illinois, for purposes of her employment as a flight

attendant, and she lives in Aurora, Colorado. (*Id.* ¶ 4(a).) Ms. Owens is based in

Orlando, Florida, and lives in Denver, Colorado. (*Id.* ¶ 4(b).) Mr. Glasscock no longer

works for Frontier; he lives in Henderson, Nevada. (*Id.* ¶ 4(c).) Ms. Balzer, who is

currently an employee of the AFA, works and lives in the Minneapolis-St. Paul,

Minnesota metropolitan area. (*See* Peter Decl. ¶ 4(d).)

The members of Frontier's Negotiation Committee for the 2011 CBA were: Ron

Henson (Vice President-Labor Relations for RAH); Jacalyn Peter (at the time, Frontier's

Senior Manager-Labor Relations); and Ken Pack (Manager-Labor Relations for RAH).

Additionally, Wayne Heller (RAH's Executive Vice President and Chief Operating

Officer), and Tim Dooley (RAH's Chief Financial Officer) had some specific

involvement with respect to issues concerning Article 24 of the CBA. (*See* Peter Decl.

¶ 2.) Of these five potential witnesses, only Ms. Peter ever worked for Frontier. She still

does, at Frontier's corporate headquarters in Denver; she also lives in the Denver

metropolitan area. (*See id.* ¶ 3.) Mr. Henson has since retired from RAH; he lives in

North Carolina. (*Id.* ¶ 3(a).) Mr. Pack, Mr. Heller and Mr. Dooley no longer work for

RAH; they currently live and/or work in the Indianapolis, Indiana area. (*Id.* ¶¶ 3(b)-(d).)

The March 15, 2017 Equity Participation Payment LOA is the other collectively-

bargained agreement at issue in this lawsuit. The main participants on behalf of Frontier

in the negotiation of this LOA were James Dempsey and Howard Diamond. (*See* Peter

Decl. ¶ 8.) Mr. Dempsey is Frontier's Chief Financial Officer, and Mr. Diamond is

Frontier's General Counsel and Corporate Secretary; both work at Frontier's corporate headquarters in Denver and live in the Denver, Colorado metropolitan area.  (*Id.*)  For the AFA, the main participants in the negotiations were Peter Swanson (an AFA Staff Attorney) and Matt Barton (an aviation economist).  (*See id.* ¶ 9.)  Mr. Swanson works and lives in the Minneapolis, Minnesota metropolitan area.  (*See id.*)  Mr. Barton lives in the Denver, Colorado metropolitan area.  (*See id.*)

At the March 20, 2018 arbitration hearing in Denver, the AFA also called Sherrie Thompson as a witness regarding the Equity Participation Payment LOA.  Ms. Thompson is currently a Frontier flight attendant.  She is based in Denver, Colorado, and lives in Henderson, Colorado.  (*See* Peter Decl. ¶ 12.)  The Plaintiffs also called Faith France and Steven Shaw as witnesses.  Ms. France left her employment as a Frontier flight attendant in order to work for Southwest Airlines; she lives in Henderson, Nevada.  (*See id.* ¶ 10(f); Ex. F at 26:3-14; ¶ 12.)  Mr. Shaw is a retired Frontier flight attendant; he lives in Englewood, Colorado.  (*See id.* ¶ 12.)

## ARGUMENT

A motion to change venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  As this Court has recognized, "[t]he statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense.'"  *Seneca Cos. v. Becker*, 134 F. Supp. 3d 1148, 1155-56

(S.D. Iowa 2015) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Accordingly, in deciding a motion to transfer under 28 U.S.C. § 1404(a), a court

considers:  "(1) the convenience of the parties; (2) the convenience of the witnesses; and

(3) the interests of justice."  *See Aqua-Care Mktg. LLC v. Hydro Sys., Inc.*, 99 F. Supp.

3d 959, 962 (S.D. Iowa 2015).  And while such determinations involve a case-by-case

evaluation, *see, e.g.*, *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.

1997), the standard factors weigh heavily in favor of transfer here.

### A.    This Action Could Have Been Brought In The District Of Colorado.

Venue is proper in, *inter alia*, a "judicial district in which any defendant resides, if

all defendants are residents of the State in which the district is located," and a "judicial

district in which a substantial part of the events or omissions giving rise to the claim

occurred."  28 U.S.C. § 1391(b)(1) & (2).  Because Frontier's corporate headquarters are

located in Denver, it indisputably resides within the District of Colorado.  *See* 28 U.S.C.

