IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, *et. al*,<br><br>               Plaintiffs,<br><br>     v.<br><br>FRONTIER AIRLINES, INC.,<br><br>               Defendant. | Civil Action No.<br>4:17-cv-00452-JEG-HCA |

## DECLARATION OF JACALYN W. PETER
## IN SUPPORT OF DEFENDANT FRONTIER AIRLINES, INC.'S
## MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404

I, Jacalyn W. Peter, submit the following declaration in support of the motion to

transfer filed by Defendant Frontier Airlines, Inc. ("Frontier"), a Colorado corporation, in

the above-captioned matter.

1.    I am currently Frontier's Vice President-Labor Relations. With the

exception of a five-month period between late 2007 through early 2008, I have been

continuously employed by Frontier since December 29, 2005. My employment with

Frontier has, at all times, involved the human resources and labor relations functions. I

have personal knowledge of the facts set forth below, except as to those matters which

are stated upon information and belief or based upon information contained in Frontier's

business records. As to the latter matters, I believe them to be true. If called as a

witness, I could and would competently testify to the matters set forth below.

1

2.     I was a member of Frontier's Negotiation Committee for the negotiations which resulted in the 2011-2016 Collective Bargaining Agreement ("CBA") between Frontier and the Association of Flight Attendants-CWA (the "AFA"). This was the parties' first CBA. The other members of Frontier's Negotiation Committee were: Ron Henson, Vice President-Labor Relations for Republic Airways Holdings, Inc. ("RAH"), Frontier's corporate parent at the time; and Ken Pack, Manager-Labor Relations for RAH. In addition, Wayne Heller, RAH's Executive Vice President and Chief Operating Officer, and Tim Dooley, RAH's Chief Financial Officer, had some specific involvement with respect to issues concerning Article 24 of the CBA (Equity Participation and Profit-Sharing Program). During the course of these negotiations, Frontier advised the AFA that RAH had decided to restructure Frontier and that it would therefore be necessary for Frontier's flight attendants (along with the other Frontier employee groups) to accept concessions in order to reduce Frontier's operating costs.

3.     I work at Frontier's corporate headquarters in Denver, Colorado. I live in Greenwood Village, Colorado, which is very close to Denver. Messrs. Henson, Pack, Heller and Dooley no longer work for RAH, and they never worked for Frontier. I have reviewed the current LinkedIn profiles for each of these individuals, and, based on those profiles and my own personal knowledge of their circumstances, I believe the following to be true and correct:

(a)     Mr. Henson lives in North Carolina.

2

(b)     Mr. Pack lives in Carmel, Indiana, and works in the Indianapolis, Indiana area (which is also where RAH's headquarters are located).

(c)     Mr. Heller lives in the Indianapolis, Indiana area.

(d)     Mr. Dooley lives and works in the Indianapolis, Indiana area.

4.     The members of AFA's Negotiation Committee for the bulk of these negotiations were:  Erika Schweitzer (who also was the President of the union's Frontier Master Executive Council/Local Executive Council); Darol Glasscock, and Theresa Owens.  The chief spokesperson for the AFA Negotiation Committee was Suzanne Balzer, a negotiator retained by the AFA at the national level to assist the Frontier flight attendants in their negotiations.  Except as otherwise indicated, the following is based on Frontier's employment records:

(a)     Ms. Schweitzer is currently employed as a flight attendant for Frontier.  She is based in Chicago, Illinois, for purposes of her employment, and she lives in Aurora, Colorado.

(b)     Ms. Owens also is currently employed as a flight attendant for Frontier.  She is based in Orlando, Florida, and lives in Denver, Colorado.

(c)     Mr. Glasscock no longer works for Frontier.  He lives in Henderson, Nevada.

(d)     Ms. Balzer is an employee of the AFA.  I have reviewed her current LinkedIn profile and, based on that profile as well as my understanding of her circumstances learned through the performance of my job, I believe that

Ms. Balzer lives and works in the Minneapolis-St. Paul, Minnesota metropolitan area.

5.　　The in-person negotiations for the 2011-2016 Frontier-AFA CBA mainly took place in Indianapolis, Indiana, and, to a lesser extent, in Denver, Colorado. Otherwise, the negotiations were conducted via e-mail and telephone. No negotiations took place in Iowa.

6.　　After Frontier and the AFA reached a tentative agreement for the 2011-2016 CBA, the AFA conducted a ratification election to determine whether the CBA would be approved or rejected. In connection with that process, the AFA held "roadshows" where its negotiators provided information to flight attendants and answered questions about the terms of the CBA. These roadshows occurred at the sites of Frontier's flight attendant bases – at the time, Denver, Colorado, and Milwaukee, Wisconsin. None of the roadshows occurred in Iowa.

7.　　On March 15, 2017, Frontier and the AFA entered into a Letter of Agreement ("LOA") known as the Equity Participation Payment LOA. The in-person negotiations for this LOA took place in Denver, Colorado; otherwise, the negotiations were handled via telephone and e-mail. None of the negotiations occurred in Iowa.

8.　　The main participants on behalf of Frontier in the negotiation of the Equity Participation Payment LOA were James Dempsey and Howard Diamond. Mr. Dempsey is Frontier's Chief Financial Officer, and Mr. Diamond is Frontier's General Counsel and Corporate Secretary. Both work at Frontier's corporate headquarters in Denver,

4

Colorado.  Mr. Dempsey lives in Denver, Colorado, and Mr. Diamond lives in Broomfield, Colorado (which is near Denver).

9.      For the AFA, the main participants in the negotiations were Peter Swanson, an AFA Staff Attorney, and Matt Barton, an aviation economist.  I have reviewed Mr. Swanson's current LinkedIn profile and, based on that profile as well as my understanding of his circumstances learned through the performance of my job, I believe that Mr. Swanson lives and works in the Minneapolis, Minnesota area.  I also have reviewed Mr. Barton's current LinkedIn profile, and, based on that profile as well as my understanding of his circumstances learned through the performance of my job, I believe that Mr. Barton lives in Golden, Colorado.

10.      I attended the March 20, 2018 hearing in the labor arbitration referenced in Plaintiffs' First Amended and Substituted Complaint (¶ 17) on behalf of Frontier.  I also testified as a witness in that hearing.  The following materials are part of the evidentiary record from the arbitration:

(a)      Exhibit A to my Declaration is a true and correct copy of Article 24 of the 2011-2016 Frontier-AFA CBA.

