IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADELINE CLARK, et al., | 4:17-cv-452-JEG-RAW |
| Plaintiffs, | |
| vs. | |
| FRONTIER AIRLINES, INC., | REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT AND TO TRANSFER PURSUANT TO 28 U.S.C. § 1404 |
| Defendant. | |

The above resisted motions [8] [13] are before the Court and have been referred to the undersigned for Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C). The parties have agreed the motions may be decided on the motion papers as supplemented by transcript selections from a pending arbitration proceeding. (*See* 6/19/18 Order [22] at 1). The motions are thus fully submitted.

**I.**

Defendant Frontier Airlines, Inc. ("Frontier") moves to dismiss plaintiffs' Amended Complaint [2] for lack of subject matter jurisdiction or, alternatively with respect to two common-law claims, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(1), (6). Plaintiffs are some 100 former flight attendants employed by Frontier. The relevant jurisdictional facts appear undisputed and are largely taken from the Amended Complaint.

Frontier and the Association of Flight Attendants-CWA ("Union") which represented Frontier's flight attendants entered into a collective bargaining agreement ("CBA") on October 14, 2011. (Amend. Complt. [2] ¶ 6). A few days before, on October 11, 2011, the Union agreed to

salary and benefit concessions to mitigate Frontier's then financial difficulties. The concessions were memorialized in a letter agreement entitled "Flight Attendant Restructuring Investments." (*Id.* attach. [3] at 3-4; *see* Paschke Decl. Ex. 7 (Glasscock Aff.) [23] at 28). Article 24 of the CBA was intended to compensate flight attendants for the concessions. (Amend Complt. [2] ¶ 9). It is captioned "Equity, Profit-Sharing, and Wage & Benefit Snapbacks." (*Id.* ¶ 7 and attach. [3] at 1). Paragraph A of Article 24 ("Article 24A") entitled flight attendants to "Equity Participation" in Frontier as described therein. (*Id.* and attach. [3] at 1). Paragraph D of Article 24 ("Article 24D") stipulated Equity Participation would be "exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." (*Id.* ¶ 8 and attach. [3] at 2). Each of the plaintiffs was on the seniority list as of January 1, 2012 but left Frontier's employment prior to March 15, 2017. (*Id.* ¶¶ 10, 11).

On March 15, 2017, Frontier and the Union signed a Letter of Agreement ("LOA") under which Frontier was to pay $40 million in satisfaction of its Equity Participation obligations under Article 24A (the "Equity Payment"). (Amend. Complt. [2] ¶ 12; *see* Hollinger Decl. [8-2], Ex. C). The LOA gave the Union sole authority to determine which flight attendants were eligible to share in the Equity Payment. (Amend. Complt. [2] ¶ 13).[1] The Union determined only those flight attendants on the seniority list who were continuously employed from January 1, 2012 through March 15, 2017 were eligible to receive a portion of the Equity Payment. As they had ceased employment before March 15, 2017, plaintiffs were denied a share of the payment. (*Id.* ¶ 14).

Plaintiffs' Amended Complaint is in three counts. Count I alleges Frontier breached Articles 24A and 24D of the CBA by excluding them from a share of the Equity Payment because

---

[1] Specifically, the LOA stated: "The Union shall determine the Eligible Flight Attendants and their portion of the Equity Participation Payment in its sole discretion . . . ." (Hollinger Decl. [8-2], Ex. C at 1).

the only Article 24D eligibility requirement was inclusion on the flight attendant seniority list as of January 1, 2012. (Amend. Complt. [2] ¶¶ 19, 20). Plaintiffs seek a decree they are eligible to receive Equity Payments, damages for emotional distress and pain and suffering, attorney fees and costs. (*Id.* at 7). Count II claims promissory estoppel based on the promises made in Articles 24A and 24D "as well as other communications." (*Id.* ¶ 28). Count III alleges Frontier was unjustly enriched by the value of the uncompensated for concessions plaintiffs made. (*Id.* ¶¶ 37-40). Counts II and III seek damages, attorney fees and costs.