§ 1391(c)(2) (stating that a defendant "with the capacity to sue and be sued in its common

name under applicable law, whether or not incorporated," is a resident for venue purposes

of "any judicial district in which such defendant is subject to the court's personal

jurisdiction with respect to the civil action in question").  Moreover, as set forth above

(*see* Summary Of Facts, § I, *supra*), a substantial portion of the events regarding the

ratification of the 2011 Frontier-AFA CBA and the negotiation of the March 15, 2017

Equity Participation Payment LOA occurred in Colorado.

Accordingly, Plaintiffs' lawsuit "might have been brought" in the District of

Colorado and the first requirement for transfer under Section 1404(a) is easily satisfied.

**B.     The Convenience Of The Parties Strongly Favors Transferring This
         Case To The District Of Colorado.**

Courts are sometimes faced with situations in which one party wants to transfer a

case in order to shift the inconvenience of a trial location to the other party; that is clearly

an insufficient basis for granting a motion to change venue.  *See, e.g., Aqua-Care Mktg.*,

99 F. Supp. 3d at 964 ("merely shifting the inconvenience from one side to the other…is

not a permissible justification for a change of venue") (citation omitted).  This, however,

is not such a case – ***not a single one of the nearly 100 Plaintiffs lives in Iowa*** (*see* Am.

Compl ¶ 1); and Frontier maintains its corporate headquarters in Denver, Colorado.  *Cf.*

*Maytag Corp. v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of*

*America*, 2009 WL 350649, at *9 (S.D. Iowa Feb. 11, 2009) (finding that convenience of

the parties favored keeping lawsuit in Iowa because, while the plaintiff and one defendant

were headquartered in Michigan, another defendant and 94% of the proposed defendant

class members were located in Iowa).

Transferring the instant case to the District of Colorado would be substantially

more convenient for Frontier.  And doing so would not inconvenience any Plaintiffs –in

fact, the transfer requested by Frontier would make the litigation more convenient for the

approximately 75 out of 100 Plaintiffs who live in Colorado or in states closer to

Colorado than to Iowa.  (*See* Peter Decl. ¶ 11.)  The only people who would be

inconvenienced by the requested transfer to the District of Colorado are Plaintiffs'

counsel (whose offices are located in Waukee, Iowa), but "it is axiomatic that convenience to [the parties'] counsel is not a factor to be considered in deciding the propriety of transfer.'" *See Lyngholm v. FedEx Ground Package Systems, Inc.*, 827 F. Supp. 2d 912, 921 (S.D. Iowa 2011) (citation omitted; alteration in original); *see also In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("[C]onvenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."); *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (explaining that, in the balance of factors for a transfer analysis, location of attorneys was "not a permissible consideration").

### C. The Convenience Of Witnesses Strongly Favors Transferring This Case To The District Of Colorado.

As discussed below, more potential witnesses in this case work and live in Colorado than any other state. ***None are from Iowa.*** As such, the District of Colorado will be a far more convenient location for a trial of this matter than the Southern District of Iowa.

Frontier's Vice President-Labor Relations (Jacalyn Peter), who was a member of Frontier's Negotiation Committee in 2011, a signatory to the Frontier-AFA CBA (as well as the letter of agreement attached as Exhibit 2 to Plaintiffs' amended complaint), and Frontier's witness regarding the negotiation of Article 24 in the recent arbitration hearing, lives and works in the Denver, Colorado metropolitan area. (*See* Summary Of Facts, § II, *supra*.) Two of the members of AFA's Negotiation Committee in 2011 (Erika

Schweitzer and Theresa Owens), who are both current Frontier flight attendants, also live in Colorado.  (*See id.*, § II, *supra*.)[3]