(b)      Exhibit B to my Declaration is a true and complete copy of Article 2 of the 2011-2016 Frontier-AFA CBA.

(c)      Exhibit C to my Declaration is a true and correct copy of a Letter of Agreement between Frontier and the AFA re Equity Participation Payment, dated March 15, 2017.

(d)    Exhibit D to my Declaration is a true and correct copy of a Non-Disciplinary Grievance filed on Plaintiffs' behalf, dated May 25, 2017.

(e)    Exhibit E to my Declaration is a true and correct copy of Plaintiffs' Appeal of Grievance Denial to System Board of Adjustment, dated July 13, 2017.

(f)    Exhibit F to my Declaration is a true and correct copy of an excerpt from the March 20, 2018 hearing transcript.

11.    In connection with the arbitration, Plaintiffs' counsel Kellie L. Paschke provided information regarding her clients, including their current residence locations. Of the approximately 100 persons, who are grievants in the arbitration and Plaintiffs in the lawsuit, it appears that 61 live in Colorado and an additional 14 live in states which are clearly closer to Colorado than to Iowa (i.e., Arizona, California, Nevada, Oregon, Utah, and Washington). None of the Plaintiffs live in Iowa.

12.    An evidentiary hearing before the arbitration panel was conducted on March 20, 2018 in Denver, Colorado. Putting aside individuals mentioned earlier in my Declaration, the AFA also called Sherrie Thompson as a witness regarding the Equity Participation LOA. Frontier's employment records indicate that: Ms. Thompson is currently employed as a flight attendant for Frontier; she is based in Denver, Colorado; and she lives in Henderson, Colorado. The Plaintiffs also called Faith France (a former Frontier flight attendant who left Frontier to work for Southwest Airlines) and Steven Shaw (a retired Frontier flight attendant) as witnesses. The information provided by

Plaintiffs' counsel Kellie Paschke (*see* ¶ 11) indicates that Ms. France lives in Henderson, Nevada, and that Mr. Shaw lives in Englewood, Colorado.

13.     The evidentiary record in the arbitration was closed as of May 1, 2018, with Plaintiffs' submission of written testimony from Darol Glasscock.  The parties' post-hearing briefs are scheduled to be filed on June 15, 2018.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on May 1, 2018 in Denver, Colorado.

_____
Jacalyn W. Peter

# Exhibit A

**ARTICLE 24**
**EQUITY, PROFIT-SHARING, AND WAGE & BENEFIT SNAPBACKS**

A.    **EQUITY PARTICIPATION**

Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

1.    The value of the Equity Participation is $16.0 million.

2.    The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.

3.    The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

4.    Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary dragalong rights.

5.    Vesting:  The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments".  To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%

B.    **PROFIT SHARING PROGRAM.**

The Company has established a Profit Sharing Plan (the "PSP") for employees participating in the Company's restructuring efforts. According to the terms of the PSP, the Company will make contributions as follows:

1.    For pre-tax earnings greater than 2%, but less that 4% of total Company revenue, 50% will be contributed to the PSP.

2.    For pre-tax earnings greater than 4%, but less than 6% of total Company revenue, 25% will be contributed to the PSP.

3.    For pre-tax earnings greater than 6% of total Company revenue, 10% will be contributed to the PSP.

4.    50% of contributions to the PSP will be allocated to the Frontier

pilots and the remaining 50% will be allocated to the other participating Frontier employee groups in proportion to their contribution. The proportional share of the Flight Attendant group is 18% of the 50% share of the non-pilot groups.

5.      The Company will distribute all profit sharing payments no later than April 30 of each year based on the audited results from the preceding calendar year.

## C.      SNAPBACKS

1.      The overtime threshold, per diem and holiday pay will be reinstated if the Company is profitable for two consecutive years with pretax profits in excess of 5%, after profit sharing.

2.      The Company's matching contribution to the 401K Plan will be reinstated if the Company posts 2 straight years of pre-tax profits in excess of 5%, after profit sharing. The Company retains the right to restore the Company's matching contribution partially or fully in its discretion. Effective with the first paycheck in July 2016, the Company's matching contribution to the 401k Plan will be reinstated.

## D.      ADDITIONAL PROVISIONS

Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement.

# Exhibit B

J 1



# Association of Flight Attendants-CWA
# AFL-CIO

# Frontier Airlines
# Flight Attendant Contract

# 2011-2016

## ARTICLE 2
## DEFINITIONS

1. **Active** – The time a Flight Attendant is available for Duty Assignment or on paid time off.   A Flight Attendant on leave of absence, furlough, or another "no pay" status is not considered active, unless otherwise specified in this Agreement.

2. **ADD** – To pick up additional trips in order to increase the value of a Flight Attendant's line or to replenish his/her sick bank.

3. **Affiliate** – As used in this Agreement, the term "Affiliate" refers to: any Parent; any Entity that Controls or manages the Company or any Entity that the Company Controls or manages, or; any Entity under Common Control with the Company, or; any other corporate subsidiary, parent or division of the Company, a Parent or any other Affiliate.

4. **Agreement (with capital "A")** – This Collective Bargaining Agreement (CBA) including any Letters of Agreement or Memorandum of Understanding between the Company and the Union.

5. **Artificial Credit** – Unpaid credit used to adjust or build a schedule due to known absences.

6. **Association** – See *Union*.

7. **Automated Bid System** – A system that constructs monthly schedules for Flight Attendants based on his/her preference and seniority.

8. **Available to Assign (AVA)** – A Flight Attendant available for assignment or reassignment per the terms of this Agreement.

9. **Award** – An assignment given to a Flight Attendant based on his/her individual seniority and bid preferences, or as otherwise provided in this Agreement, as submitted through the Automated Bid System.

10. **Base** – Any geographic locations designated by the Company where Flight Attendants are stationed and their duty assignments are scheduled to begin and end.

11. **Bid** – Preferences submitted by a Flight Attendant through the Automated Bid System.

12. **Bid Period** – A block of time, usually a calendar month, for which Flight Attendants bid and are awarded schedules.  Under no circumstances will a Bid Period be less than 30 days.

13. **Block Hour/Block Time** – The period of time beginning when an aircraft's parking brake is released and the boarding door is closed and ending at Block In.

14.      **Block In** - The time at which an aircraft reaches a destination (generally at a gate), the parking brake is set, and the boarding door is open.

15.      **Calendar day** – Beginning at 0001 and ending at 2400.

16.      **Call-out status** – A period of time when a Reserve Flight Attendant must be available to receive duty assignments from Crew Scheduling.