Plaintiffs plead subject matter jurisdiction pursuant to 28 U.S.C. §1337(a). That subsection gives district courts "original jurisdiction of any civil action . . . arising under any Act of Congress regulating commerce . . . ." Plaintiffs assert their claims "arise under" the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, an Act regulating commerce. (Amend. Complt. [2] ¶ 3). Frontier's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is based on its argument that plaintiffs' claim for breach of the CBA is a "minor dispute" under the RLA within the exclusive jurisdiction of the Frontier Flight Attendants' System Board of Adjustment ("Board" or "Board of Adjustment") before which the arbitration of plaintiffs' grievance of the denial of Equity Payment participation is currently pending. Evidentiary hearing was held before the arbitration panel on March 20, 2018, and post-hearing briefs were to be filed by June 15, 2018. (Amend. Complt [2] ¶ 17; Hollinger Supp. Decl. [14-1] at 2). Plaintiffs' common-law promissory estoppel and unjust enrichment claims are, says Frontier, preempted by the RLA because both would require interpretation of the CBA.

In its motion to transfer, Frontier asks that the action be transferred to the United States District Court for the District of Colorado "[f]or the convenience of the parties and witnesses [and] in the interests of justice" as permitted by 28 U.S.C. § 1404(a). Frontier argues many of the events

took place in Colorado where it is headquartered and many potential witnesses are located, while no events took place in this district and no witnesses live here. None of the plaintiffs reside in Iowa. (*See* Amend. Complt. [2] ¶ 2).

## II.

The initial question is which motion should be decided first. The Court asked the parties to address the issue in light of the United States Supreme Court's opinion in *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007), and the Eighth Circuit's opinion in *Integrated Health Services of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953 (8th Cir. 2005).

*Integrated Health* involved a transfer of venue in circumstances which required the circuit to address "the issue of the district court's power to transfer the case before deciding the issue of its own jurisdiction." 417 F.3d at 957. The circuit agreed "that a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)." *Id.* (citing *Klett v. Pim*, 965 F.2d 587, 591 n.7 (8th Cir. 1992)). The court concluded, however, the district court had jurisdiction. *Id.*

The issue in *Sinochem* was "[w]hether a district court must first conclusively establish [its own] jurisdiction before dismissing a suit on the ground of *forum non conveniens*." 549 U.S. at 425 (quoting Pet. for Cert. (brackets original to opinion)). Section 1404(a) codifies the common-law doctrine of *forum non conveniens* when transfer is sought to another federal court. The doctrine remains applicable apart from the statute only where the alternative forum is in another country. In *Sinochem* the district court had dismissed the action without deciding whether it had personal jurisdiction over the defendant Sinochem, finding the case could be more conveniently decided in the Chinese courts where litigation was pending. *Id.* at 427-28. The Court of Appeals reversed concluding the district court could not dismiss the case on *forum non conveniens* grounds until it

determined definitively that it had both subject matter jurisdiction of the cause and personal jurisdiction over the defendant. *Id*. at 428.

The Supreme Court reversed unanimously holding:

> [A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.

*Id.* at 425. The court ended its opinion by cautioning that in "the mine run of cases, jurisdiction 'will involve no arduous inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should impel the federal court to dispose of [those] issue[s] first.'" *Id.* at 436 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999)). But if subject matter (or personal) jurisdiction is "difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.*

Frontier would have the Court determine the transfer motion first. It sees *Sinochem* as undercutting the Eighth Circuit rule that without subject matter jurisdiction a court cannot transfer a case. *See Zavanna, LLC v. RoDa Drilling Co.*, No. 4:09-cv-022, 2009 WL 3720177, at *15 (D.N.D. November 3, 2009) ("there may be reason to doubt" *Integrated Health* and like cases in light of *Sinochem* "if the premise is the lack of judicial power to transfer a case prior to deciding a question of subject matter jurisdiction, given that the transfer is a non-merits determination.").[2] Frontier notes a court in this circuit, and some courts elsewhere, have post-*Sinochem* transferred cases without resolving a subject matter jurisdiction challenge. *See Woodland's Development, LLC*

---

[2] The *Zavanna* court found it "not out of the realm of possibility" that the Supreme Court would conclude as a matter of statutory construction that the "statutory scheme governing transfer of cases between federal courts contemplates the transferring court resolving questions as to its subject matter jurisdiction first . . . ." 2009 WL 3720177, at *15 n.6.