With respect to the March 15, 2017 Equity Participation Payment LOA, the two potential witnesses from Frontier's point-of-view (James Dempsey and Howard Diamond) live and work in the Denver, Colorado metropolitan area.  (*See* Summary Of Facts, § II, *supra*.)  The AFA's witness regarding the LOA at the recent arbitration hearing, Sherrie Thompson, is a current Frontier flight attendant who lives in Colorado. (*See id., § II, supra.*)  Another one of the AFA's participants in the LOA process, an aviation economist named Matt Barton, lives in the Denver, Colorado metropolitan area (*see id., § II, supra*) – within the subpoena power of the District of Colorado, but not this Court.[4]  *See Medicap Pharm., Inc. v. Faidley*, 416 F. Supp. 2d 678, 687 (S.D. Iowa 2006)

---

[3]      The other potential witnesses from Frontier's perspective regarding the 2011 CBA negotiations, and Article 24 in particular, would be Ron Henson, Ken Pack, Wayne Heller and Tim Dooley.  These persons do not have any present connection to Frontier or RAH, and they live in Indiana and North Carolina.  (*See* Summary Of Facts, § II, *supra*.)  As such, these potential witnesses are outside the subpoena power of both this Court and the District of Colorado.  The other persons from the AFA's perspective with knowledge of the 2011 CBA negotiations, and Article 24 in particular, would be Darol Glasscock and Suzanne Balzer. Mr. Glasscock, who is a former Frontier flight attendant, would be called by Plaintiffs and not by Frontier.  Assuming he were able to travel, Mr. Glasscock lives in Nevada – much closer to Denver than to Des Moines but, in any event, beyond the subpoena power of both this Court and the District of Colorado.  Ms. Balzer is an employee of the AFA; she lives and works in the Minneapolis, Minnesota metropolitan area – also beyond the subpoena power of this Court and the District of Colorado.  (*See id., § II, supra.*)

[4]      The other AFA participant with respect to the Equity Participation Payment LOA, Peter Swanson, is an AFA Staff Attorney who works and lives in the Minneapolis, Minnesota metropolitan area (*see id., § II, supra*) – which is beyond the subpoena power of this Court and the District of Colorado.

(noting that the convenience of non-party witnesses is one of the most important factors in the venue analysis).

The Plaintiffs who testified at the recent arbitration hearing, Faith France and Steven Shaw, live in Nevada and Colorado, respectively. (*See* Summary Of Facts, § II, *supra*.) The District of Colorado is a more convenient forum for these two potential witnesses than is the Southern District of Iowa.

While it is true that many of the witnesses in the event of a trial would likely be Frontier employees, whose attendance in the Southern District of Iowa might be secured by Frontier as a practical matter,[5] that does not change the fact that the District of Colorado is far more convenient than the Southern District of Iowa. As the Fifth Circuit explained in *In re Volkswagen AG*, 371 F.3d at 204-05:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

---

[5]      *But see Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 113 (D. Del. 1992) (ruling that, although "the [defendant] can compel [its employees'] attendance at trial without the Court's assistance . . . the interests of justice would be better served by transferring the action to [the district] where their attendance could be assured, not merely presumed").

*See also In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *4 (N.D. Cal. Sep. 23, 2005) (granting motion to transfer, and citing burden of testifying in another city when witnesses "have children to get to school, elderly parents to care for, jobs to do and lives to lead – all of which must be managed somehow or put on hold").

In this case, no potential witnesses are located within the Southern District of Iowa or otherwise subject to this Court's compulsory process – whereas many potential witnesses are located within the District of Colorado and, to the extent it becomes necessary, would be subject to that Court's compulsory process.  The convenience of the witnesses strongly favors transfer of this action to the District of Colorado.

**D.    The Interests Of Justice Favor Transferring This Case To The District Of Colorado.**

When determining whether the interests of justice favor transfer, courts consider: "(1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law."  *Terra Int'l, Inc.*, 119 F.3d at 696.  The factor which is most significant under the circumstances of the present case is the comparative costs to the parties in litigating in each forum – which weighs in favor of transfer to the District of Colorado.

Litigating Plaintiffs' claims in the Southern District of Iowa would be significantly more costly than in the District of Colorado.  Frontier maintains its corporate headquarters in Denver, which is, therefore, where Frontier's witnesses and documents

are generally located.  Without a transfer, Frontier would incur significant costs in

providing air travel, accommodations, and meals for witnesses required to testify at

hearings or trial– costs which, at least with respect to the many witnesses located in

Colorado, could be entirely avoided if this case were transferred to the District of

Colorado.  *See, generally, In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010)

(recognizing that having a trial in Northern California, where Apple has its headquarters,

was a significant factor in favor of transferring the lawsuit from Arkansas – because

"[m]any potential witnesses reside[d] in California; much of Apple's relevant

documentation [was] located in California; and Northern California [was] the site of

alleged misconduct.").  Plaintiffs, however, would not suffer any additional costs if this

case were transferred to Colorado – since none of the Plaintiffs live in Iowa, they will be

traveling no matter what.