17.      **CDO (Continuous Duty Overnight/Standup)** - A scheduled duty period that begins in one Calendar Day and ends in the following Calendar Day, which includes an overnight stay out of Domicile that is scheduled for less than FAR required minimum rest.

18.      **Charter** – An offline or online revenue flight that is not a regularly scheduled flight.

19.      **COLA (Company Offered Leave of Absence)** – A voluntary unpaid leave of absence for a period of time as offered by the Company and awarded as described in Article 12.D.

20.      **Company** – Frontier Airlines, Inc.

21.      **Credit/Credit Time/Credit Hour** – The total amount of time added to a Flight Attendants schedule.  Includes block time, company business, training, or any other time used for pay purposes.

22.      **Day off** - A calendar day off free of any duty.

23.      **Deadhead** – Transportation at Company direction to or from a duty assignment.

24.      **Debrief** – The time allowed for completing post flight duties.

25.      **Declared Irregular Operations (DIO)** – A short-term event including weather, airport closure, etc. that significantly disrupts or that is predicted to significantly disrupt at least 25% of the total daily system flight segments.

26.      **Domicile** – *See Base*.

27.      **DROP** – The removal of flight(s) from the Flight Attendant's schedule.

28.      **Duty Assignment-** The assignment of trip or other work by the Company.

29.      **Duty Period/Duty Time** – All time a Flight Attendant is on duty, commencing with report for duty and terminating when a Flight Attendant is released from duty.

30.      **Emergency Leave** – Unpaid time off for unavoidable serious circumstances up to 3 days with the approval of Inflight management.

31.      **Ferry** – A flight that does not transport revenue passengers used to reposition an aircraft to where it is needed.

32.   **Flight Attendant** – An employee of the Company whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services.

33.   **Flight Attendant Commuter (FAC)** – A Flight Attendant who lives in a different city other than his/her assigned base and commutes to base via air.

34.   **Furlough** – The involuntary removal of a Flight Attendant from active duty as a Flight Attendant due to a reduction in force.

35.   **GO** – Frontier Airlines, Inc., General Offices in Denver.

36.   **Grievance** – A complaint against the Company or another department that alleges contract violations or unfair disciplinary action.

37.   **Ground Time** – The amount of time between flight segments.

38.   **International Flight**– Any flight operating to or from a city outside the United States of America.

39.   **Irregular Operation** – Flights that are delayed or do not operate in accordance with the published schedule because of circumstances such as weather, maintenance, Air Traffic Control, acts of terror, security breaches or other similar circumstances.

40.   **Job Share** – As described in Article 5.E.7., a position offered for one bid period when overstaffing occurs to allow Flight Attendants to work low-time hours.

41.   **Junior Assignment** – An involuntary duty assignment given to a Flight Attendant on a scheduled day off.

42.   **Layover** – An overnight rest period outside the Flight Attendant's base.

43.   **Like Trip** – A replacement trip due to a cancellation, schedule change, or an administrative error.  The replacement trip must fall within the following guidelines: Report time no more than 1 hour prior to the original report time and a release time of no more than 3 hours after the original release time for a "Reschedule" or 2 hours after the original release time for a "Reroute".

44.   **Line** – A bid period award built in accordance with this Agreement that consists of assigned trips, days off, and pre-award requests.

45.   **Line Holder** – A Flight Attendant who has been awarded a line.

46.   **Longevity** – the period of time commencing on the Flight Attendant's date of hire (as a Flight Attendant) which shall begin on the first day a Flight Attendant is scheduled to and reports to the Company's Flight Attendant training program and continuing while the Flight Attendant is active, except where specifically stated otherwise in this Agreement.

47.     **Low-time** – As described in Article 5.I a position granted for a defined period of time to Flight Attendants who will be awarded between 37:30 and 58 hours and may work up to 59:59 hours per bid period.

48.     **Mixed Line** – A bid period award built in accordance with this Agreement that consists of trips, blocks of reserve days, days off, and pre-award requests.

49.     **Month** - A calendar month.

50.     **Open Time** – Trips or portions of trips that are unassigned or un-awarded with which Flight Attendants may ADD, or SWAP.

51.     **Positive Contact** – A live telephone or in-person conversation between a Flight Attendant and the Company.

52.     **Pre-award** – Request submitted prior to a bid period to accommodate pre-planned absences including, but not limited to: vacation, scheduled training, Company business, Union days, and jury duty.

53.     **Ready Reserve (RR)** – A period of time as defined in this Agreement when a Reserve Flight Attendant is required to be on reserve at his/her base airport or another base airport.

54.     **Red-eye** – Any Duty Period, other than a CDO, that reports prior to and releases after, or the entire Duty Period occurs between, 0100 and 0300 Local Base Time.

55.     **Release** – Time when a Flight Attendant is relieved from duty.

56.     **Report Time** - The time a Flight Attendant is scheduled to report for a flight assignment, training, or other Company-assigned duty.

57.     **Reroute** - A change to a trip after 1800 the day prior to initial trip report.

58.     **Reschedule** – A change to a trip before 1800 the day prior to an initial trip report.

59.     **Reserve** -- A Flight Attendant who was awarded a reserve line.

60.     **Reserve day** – A calendar day when a Reserve Flight Attendant is available for duty assignment.

61.     **Reserve Line** – A bid period award built in accordance with work rules of this Agreement consisting of Reserve days, days off and pre-award requests.

62.     **RGS** – Recurrent Ground School code for the automated bid system.

63.     **RON** – Remain overnight.

64.     **Segment/Leg** - A flight between cities that may or may not terminate in base.

Page 6 of 123

65.    **Seniority/Seniority Date** - The length of service with the Company as a Flight Attendant.

66.    **Short Call** – A notification from Crew Scheduling to a Reserve Flight Attendant that requires the Flight Attendant to report for a duty assignment no later than 2 hours from the time of the call.

67.    **SWAP** – A trip swap with available Open Time via the automated bid system.

68.    **Time Zones** - Unless otherwise specified all times listed in this agreement are Eastern Time.

69.    **TRADE** – An exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between two Flight Attendants via the automated bid system.

70.    **Transition** - The period of time when trips may overlap bid periods.

71.    **Trip/Sequence/Pairing** – A segment or series of segments over one or more days that begin and end in a Flight Attendant's base.

72.    **Union** – Association of Flight Attendants – CWA, AFL-CIO

73.    **VAC** – Vacation code for the automated bid system.