5

*v. Regions Bank et al.*, Civil Action No. 13-514, 2013 WL 3233472, at *3 (E.D. La. June 24, 2013) (citing cases); *Emory v. Duke*, No. 4:12CV00404 SWW, 2012 WL 13027254, at *2 (E.D. Ark. August 2, 2012); *see also KGM contractors, Inc. v. Heavy Haulers, Inc.*, Case No. 16-cv-3638 (JNE/LIB); 2017 WL 2437239, at *1, 8 (D. Minn. June 5, 2017)(bypassing personal jurisdiction issue in favor of transferring case where relevant factors "overwhelmingly" supported transfer). Frontier argues its "factual challenge" to subject matter jurisdiction requires consideration of a number of factors which complicate the issue making transfer before ruling on the motion to dismiss the better course.

Plaintiffs respond that *Sinochem* represents a "narrow fact-specific exception [not applicable here] to the general rule" articulated in *Integrated Health* that there can be no § 1404(a) transfer without subject matter jurisdiction. (Pl. Stmt. [24] at 5). They contend the rule finds consistent support in Eighth Circuit and district case law, though none of the cases they cite are on point as involving the need to assure subject matter jurisdiction as a predicate to a venue transfer. (*Id.* at 3 (citing cases)). In *Larsen v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:06-cv-0077-JAJ, 2007 WL 3341698, at *8 (S.D. Iowa November 9, 2007), Judge (now Chief Judge) Jarvey considered a motion to transfer only after first determining the court had subject matter jurisdiction and quoted the requirement in *Integrated Health*. Though the case was decided shortly after *Sinochem*, the court's power to transfer without first determining it had subject matter jurisdiction was not in issue. Plaintiffs also find support in the Supreme Court's decisions in *Steel Co. v. Citizens for Better Government*, 523 U.S. 83 (1998) and *Ruhrgas*, but the *Sinochem* court saw those cases as consistent with the principle that "jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem*, 549 U.S. at 431 (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)). The decision to transfer a case is not a decision on the merits.

The Eighth Circuit's position that a district court cannot transfer a case under § 1404(a) without subject matter jurisdiction may indeed be doubtful in light of *Sinochem*. The Eighth Circuit has yet to revisit the issue and in the absence of guidance from it the *Zavanna* court felt obliged to follow existing circuit precedent. 2009 WL 3720177, at *5.

The Court need not predict what the Eighth Circuit would say in light of *Sinochem* or venture a departure from the clear command of *Integrated Health*. Assuming, without deciding, that *Sinochem* would permit the Court to transfer this case without first determining its subject matter jurisdiction of the action, *Sinochem* nonetheless supports deciding the motion to dismiss on the ground of lack of subject matter jurisdiction prior to the motion to transfer. While *Sinochem* gives the court discretion, it instructs that in most cases "both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum" support deciding a jurisdictional issue first. 549 U.S. at 496. As with a *forum non conveniens* dismissal, a § 1404(a) transfer without first determining subject matter (or personal) jurisdiction would properly be reserved for the exceptional case in which the jurisdictional issue is difficult to determine and transfer is clearly "the less burdensome course." *Id.*

This is not that exceptional case. Though Frontier's Rule 12(b)(1) motion presents a "factual challenge" to subject matter jurisdiction, the issue is not difficult to resolve. The relevant facts are uncomplicated and the few pages the parties devote to them in their briefing are almost exclusively concerned with what is pleaded in the Amended Complaint, as is the Court's summary above of the relevant facts. The applicable law is well developed. The major point of contention on the critical breach of the CBA claim in Count I appears to be whether the alleged breach is a "minor" dispute under the RLA as Frontier argues, or a "major" dispute as plaintiffs contend. (*See* Frontier Mem. [8-1] at 10-12; Pl. Brief [11] at 6-10). The consequences of either categorization

are not difficult to discern under the case law. The Court's subject matter jurisdiction of plaintiffs' common-law promissory estoppel and unjust enrichment claims depends on whether the Court has jurisdiction of the CBA breach claim. *See infra* Part IV. While the motion to transfer also does not present a difficult question, the relative burdens do not weigh so heavily in favor of transfer as to support avoiding the jurisdictional issue. The Court will first determine if it has subject matter jurisdiction.