* * *

As a general matter, a plaintiff's choice of forum is given considerable deference

in the venue analysis.  *See, e.g.*, *Terra Int'l*, 119 F.3d at 695.  Here, however, because

there is no relevant connection between the Southern District of Iowa and any of the

circumstances alleged in Plaintiffs' amended complaint, Plaintiffs' choice of forum is

entitled to no such deference.  *See In re Apple*, 602 F.3d at 913 ("Because no relevant

connection exists between [Plaintiff], [Defendant], potential witnesses, or the dispute and

Western Arkansas, [Plaintiff's] choice of forum was entitled to minimal weight in the

§ 1404(a) determination.").

Regarding other "interests of justice" factors:

(1)      Plaintiffs' ability to enforce a judgment (if any) against Frontier would not be adversely impacted by the requested transfer of this case.  In fact, it would likely be easier for Plaintiffs to enforce a judgment entered by a court in Colorado, because Frontier's corporate headquarters are located there and because Frontier is a Colorado corporation.  (*See* Peter Decl. p. 1; *Sparks v. Goalie Entertainment, Inc.*, 2007 WL 962946, at *6 (S.D. Iowa Mar. 30, 2007) (finding that enforcement of judgment factor weighed slightly in favor of transfer to District of Colorado because Defendant's principal place of business was located there).)

(2)      To the extent Plaintiffs' two common-law claims (promissory estoppel and unjust enrichment) remain in the case, it is likely that this Court would need to address thorny conflict-of-law issues in light of the incongruity in applying Iowa substantive law to a case where no Plaintiffs are from Iowa and none of the underlying events occurred in Iowa.  On the other hand, there would be far less likelihood of conflict-of-law issues if this case were transferred to the District of Colorado, because a substantial portion of the Plaintiffs (approximately 60%, *see* Peter Decl. ¶ 11) live there and because many of the relevant underlying events occurred there.

(3)      This case will not likely involve the advantages of a local court deciding questions of local law because, as explained immediately above, it seems rather unlikely that Iowa substantive law will govern Plaintiffs' common-law claims.

## **CONCLUSION**

For all the foregoing reasons, and "[f]or the convenience of the parties and witnesses,

[and] in the interest of justice," Defendant Frontier Airlines, Inc. respectfully requests

that, in the event the Court has not first granted Frontier's motion to dismiss, the Court

order this matter transferred to the United States District Court for the District of

Colorado pursuant to 28 U.S.C. § 1404(a).

Dated:  May 2, 2018.                              Respectfully submitted,


                                                  BELIN McCORMICK, P.C.

                                                  By:  _____
                                                         Matthew C. McDermott

                                                  666 Walnut Street, Suite 2000
                                                  Des Moines, IA  50309-3989
                                                  Telephone:  (515) 283-4643
                                                  Facsimile: (515) 558-0643
                                                  E-Mail: mmcdermott@belinmccormick.com

                                                  Chris A. Hollinger (*pro hac vice*)
                                                  O'MELVENY & MYERS LLP
                                                  Two Embarcadero Center
                                                  San Francisco, CA 94111
                                                  Telephone: (415) 984-8700
                                                  E-mail: chollinger@omm.com

                                                  ATTORNEYS FOR DEFENDANT
                                                  FRONTIER AIRLINES, INC.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon the parties to this action by serving a copy upon each party
listed below on May 2, 2018 by

☑   Electronic Filing System        ☐   Other _____

Kellie L. Paschke
Skinner & Paschke, PLLC
204 West Hickman Road
Waukee, IA 50263
kellie@splawiowa.com;
beth@splawiowa.com

Jason D. Walke
Walke Law, LLC
204 West Hickman Road
Waukee, IA 50263
jwalke@walkelaw.com;
nphifer@walkelaw.com

Signature:    */s/ Lori McKimpson* _____

F0765\0001\ (2977492.2)