74.    **Vacancy** – Open Flight Attendant positions at a specified Base.

75.    **Wet Lease** – An Agreement between the Company and another air carrier in which the Company provides aircraft(s) and crew(s) to the other air carrier.

Exhibit C

**Letter of Agreement**
**between**
**ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO**
**and**
**FRONTIER AIRLINES, INC.**

---

**Equity Participation Payment**

---

This Letter of Agreement is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between FRONTIER AIRLINES, INC. (the "Company") and the ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO (the "Union"). The Company and the Union are parties to that certain Frontier Airlines Flight Attendant Contract 2011–2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendants are, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24A thereto (the "Equity Participation"). The parties desire to avoid any possible disputes with respect to the Equity Participation and have mutually agreed to the following:

### A. Equity Participation Payment

1. <u>Payment</u>. In full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24A of the CBA, the Company agrees to pay to the eligible Flight Attendants an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment"), which shall be payable as follows: (a) thirty six million, five hundred thousand dollars ($36,500,000) shall be remitted to individual Flight Attendants in six substantially equal installments on the first payroll date of each month commencing on June 1, 2017 (each, a "Payment Date"), less any applicable withholdings, in accordance with the Allocation Schedule (as defined below) and (b) three million, five hundred thousand dollars ($3,500,000) will be remitted to a third party escrow agent in accordance with Section B of this Letter of Agreement.

2. <u>Allocation Schedule</u>. No later than May 1, 2017, the Union shall provide the Company with a written schedule (the "Allocation Schedule"), setting forth the name and employee identification number of each Flight Attendant eligible to receive a portion of the Equity Participation Payment (each, an "Eligible Flight Attendant") and the gross amount of the Equity Participation Payment to be paid to each Eligible Flight Attendant upon each Payment Date. The Union shall determine the Eligible Flight Attendants and their portion of the Equity Participation Payment in its sole discretion, provided, that the total Equity Participation Payments identified on the Allocation Schedule for any Payment Date shall not exceed the aggregate payment the Company is obligated to make on such Payment Date pursuant to this Letter of Agreement (after giving effect to the Escrow). The Company may rely on the Allocation Schedule for all purposes hereof.

3. <u>Employment Taxes; Matching Contributions</u>. The Company shall be responsible for (a) the employer-portion of any employment taxes due in connection with the Equity Participation Payments to be made to the Flight Attendants under this Letter of Agreement and (b) any matching contributions required to be made in accordance with the terms and conditions of the Company's 401(k) plan based on any Flight Attendant contributions of Equity Participation Payments to such 401(k) plan in accordance with its terms and subject to all applicable plan limits. All other withholding taxes and similar obligations shall be the responsibility of the Flight Attendants and the Company is authorized to make appropriate withholding deductions from the payments hereunder.

4. <u>Payment Subject to Payroll Information and Release</u>. Payment of any portion of the Equity Participation Payment to an Eligible Flight Attendant shall be subject to such Flight Attendant's provision of any necessary administrative information (including a valid tax identification number) and execution and

1

delivery of a general release of claims against the Company and the Union in the form attached hereto as Exhibit A (a "Release of Claims") that becomes effective and irrevocable within sixty (60) days of the date this Letter of Agreement is executed and the Company shall not be obligated to make any payment hereunder to a Flight Attendant in the absence of the Company's receipt of such executed Release of Claims on or prior to the expiration of such sixty (60) day period.

## B. Escrow for Administrative Costs, Fees and Expenses.

No later than June 1, 2017, the Company shall deposit with a third party escrow agent to be identified in writing by the Union (the "Escrow Agent") an amount equal to $3,500,000 (the "Escrowed Amount") to be held in escrow by the Escrow Agent to reimburse the Union for any reasonably documented costs, fees and other expenses associated with the negotiation and execution of this Letter of Agreement, including the fees and expenses of the legal and financial advisors retained by the Union in connection herewith, and the administration of the Equity Participation Payments pursuant to the terms and conditions of an escrow agreement to be entered into between the Union and the Escrow Agent and consistent with this Letter of Agreement. At such time as the Union determines that the Escrowed Amount exceeds the amount needed to reimburse costs, fees and other expenses associated with the administration of the Equity Participation Payments, the Union shall cause such funds to be remitted to Eligible Flight Attendants. In order to provide administrative assistance to the Union in connection with any such remittances, the Company will facilitate such payment, through its payroll system,, as soon as administratively practicable and, in any event, within thirty (30) days, whereupon the Company shall pay an aggregate amount equal to such excess funds provided to it by the Union, less applicable withholdings, to Eligible Flight Attendants in accordance with an Allocation Schedule provided by the Union in writing and otherwise subject to the other terms and conditions hereof. The Union shall be solely responsible to pay its fees and expenses related to this Letter of Agreement and the Company shall have no obligation therefor.

## C. Release of Claims.

The Union hereby releases and forever discharges the Company and each of its predecessors, successors, related entities, owners, shareholders, directors, officers, employees, agents, representatives and insurers from any and all injuries, damages, claims, obligations, debts, liabilities, accounts, costs, expenses, demands, actions, or causes of action, known or unknown, arising out of or in any way connected with or resulting from any of the Union's rights with respect to the Equity Participation, except the obligations of the Company under this Letter of Agreement.

## D. Indemnification

The Union shall indemnify, defend and hold harmless the Company and its affiliates and their respective shareholders, members, partners, directors, managers, officers, employees, affiliates, agents and advisors from and against any damages, losses, deficiencies, obligations, penalties, judgments, settlements, claims, payments, fines, interest costs and expenses, including the costs and expenses of any and all actions and demands, assessments, judgments, settlements and compromises relating thereto and the costs and expenses of attorneys, accountants, consultants and other professionals incurred in the investigation or defense thereof or the enforcement of rights hereunder relating to or resulting from any claim made by any Flight Attendant or group of Flight Attendants to the extent relating to his, her or their allocation of the Equity Participation Payment as set forth in the Allocation Schedule.

## E. Miscellaneous

1. Representations. The Company represents and warrants to the Union, that the Company is not party to, and has no knowledge of, any litigation or legal action in respect of the Equity Participation or Section 24A of the CBA. The Union represents and warrants to the Company, that the Union is not party to, and

2

has no knowledge of, any litigation or legal action in respect of the Equity Participation or Section 24A of the CBA.