### III.

The RLA was intended "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 252 (1994); *see South v. GoJet Airlines, LLC*, No. 4:12-cv-00378-JEG, 2013 WL 6253582, at *4 (S.D. Iowa September 30, 2013). That framework adopts mechanisms for the settlement of two kinds of labor disputes, "major" and "minor." *Hawaiian Airlines*, 512 U.S. at 252 (citing 45 U.S.C. § 151a).

> A "major" dispute
>
> "relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past."

*Consolidated Rail Corp. v. Railway Labor Executives' Assoc.*, 491 U.S. 299, 302 (1989) (quoting *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 771, 723 (1945)). Major disputes are resolved through "a lengthy process of bargaining and mediation." *Id.*

A "minor" dispute

> "relates either to the meaning or proper application of a particular provision [of a CBA] with reference to a specific situation or to an omitted case . . . . In either case the claim is to rights accrued, not merely to have new ones created in the future."

*Id.* (quoting *Burley*, 325 US at 723). In short, "major disputes seek to create contractual rights, minor disputes to enforce them." *Hawaiian Airlines*, 512 U.S. at 253 (quoting *Consolidated Rail*, 491 U.S. at 302). A dispute is minor if its resolution "depends on an interpretation of [a] CBA." *Sturge v. Northwest Airlines, Inc.*, 658 F.3d 832, 837 (8th Cir. 2011) (quoting *Hawaiian Airlines*, 512 U.S. at 261); *see GoJet*, 2013 WL 6253582, at *4.

Minor disputes are subject to compulsory and binding arbitration. In the railroad industry a minor dispute is arbitrated before the National Railroad Adjustment Board. *Consolidated Rail*, 491 U.S. at 303 (citing 45 U.S.C. § 153). In the airline industry, to which the RLA has been extended, *see* 45 U.S.C. § 181, a minor dispute "is resolved by an adjustment board established by the airline and the unions." *Consolidated Rail*, 491 U.S. at 304 n.4; *see* 45 U.S.C. § 184. The Adjustment Board has "mandatory, exclusive, and comprehensive jurisdiction over minor disputes." *Sturge*, 658 F.3d at 836 (quoting *Hastings v. Wilson*, 516 F.3d 1055, 1059 (8th Cir. 2008)); *see Consolidated Rail*, 491 U.S. at 304. Exclusive arbitral jurisdiction means "state and federal courts lack subject matter jurisdiction over claims based on minor disputes." *Sturge*, 658 F.3d at 836 (citing *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir. 1998)). The RLA thus "preempts review by both state and federal courts of any claims that require a court to interpret a collective bargaining agreement, as those claims are solely within the jurisdiction of [the Adjustment Board]." *Thompson v. Air Transport Intern. Ltd. Liability Co.*, 664 F.3d 723, 725 (8th Cir. 2011) (citing *Deneen*, 132 F.3d at 439).

The focus of the jurisdictional inquiry is on the CBA breach claim in Count I. Frontier argues the Court lacks subject matter jurisdiction because the claim presents a minor dispute under the RLA within the exclusive jurisdiction of the Adjustment Board. Plaintiffs resist arguing (1) their claim is an RLA major dispute because the LOA changed the CBA by effectively eliminating Article 24A; (2) Frontier has not met its burden of demonstrating the dispute is a minor dispute; and (3) if the dispute is minor, plaintiffs' grievance and ongoing pursuit of arbitration before the Adjustment Board will be futile in violation of their due process rights because both the Union and Frontier are opposed to plaintiffs and have chosen two members of the three member Board panel.