2. <u>Entire Agreement</u>.  This Letter of Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof and is entered into in full and complete satisfaction of Section 24A of the CBA.  Any representation, warranty, promise or condition, whether written or oral, not specifically incorporated herein, shall not be binding or of any force or effect upon the parties.

3. <u>No Implied Changes to Flight Attendant Agreement</u>:  This Letter of Agreement does not modify the CBA except as specifically provided herein.

4. <u>Governing Law</u>.  Any dispute regarding the application or interpretation of this Letter of Agreement shall be resolved in accordance with the terms of Articles 18 and 19 of the CBA, as required by Section 204, Title II of the Railway Labor Act, as amended.

IN WITNESS WHEREOF, the parties have signed this Agreement this _15th_ day of March, 2017

FRONTIER AIRLINES, INC.

Howard M. Diamond
General Counsel and Secretary

ASSOCIATION OF FLIGHT
ATTENDANTS, AFL-CIO

Name:
International President

Name:
MEC President

Name:
Senior Staff Attorney

3

US-DOCS\83000625.1

## EXHIBIT A

### FORM OF RELEASE OF CLAIMS

(Attached)

4

## FRONTIER AIRLINES, INC.
## RELEASE OF CLAIMS

This Release of Claims (this "Release") is entered into by and among FRONTIER AIRLINES, INC. (the "Company"), the ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO (the "Union") and the flight attendant named on the signature page hereto ("Flight Attendant") effective as of the date of the last signature hereto.

### RECITALS:

**WHEREAS**, the Company and the Union are parties to that certain Frontier Airlines Flight Attendant Contract 2011–2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendant is, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24A thereto (the "Equity Participation");

**WHEREAS**, the Company and the Union have entered into a Letter of Agreement, dated as of March 15, 2017 (the "LOA"), pursuant to which the Company has agreed, subject to the terms and conditions thereof, to pay to eligible flight attendants covered by the CBA an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment");

**WHEREAS**, the Union has determined that Flight Attendant is eligible to receive a portion of the Equity Participation Payment under the LOA and has allocated Flight Attendant an aggregate amount set forth on the signature page hereto (the "Individual Equity Participation Amount") to be paid, less required withholdings, in six substantially equal installments on the first payroll date commencing on June 1, 2017 in accordance with the terms of the LOA; and

**WHEREAS**, in consideration of the foregoing, and as a condition to the Company's and the Union's willingness to enter into the LOA, the Union's allocation of the Individual Equity Participation Amount, and the Company's payment of the Individual Equity Participation Amount, the Company and the Union have required that Flight Attendant execute and deliver this Release to the Company and the Union not later than May 14, 2017 (the "Release Deadline").

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements set out herein, the parties hereto hereby agree as follows:

1.    **Equity Participation Settlement**.    The payment of the Individual Equity Participation Amount in accordance with the terms and conditions of the LOA shall constitute a full and complete settlement of any and all claims Flight Attendant may have relating to the Equity Participation and Section 24A of the CBA.

2.    **Waiver and Release.**  Subject to the last sentence of the first paragraph of this Section 2, Flight Attendant, on his or her own behalf and on behalf of his or her heirs, executors, administrators, attorneys and assigns, hereby unconditionally and irrevocably releases, waives and forever discharges the Company, the Union and each of the Company's and the Union's affiliates, parents, successors, predecessors, and the subsidiaries, directors, owners, members, shareholders, officers, agents, and employees of the Company, the Union and the Company's and the Union's affiliates, parents, successors, predecessors, and subsidiaries (collectively, all of the foregoing are referred to as the

5

"**Released Parties**"), from any and all causes of action, claims and damages, including attorneys' fees, whether known or unknown, foreseen or unforeseen, presently asserted or otherwise arising through the date of his or her signing of this Release, concerning arising out of or in connection with the Equity Participation, Section 24A of the CBA, the Equity Participation Amount and Flight Attendant's allocation of the Individual Equity Participation Amount, including, without limitation, any claim arising under any federal, state or local laws, ordinances or regulations and any claim arising under any common law principle or public policy, including, without limitation, all suits in tort or contract. Notwithstanding any other provision of this Release to the contrary, this Release is contingent upon the Company paying Flight Attendant the Individual Equity Participation Amount in accordance with the terms of the LOA and does not encompass, and Flight Attendant does not release, waive or discharge, the obligations of the Company to pay the Individual Equity Participation Amount.

Flight Attendant understands that by signing this Release, he or she is not waiving any claims or administrative charges which cannot be waived by law or any claims that accrue in the future. He or she is waiving, however, any right to monetary recovery or individual relief should any federal, state or local agency pursue any claim on his or her behalf arising out of or related to the Equity Participation, Section 24A of the CBA, the Equity Participation Amount and the Individual Equity Participation Amount. Flight Attendant further agrees without any reservation whatsoever, never to commence a legal action or sue the Released Parties or become a party to a lawsuit on the basis of any and all claims of any type released in this Release.

3.    **Acknowledgments.**  Flight Attendant is signing this Release, knowingly and voluntarily. He or she acknowledges that: (a) he or she is hereby advised in writing to consult an attorney before signing this Release; (b) he or she has relied solely on his or her own judgment and/or that of his/ her attorney regarding the consideration for and the terms of this Release and is signing this Release knowingly and voluntarily of his or her own free will, and has had the opportunity to ask questions of, and be provided such information reasonably requested by him or her from the Company and the Union; and (c) he or she is not entitled to the Individual Equity Participation Amount unless he or she agrees to the terms of this Release.

4.    **Entire Agreement.**  There are no other agreements of any nature between or among the parties hereto with respect to the matters discussed in this Release, except as expressly stated herein, and in signing this Release, Flight Attendant is not relying on any agreements or representations, except those expressly contained in this Release.

5.    **Execution.**  This Release may be executed by facsimile and in counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

6.    **Severability.**  If any provision of this Release is found, held or deemed by a court of competent jurisdiction to be void, unlawful or unenforceable under any applicable statute or controlling law, the remainder of this Release shall continue in full force and effect.

7.    **Governing Law.**  This Release and its terms will be construed, enforced and governed by the laws of the State of Colorado without regard to conflict of law provisions. If any provision of this Release is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

US-DOCS\83000625.1

8. **Choice of Forum**.   The parties to the Release irrevocably and unconditionally (i) agree that any legal proceeding arising out of or in connection with this Release shall be brought in a court of subject matter jurisdiction located in the State of Colorado, which in the case of a state court shall be the courts of Denver County, California and in the case of federal jurisdiction, the courts of the District of Colorado, (ii) consent to the exclusive jurisdiction of such a court in any such proceeding, and (iii) waive any objection to the laying of venue of any such proceeding in any such court.  The parties also irrevocably and unconditionally consent to the service of any process, pleadings, notices or other papers in connection with any such proceeding and submit to personal jurisdiction in such venue.