By its very nature plaintiffs' claim that Frontier breached the CBA will require the interpretation of relevant CBA terms. Plaintiffs assert an existing contractual right to share in the $40 million Equity Payment. The Equity Payment was in satisfaction of Frontier's Equity Participation obligations in Article 24A. Article 24D stipulates Equity Participation "will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." Plaintiffs rely on an interpretation of this clause to mean that they as flight attendants on the seniority list as of January 1, 2012 are entitled to share in the Equity Payment even though they left employment before Frontier agreed to make the payment. That is precisely the issue plaintiffs grieved and have presented to the Adjustment Board. (Hollinger Decl. Exs. D [8-2 at 23-27], G [8-2 at 40-42], I [8-2 at 46-50]).

Plaintiffs assert that because the LOA changed the Equity Participation clause in Article 24A of the CBA the dispute about their entitlement to share in the Equity Payment is a major dispute. They rely on the Supreme Court's statement in *Burley* that major disputes arise "where it is sought to change the terms of [a CBA] . . . ." *Burley*, 325 U.S. at 723. (*See* Pl. Brief [11] at 7). But immediately after these words the court added "and therefore the issue is not whether the

existing agreement controls the controversy." 325 U.S. at 723. Plaintiffs do not object that Article 24A was changed to substitute the Equity Payment. The Union and Frontier agreed to the change and plaintiffs only want to share in it. Plaintiffs' claim Article 24D in the existing CBA controls the controversy with Frontier. That presents a minor, not major RLA dispute.

Furthermore, if the dispute were a major dispute the Court could not adjudicate it. "For the settlement [of major disputes] the statutory scheme retains throughout the traditional voluntary processes of negotiation, mediation, voluntary arbitration and conciliation." *Burley*, 325 U.S. at 725. District court subject matter jurisdiction in the case of a major dispute is limited to a status quo injunction to allow this process to proceed. *Consolidated Rail*, 491 U.S. at 303. Absent an agreement to arbitrate, "[n]o authority is empowered to decide the dispute . . . ." *Id.* If the "protracted process" fails to secure agreement, the parties are left with "resort to the use of economic force." *Id.*

Plaintiffs next argue Frontier has not met its burden of establishing that their CBA breach claim involves a minor as opposed to major dispute. It is one or the other. Frontier "has the 'relatively light burden' of establishing the exclusive arbitral jurisdiction" of the Adjustment Board. *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1414 (8th Cir. 1997) (quoting *Consolidated Rail*, 491 U.S. at 307). A dispute "is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement" but if the "employer's claims are frivolous or obviously insubstantial" the dispute is major. *Consolidated Rail*, 491 U.S. at 307. "[T]here is a presumption that disputes are minor and thus arbitrable." *Jenisio v. Ozark Airlines, Inc.*, 187 F.3d 970, 973 (8th Cir. 1999)(citing *Schiltz*, 115 F.3d at 1414).

Plaintiffs have asserted a contractual basis for their claim to share in the Equity Payment. They have invoked the jurisdiction of the Adjustment Board to arbitrate their claim. The Board

has proceeded to do so, presumably because plaintiffs have presented a minor dispute subject to arbitration. In this case the Union and Frontier are in agreement about the action affecting plaintiffs. There is nothing to bargain or negotiate between them, and no risk of labor action which would make a major dispute. And again, the RLA gives the Court no subject matter jurisdiction to adjudicate a major dispute.