*(Signature Page Follows)*

7

IN WITNESS WHEREOF, the parties have duly executed this Release as of the day and year set forth below.

FLIGHT ATTENDANT:

_____

Name: _____

Dated: _____

Individual Equity Participation Amount:
$ _____

FRONTIER AIRLINES, INC.

By: _____
Name:
Title:

Dated: _____

ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO

By: _____
Name:
Title:

Dated: _____

8

# Exhibit D

# Skinner & Paschke, PLLC

Attorneys and Counselors at Law

Troy A. Skinner
Kellie L. Paschke
Melanie L. Jackson

204 West Hickman Road
Waukee, Iowa 50263
Telephone 515-987-0022
Facsimile 515-987-6972
E-mail: kellie@splawiowa.com

May 25, 2017

Via Email:  Howard.Diamond@flyfrontier.com
Via Certified Mail

Frontier Airlines, Inc.
ATTN:  Howard Diamond
General Counsel and Secretary
7001 Tower Road
Denver, CO 80249

Mr. Diamond,

Pursuant to the procedures as set forth in Article 18 of the 2011-2016 Frontier Airlines
Flight Attendant Contract, please see the attached Grievance on behalf of our clients.  I
would note this Grievance is being directed to your attention, rather than the Director of
Inflight, as all the parties are currently being represented by legal counsel.

I look forward to your reply.

Very truly yours,

SKINNER & PASCHKE, P.L.L.C.

Kellie L. Paschke

# Non-Disciplinary Grievance

TO:
Mr. Howard Diamond
General Counsel and Secretary

FROM:
Kellie L. Paschke
Troy A. Skinner
SKINNER & PASCHKE, PLLC

Jason D. Walke
WALKE LAW, LLC

Attorneys on behalf of the following former flight attendants:
Adeline Clark, Amanda Arana, Amy Jo Dolan, Angella Lemar, Barbara Danner, Bobbi Close, Caroline Gagne, Christopher Bergnaud, Cibelle Pedrosa McDonald, Clara Addie McKee, Connie Wertzbaugher, Courtney Turner, Cynthia Ann South, Darol Glasscock, David Jelinek, Debbie Brimmerman, Denis Gerdes, Donald Moore, Dymetra Mccaskill, Faith France, Gladys Sims, Glenn David Josang, Holly Detlefs, Jacqueline Acree, Jaimie Savor, James Young, Jenn Beldyga, Jennie Benish, Jenny Guzzo Gray, Jerry Johnson, Jessica Armstrong, Jessica Healy, Jocelyn McCaskill, John Miller, Karen Haw, Kathleen Arnold, Kerri Wright, Laura Hamlin, Laura Sullivan, Levi Witthuhn, Lucas Thompson, Mary Carwile, Mike Sellers, Nancy Poffel, Nelson Miranda, Nicole Lallier, Randolph Aucone, Rashad Owens, Renate McConathy-Eggimann, Rhonda Nembhard, Robert Baker, Rosemary Lindsey, Ross Miller, Sarah Dinkelman, Shanyn Kiesler, Stacey Carter, Steven Shaw, Steve Sublett, Susan Means, Tamara Stewart, Tammy Kellsen, Zachary Bryce Davis, Zeinab Salah

SUBMIT THE FOLLOWING GRIEVANCE, WHICH OCCURRED ON:
The event(s) giving rise to this grievance occurred on or after April 26, 2017.

A VIOLATION OF CONTRACT ARTICLES PERTAINING BUT NOT LIMITED TO:
ARTICLE 24 – Equity, Profit-Sharing, and Wage and Benefit Snapbacks

A.   Equity Participation
Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

 1. The value of the Equity Participation is $16.0 million.

 2. The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any

higher rate offered to any other key stakeholder in the restructuring process.

3. The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

4. Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary dragalong rights.

5. Vesting: The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments". To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%.

D.  Additional Provisions
Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement.

**THE FACTS PERTAINING TO SAID GRIEVANCE ARE AS FOLLOWS:**
Article 24, Paragraph A of the Collective Bargaining Agreement (CBA) provides that "Flight Attendants *will be entitled* to equity in the Company as described herein..." Further, Paragraph D states that "Equity Participation as set forth in Paragraph A.....*will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012."*

The above named former flight attendants were on the Frontier Seniority List as of January 1, 2012.

Pursuant to a Letter of Agreement (LOA) executed between the Company and the Union on March 15, 2017, Frontier purported to permit the Union to determine who was eligible for equity payments per Article 24.

On April 14, 2017, the Master Executive Council (MEC) sent an email requiring "any flight attendant" contesting his or her placement on the list or computation of their equity payment to notify the AFA-Frontier MEC of the inaccuracy. The subject of each email was required to contain the heading "Equity List" and be sent no later than April 21, 2017.

The above named former flight attendants sent an email on or before April 21, 2017 to timely notify the AFA-Frontier MEC of their placement on the list and entitlement to equity payments, and challenge their absence from the same.

On or after April 26, 2017, the above named former flight attendants received an email from Jennifer Sala, AFA-Frontier MEC, stating that they were ineligible for equity payments because they were not "continuously" on the Frontier Flight Attendant Seniority List from January 1, 2012 through March 15, 2017 and not a Frontier employee as of March 15, 2017.

The applicable CBA does not require either "continuous" employment through March 15, 2017 or active employment as of March 15, 2017 in order to receive equity payments. Despite the clear terms of the CBA, the Company (through the Union) has improperly denied payments to the above named former flight attendants.

**RELIEF SOUGHT:**

The above named former flight attendants should immediately be placed on the eligibility list and provided with equity payments pursuant Article 24 of the CBA.