Putting these impediments aside, though it did not make the decision, Frontier has put forward a contractual basis to deny plaintiffs a share of the Equity Payment which satisfies the minimal arguable justification standard. Article 24D provides that Equity Participation is exclusively for "Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012." (Amend. Complt. attach. [3] at 2). A participant must be both a Flight Attendant and on the Flight Attendant Seniority List on January 1, 2012. The CBA defines "Flight Attendant" as "[a]n employee of the Company whose name appears on the Flight Attendant Seniority List." (Hollinger Decl. Ex. B [8-2] at 11). Arguably, when plaintiffs left employment prior to March 15, 2017 they ceased being "Flight Attendants" for the purposes of Article 24D. The contention is not frivolous or obviously insubstantial.[3]

Lastly, plaintiffs argue that if their CBA breach claim is a minor dispute, the Court has jurisdiction to adjudicate it because the the makeup of the Adjustment Board renders arbitration futile in denial of their due process rights. The arbitration is before a three-member panel with one member chosen by Frontier, one by the Union, with only the third unaligned. With Frontier and

---

[3] Frontier does not say, and the record does not reveal, whether Frontier or the Union advanced this interpretation before the Adjustment Board. The Court notes one of the brief arbitration transcript selections in the record includes testimony by a Union representative that the LOA which vested discretionary authority in the Union to determine Equity Payment eligibility modified the CBA and is a second CBA. (Paschke Decl. and Ex. 1 [23] at 1, 6).

the Union in agreement, plaintiffs view the panel as stacked against them. There are several difficulties with this argument.

First, plaintiffs cite no authority for the proposition that a Board of Adjustment due process violation confers jurisdiction on the district court to adjudicate a minor dispute otherwise preempted by the RLA.

No due process deprivation involving alleged bias of a majority of the Adjustment Board members can have occurred until it reveals itself. Bias cannot be presumed. That the parties appointing a majority of the members of the arbitration panel are adverse to plaintiffs does not alone mean arbitration is futile. *See Cunningham v. United Airlines, Inc.*, No. 13 C 5522, 2014 WL 441610, at *5 (N.D. Ill. February 4, 2014) (citing *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987)); *Addington v. US Airline Pilots Assoc.*, 588 F. Supp. 2d 1051, 1064 (D. Ariz. 2008) (that Board composed of Union and company representatives and likely to rule against plaintiffs does not render exhaustion futile). The RLA obligates Board of Adjustment members "to conduct a 'full and fair hearing' and also 'impose[s] on individual arbitrators the duty to adjudicate particular cases fairly without regard to their institutional predilections.'" *Cunningham*, 2014 WL 441610, at *5 (quoting *Wells v. Southern Airways, Inc.*, 616 F.2d 107, 110 (5th Cir. 1980)).

Plaintiffs are not necessarily without a judicial forum in which to raise due process objections should they ripen. They may be able to do so on judicial review of the Adjustment Board's decision. Statutorily, the scope of review under the RLA is very narrow. *See Union Pac. R.R. Co. v. United Transp. Union*, 23 F.3d 1397, 1399 (8th Cir. 1994). Three express grounds for judicial review are set out in 45 U.S.C. § 153 First (q). They are: (1) failure to comply with RLA requirements, (2) failure [of the Board] to confine itself to matters within its jurisdiction, or (3)

fraud or corruption by a Board member." *Goff v. Dakota, Minnesota & Eastern R.R. Corp.*, 276 F.3d 992, 986 (8th Cir. 2002). The Supreme Court has yet to resolve a split among the circuits concerning whether Adjustment Board proceedings may also be judicially reviewed for due process violations. *See Union Pac. R.R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committees of Adjustment*, 558 U.S. 67, 75, 81 (2009) (citing cases). The Ninth Circuit, in which many of the plaintiffs reside, has held "a constitutional challenge constitutes an independent ground, in addition to the three expressly stated . . . upon which a federal court has jurisdiction to review decisions of a system adjustment board." *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 847 (9th Cir. 1989); *see* 45 U.S.C. § First (p), (q) (containing judicial review venue provisions).[4]

Plaintiffs' breach of the CBA claim in Count I of the Amended Complaint is a minor dispute under the RLA within the exclusive jurisdiction of the Adjustment Board. Accordingly, the Court lacks subject matter jurisdiction over the claim.