SIGNED: _Kellie L. Paschke_

Kellie L. Paschke

DATE: _May 25, 2017_

# Exhibit E

J 10

# Skinner & Paschke, PLLC

Attorneys and Counselors at Law

Troy A. Skinner
Kellie L. Paschke
Melanie L. Jackson

204 West Hickman Road
Waukee, Iowa 50263
Telephone 515-987-0022
Facsimile 515-987-6972
E-mail: kellie@splawiowa.com

July 13, 2017

Via Email:  Howard.Diamond@flyfrontier.com
Via Certified Mail

Frontier Airlines, Inc.
ATTN:  Howard Diamond
General Counsel and Secretary
7001 Tower Road
Denver, CO 80249

Mr. Diamond,

Pursuant to the procedures as set forth in Articles 18 and 19 of the 2011-2016 Frontier Airlines Flight Attendant Contract, please see the attached Appeal to the System Board of Adjustment on behalf of our clients and others similarly situated.  I would note this Appeal is being directed to your attention as all the Parties are currently being represented by counsel.

Please do not hesitate to contact me with any questions.

Very truly yours,

SKINNER & PASCHKE, P.L.L.C.

Kellie L. Paschke

July 13, 2017

# APPEAL TO SYSTEM BOARD OF ADJUSTMENT

**TO:**
Mr. Howard Diamond
General Counsel and Secretary

Jacalyn Peter
Vice President, Labor Relations

**FROM:**
Kellie L. Paschke
Troy A. Skinner
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
(515) 987-0022

Jason D. Walke
WALKE LAW, LLC
204 West Hickman Road
Waukee, Iowa 50263
(515) 421-4026

Attorneys on behalf of the following former flight attendants:
Adeline Clark, Amanda Arana, Amy Jo Dolan, Angella Lemar, Barbara Danner, Bobbi Close, Cara Stewart, Caroline Gagne, Christine Kernan, Christopher Bergnaud, Cibelle Pedrosa McDonald, Clara Addie McKee, Connie Wertzbaugher, Courtney Turner, Cynthia Ann South, Dana Wipff, Darol Glasscock, David Jelinek, Dawn Shobe, Debbie Brimmerman, Denis Gerdes, Donald Moore, Dymetra Mccaskill, Erin Barber, Faith France, Gladys Sims, Glenn David Josang, Holly Detlefs, Jacqueline Acrec, Jaimie Savor, James Young, Jenn Beldyga, Jennie Benish, Jenny Guzzo Gray, Jerry Johnson, Jessica Armstrong, Jessica Healy, Jocelyn McCaskill, John Miller, Karen Haw, Kathleen Arnold, Kerri Wright, Laura Hamlin, Laura Sullivan, Levi Witthuhn, Linda Kellerman, Lucas Thompson, Mary Carwile, Melissa Dahlman, Mike Sellers, Nancy Poffel, Nelson Miranda, Nicole Lallier, Randolph Aucone, Rashad Owens, Renate McConathy-Eggimann, Rhonda Nembhard, Robert Baker, Rosemary Lindsey, Ross Miller, Sarah Dinkelman, Shanyn Kiesler, Stacey Carter, Steven Shaw, Steve Sublett, Susan Means, Tamara Stewart, Tammy Kellsen, Zachary Bryce Davis, Zeinab Salah, on behalf of ourselves and all others within the class of former Frontier flight attendants who were on the Frontier Flight Attendant Seniority List as of January 1, 2012.

**STATEMENT OF FACTS:**
The Company and the Union are parties to Frontier Airlines Flight Attendant Contract 2011-2016, dated as of October 14, 2011, as amended (the "CBA"), pursuant to which Flight Attendants are, among other things, entitled to an equity participation right in the Company upon the terms and subject to the conditions set forth in in Article 24 thereto (the "Equity Participation").

On March 15, 2017 the Company and the Union entered into a Letter of Agreement to satisfy the Company's obligations under Article 24. In full and complete satisfaction of all of the Company's obligations in respect of the Equity Participation and Article 24 of the CBA, the Company agreed to pay to the eligible Flight Attendants an aggregate amount equal to forty million dollars ($40,000,000) (the "Equity Participation Payment"). The Appealing Parties has been excluded from eligibility and participation.

On May 25, 2017, the Appealing Parties, all former Frontier flight attendants who were on the Seniority List on January 1, 2012, filed a Grievance claiming eligibility to an appropriate portion of the Equity Participation Payment. A Supplemental Grievance was filed on June 13, 2017 for the purpose of including additional parties. A Consolidated Hearing was held on June 20, 2017, which included counsel for the former flight attendants, counsel for the Company, and counsel for the Union. The Company issued a Decision on June 30, 2017 denying the Consolidated Grievances. The former flight attendants are appealing that decision.

**QUESTION AT ISSUE:**
The question at issue is whether Article 24 of the CBA applies to flight attendants who were on the Seniority List as of January 1, 2012 but left employment prior to the March 15, 2017 Letter of Agreement.

**POSITION OF THE APPEALING PARTIES:**
Article 24, Paragraph A of the CBA provides that "Flight Attendants will be entitled to equity in the Company as described herein…" Further, Paragraph D of Article 24 states that "Equity Participation as set forth in Paragraph A…..will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012."

The purpose of Article 24 was to provide future compensation for flight attendants on the seniority list (as of January 1, 2012) for concessions they were making at the time the CBA was negotiated and agreed on. These concessions included:

1. Changes in Longevity Steps.
2. Reduction in sick accruals.
3. Reduction in vacation credit.
4. Suspension of the Company's 401k matching contribution.
5. Increased overtime threshold.
6. Reduction in paid holidays.
7. Reduction in per diem rates.

The language of the CBA is quite clear: flight attendants who were "on the Seniority List as of January 1, 2012" are entitled to equity participation. The Appealing Parties meet this definition. Nothing in Article 24 requires continued employment to maintain eligibility. The reason is simple: The Appealing Parties, all former flight attendants on the Seniority List as of January 1, 2012, made these concessions until their departure from the Company. The March 15, 2017 Letter of Agreement has materially altered the CBA by eliminating Article 24A, affecting the rights of the Appealing Parties.

Further, the Appealing Parties sacrificed and compromised rights they had at that time (at the insistence of the Company) to help the Company stay in business. Article 24 provided them with the opportunity to be compensated for those sacrifices and compromises. In doing so, Article 24 simple did NOT require the Flight Attendants to remain employed in with the Company forever. Rather, eligibility for participation in the Equity Participation Payment was, by the plain and simple language of Article 24, based on being on the Flight Attendant Seniority List as of January 1, 2012. The Company and Union are now simply ignoring that reality.

**POSITION OF OPPOSING PARTIES:**
The Opposing Parties maintain that "continuous employment" was required in order to be eligible for Equity Participation Payments.

**SPECIFIC PROVISIONS OF THE AGREEMENT ALLEGED TO HAVE BEEN VIOLATED:**
Article 24A and 24D.

**REMEDY SOUGHT:**
The Appealing Parties should be eligible for Equity Participation payments commensurate with the length of service.