## IV.

Plaintiffs' remaining claims in Counts II and III based on promissory estoppel and unjust enrichment are common-law claims predicated on state law. (*See* Pl. Brief [11] at 14-18 (referring to Iowa case law)). Frontier argues the Court lacks subject matter jurisdiction of the common-law claims because they also are preempted by the RLA in that resolution of both would require interpretation of the CBA. That this is so is more apparent with respect to the promissory estoppel

---

[4] Without expressly addressing the scope issue, the Eighth Circuit has considered alleged due process violations on review of Adjustment Board proceedings. *See Goff*, 276 F.3d at 987-98; *Armstrong Lodge No. 762 v. Union Pac. R.R. Co.*, 783 F.2d 131, 135 (8th Cir. 1986); *see also Sullivan v. Endeavor Air, Inc.*, Case No. 15-cv-3534 (SRN/JSM), 2016 WL 614391, at *4 (D. Minn. February 16, 2016) (discussing the scope of review in air carrier cases and applying the standards under both 45 U.S.C. §153 and the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, in assessing a due process violation claim).

claim which is substantially (though not wholly) based on the promises made in Articles 24A and 24D of the CBA alleged to entitle plaintiffs to share in the Equity Payment. (*See* Amend. Complt. [2] ¶¶ 25-29). Preemption is a closer question with respect to the unjust enrichment claim. Plaintiffs allege Frontier was unjustly enriched by the concessions made in agreeing to the 2011 CBA with its Equity Participation provision. Arguably resolution would not require interpretation of the CBA. *See Thompson*, 664 F.3d at 725-26.

Whether or not the common-law claims are preempted as requiring interpretation of the CBA, the Court lacks subject matter jurisdiction of the claims for a more fundamental reason.

Federal Rule of Civil Procedure 8(a)(1) requires a Complaint contain a statement of the grounds for the Court's jurisdiction. The sole pleaded basis for the Court's original jurisdiction is 28 U.S.C. § 1337(a). The statute, inter alia, gives district courts original jurisdiction of any civil action "arising under any Act of Congress regulating commerce." *Id.* Plaintiffs allege their action arises under the RLA, an Act regulating commerce. Only their claim in Count I for breach of the CBA could conceivably be seen as arising under the RLA. The Court has now decided the statute deprives it of subject matter jurisdiction to consider the claim. The Court would have jurisdiction over the common-law claims in Counts II and III only if the Court retained supplemental jurisdiction under 28 U.S.C. §1367(a).

The Court does not have supplemental jurisdiction of the common-law claims. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." All of plaintiffs' claims are part of the same case or controversy, but in the absence of original jurisdiction over the CBA breach claim there is no claim within the Court's original jurisdiction

for the common-law claims to be supplemental to. *Exxon Mobil v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005); *see* 16 MOORE'S FEDERAL PRACTICE § 106.03[1] at 106-11 (3rd ed. 2017) ("MOORE'S").[5]

## V.

For the foregoing reasons, it is respectfully RECOMMENDED that Frontier's motion to dismiss [8] be granted on the ground that the Court lacks subject matter jurisdiction of the plaintiffs' claims and that judgment be entered accordingly. Frontier's motion to transfer [13] should be denied as moot.

IT IS ORDERED that the parties have the time allowed in 28 U.S.C. § 636(b)(1) to file written objections to the Report and Recommendation. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

---

[5] The Amended Complaint neither pleads nor reflects an independent basis for original jurisdiction of the common-law claims. Diversity jurisdiction appears precluded by the allegations in the Amended Complaint. Diversity of citizenship under 28 U.S.C. § 1332(a)(1) requires complete diversity. In a multi-party case "the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp.*, 545 U.S. at 553. Frontier's citizenship is alleged to be Delaware where it is incorporated and Colorado where it has its principal place of business. (Amend. Complt. [2] at ¶ 2). 28 U.S.C. § 1332(c)(1). The named plaintiffs include individual(s) who "reside" in Colorado. (*Id.* ¶ 1). Residence is the first element of "domicile" by which the citizenship of an individual is determined. *See* 15 MOORE'S § 102.34 [1].

IT IS SO ORDERED.

Dated August 1, 2018.

                                                ROSS A. WALTERS
                                                UNITED STATES MAGISTRATE JUDGE