**SIGNED:**     Kellie L. Paschke

Kellie L. Paschke
SKINNER & PASCHKE, PLLC
204 West Hickman Road
Waukee, Iowa 50263
Telephone:    (515) 987-0022
Facsimile:    (515) 987-6972
E-mail:kellie@splawiowa.com

**DATE:**    June 13, 2017

# Exhibit F

*In Re:*

*Equity Participation Grievance*

*Transcript of Proceedings*

*March 20, 2018*



700 17th Street, Suite 1750
Denver, CO  80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

1          FRONTIER AIRLINES

2    _____

3    IN THE MATTER OF THE EQUITY PARTICIPATION GRIEVANCE:

4    THE GRIEVANTS,

5    and

6    FRONTIER AIRLINES, INC.,

7    and

8    ASSOCIATION OF FLIGHT ATTENDANTS-CWA.

9    _____

10

11          TRANSCRIPT OF PROCEEDINGS

              March 20, 2018

12

13    _____

14

15

16

17

18

19

20

21

22

23

24

25

Page 2

```
 1   APPEARANCES:

 2   ARBITRATORS:
          JOHN B. LaROCCO, CHAIRMAN
 3        HOWARD M. DIAMOND
          EDWARD J. GILMARTIN
 4
     ON BEHALF OF THE GRIEVANTS:
 5        JASON D. WALKE, ESQ.
          Walke Law, LLC
 6        204 West Hickman Road
          Waukee, Iowa 50263
 7        Phone:  515-244-4097
          Email:  jwalke@walkelaw.com
 8
          KELLIE L. PASCHKE, ESQ.
 9        Skinner & Paschke, PLLC
          204 West Hickman Road
10        Waukee, Iowa 50263
          Phone:  515-987-0022
11        Email:  kellie@splawiowa.com

12   ON BEHALF OF FRONTIER AIRLINES, INC:
          CHRIS HOLLINGER, ESQ.
13        O'Melveny & Myers, LLP
          Two Embarcadero Center, 28th Floor
14        San Francisco, California 94111
          Phone:  415-984-8906
15        Email:  chollinger@omm.com

16   ON BEHALF OF THE ASSOCIATION OF FLIGHT ATTENDANTS-CWA:
          JEFFREY A. BARTOS, ESQ.
17        JOHN J. GRUNERT, ESQ.
          Guerrieri, Bartos & Roma, P.C.
18        1900 M Street, N.W., Suite 700
          Washington, D.C. 20036
19        Phone:  202-624-7400
          Email:  jbartos@geclaw.com
20        Email:  jgrunert@geclaw.com

21        PETER SWANSON, ESQ.
          Association of Flight Attendants-CWA
22        3960 Minnehaha Avenue
          Minneapolis, Minnesota 55406
23        Phone:  612-741-1300
          Email:  pswanson@afanet.org
24


25
```

Page 3

```
 1    Also Present:
              Faith France
 2            Steve Shaw
              Jacalyn Peter
 3            Erika Schweitzer
              Jennifer Sala
 4            Sherrie Thompson
              Suzanne Balzer
 5            Dan Akins

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  anything back.  I want you to present a full and entire

2  case.

3            That's the best thing for the board.  I think

4  it's the best thing for the parties.  It's the best

5  thing for any subsequent litigation, too, as far as the

6  board is concerned.  So I would urge you to play it

7  straight.  So that's all.  Let's go off the record.

8            (Recess from 9:44 a.m. to 10:09 a.m.)

9            THE CHAIRMAN:  We're ready to proceed with

10  the Grievants' case in chief.  Ms. Paschke or Mr. Walke,

11  you can call the Grievants' first witness.

12            MR. WALKE:  Thank you, Your Honor.  The

13  Grievants call Faith France as the first witness.

14            THE CHAIRMAN:  Raise your right hand.  Do you

15  solemnly swear that the testimony you're about to give

16  in this hearing will be the truth, the whole truth, and

17  nothing but the truth?

18            THE WITNESS:  Yes, sir.

19            THE CHAIRMAN:  Be seated.  For the record,

20  state your name.

21            THE WITNESS:  Faith Camille France.

22            THE CHAIRMAN:  Spell your last name.

23            THE WITNESS:  F-r-a-n-c-e.

24            THE CHAIRMAN:  Mr. Walke, direct examination.

25            MR. WALKE:  Thank you, Your Honor.

Page 26

```
 1                    DIRECT EXAMINATION

 2   BY MR. WALKE:

 3        Q.  Faith, could you go ahead and just explain to

 4   the panel your current work situation -- where you work,

 5   what you do?

 6        A.  I'm currently a flight attendant for

 7   Southwest Airlines.

 8        Q.  And how long have you worked for Southwest?

 9        A.  I've been with Southwest since -- well,

10   November of 2015, so just over two years.

11        Q.  And where did you work prior to working for

12   Southwest?

13        A.  I was a flight attendant for Frontier

14   Airlines.

15        Q.  We'll get back to that, but let's just start

16   from the beginning.  Where did you grow up?

17        A.  I grew up in Rawlins, Wyoming.

18        Q.  Did you grow up with anybody that's a lawyer

19   in this case?

20        A.  I sure did.

21        Q.  Who was that?

22        A.  I went to middle school and high school with

23   Kellie Paschke.

24        Q.  So in case anybody was wondering how this all

25   ended up back in Iowa, that's the explanation.  I
```

1    suspect there were people that probably were wondering

2    about it.

3            A.   There it is.

4            Q.   So you and Kellie went to high school

5    together?

6            A.   Correct.

7            Q.   How long have you been a flight attendant?

8            A.   Eleven years.  No.  Ten.  Wait.  I'm old.  I

9    have to do math.  I started February 5, 2007, so 10

10   years this year.

11           Q.   What did you do prior to becoming a flight

12   attendant?

13           A.   I was a police officer.

14           Q.   How long were you a police officer?

15           A.   Eight years and four months.

16           Q.   Where did you work as a police officer?

17           A.   I worked for the City of Laramie Police

18   Department in Laramie, Wyoming.

19           Q.   And so roundabout 10 years ago, you decided

20   you didn't want to be a police officer anymore and

21   decided, I want to be a flight attendant?

22           A.   Yes.

23           Q.   And talk a little bit about the process you

24   went through to become a flight attendant.

25           A.   I decided I wanted to work for a company that